**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>SOLAR BIOTECH, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 24-11402 (LSS)<br><br>(Jointly Administered)<br><br>**Re: Docket Nos. 338 & 340** |

**INGREDION INCORPORATED'S OBJECTION TO MOTIF FOODWORKS, INC.'S MOTION FOR RELIEF FROM DIP ORDERS PURSUANT TO FED. R. CIV. P. 60**

Ingredion Incorporated ("Ingredion") respectfully submits this objection (the "Objection"), along with the Declaration of Pieter Van Tol dated January 10, 2024 (the "Van Tol Declaration"), attached hereto as **Exhibit A**, to the motion [D.I. 338 (sealed) & 340 (redacted)] (the "Motion") filed by Motif FoodWorks, Inc. ("Motif"), pursuant to Rules 60(b)(2) and 60(b)(6) of the Federal Rules of Civil Procedure (the "Federal Rules") and Rule 9024 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for relief from certain portions of the DIP Orders (as defined in the Motion) on the grounds that there is "newly discovered evidence" that would have affected the Court's entry of those provisions or there are other reasons justifying relief.[2]

**PRELIMINARY STATEMENT**

1. The Court should deny the Motion for three reasons.

2. *First*, the Final DIP Order (entered on July 19, 2024) sets forth the exclusive mechanism for seeking the relief that is the subject of the Motion, other than a timely appeal or a motion to amend under Bankruptcy Rule 9023. Such an appeal or motion to amend was due on

---

[1] The Debtors in these Chapter 11 Cases are Solar Biotech, Inc. and Noblegen Inc. The location of the Debtors' principal place of business is 5516 Industrial Park Rd, Norton, VA 24273, Attn: Alex Berlin.

[2] Any capitalized terms that are not defined below shall have the same meaning as in the Motion.

1

11972135v.4

August 2, 2024.  The Final DIP Order requires a party challenging the order to have standing—which it must independently establish—and bring an adversary proceeding or initiate a contested matter (a "Challenge Motion") within a certain time (the "Challenge Period").  The parties consensually extended the Challenge Period to November 14, 2024.  Motif did not file a Challenge Motion within the Challenge Period, despite its request for an extension of the time for any challenge and even though it had the relevant facts in its possession as of the November 14 deadline.  Instead, Motif improperly seeks to circumvent the standing and other requirements of the Final DIP Order through the Motion, which it filed on December 20, 2024, after initially filing another motion under Federal Rule 60(b) (the "Initial Motion") and then withdrawing it at the request of the Debtors.  The Court, therefore, should deny the Motion on the grounds that it is contrary to the mandatory challenge provisions in the Final DIP Order.

3. Ingredion, the Debtors, and other interested parties operated on the assumption that, after the expiration of the August 2, 2024 deadline for an appeal or a motion to amend, the Final DIP Order was a final, non-appealable order, subject only to a Challenge Motion.  Such finality is critical here because the financing obtained through the DIP Orders enabled the Debtors to preserve their estates and realize proceeds through the auction and sale process in September 2024.  The sale to Pictor Biotech resulted in a clear and substantial benefit to Motif and other creditors.  Removing the provisions that are the subject of the Motion would unfairly punish Ingredion, despite the undeniable value that it brought to the estate through the DIP financing, and it would discourage similarly situated lenders

4. *Second,* even assuming that Motion is the proper means of seeking redress, Motif fails to meet the exacting standard for relief under Federal Rule 60(b)(2), which is rarely granted and reserved for extraordinary circumstances that are absent here.  Motif asserts that the "newly

discovered evidence" for purposes of the Motion is (1) the existence of an agreement between Ingredion and SBI, dated May 20, 2022, for the purchase of future equity (the "SAFE"); and (2) the discussions between Ingredion and SBI regarding the restructuring of SBI's debt in the weeks leading up to the bankruptcy filing. (*See* Mot., ¶¶ 31-32.) According to Motif, the Court would not have entered the provisions of the DIP Orders that are at issue on the Motion if it had known about such evidence. (*See id.*, ¶ 33.) Motif, however, cannot carry its heavy burden under Federal Rule 60(b)(2) because the evidence it cites was known at the time of the DIP Orders or should have been discovered. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Moreover, the "newly discovered evidence" is not material, and it would not have altered the DIP Orders. Thus, Motif does not meet any of the required three prongs for Federal Rule 60(b)(2) relief.

5. *Third*, Motif cannot rely on the "totality of circumstances" subsection of Federal Rule 60(b)(6). The circumstances here do not warrant an application of Federal Rule 60(b)(6) because, contrary to Motif's allegations, there was no "years-long pattern of non-disclosure." (Mot. ¶ 35.) Instead, there was full disclosure of relevant information regarding the Ingredion loans at issue and the DIP Orders were the result of the usual vetting process. Indeed, the proposed Final DIP Order drew an objection from The Official Committee of Unsecured Creditors (the "Committee"), which was resolved in an agreed-upon Final DIP Order.

6. The Court, therefore, should deny the Motion in its entirety.

**BACKGROUND**

I. **Motif Actively Monitored the Financial Activities of SBI Pursuant to the Investor Rights Agreement**

7. The Investor Rights Agreement between Motif and SBI, dated April 16, 2021 (the "IRA"), gives Motif extensive information, inspection, and observer rights in connection with its contemporaneous loan to SBI. (*See* D.I. 341, Ex. C.) The IRA provides that, among other things:

- SBI must deliver financial statements to Motif on a regular basis. (*See id.*, § 3.1(a) through (g).)

- SBI must allow Motif "to visit and inspect [SBI's] properties; examine its books of accounts and records; and discuss [SBI's] affairs, finances, and accounts with its officers." (*See id.*, § 3.2.)

- SBI "shall invite a representative [designated by Motif] to attend all meetings of the Board of Directors in a nonvoting observer capacity" and "shall give such representative copies of all notices, minutes, consents, and other materials that it provides to its directors." (*See id.*, § 3.3.)

8. Motif has claimed in these proceedings that it suffered prejudice because it was not until recently that it received notice of the pre-petition loan agreements between Ingredion and SBI. Given Motif's wide-ranging monitoring rights under the IRA, Ingredion served informal document requests on Motif on November 19, 2024 to determine whether Motif actually learned—or should have learned—earlier about the relationship between Ingredion and SBI.

9. Motif has not yet finalized its production of documents in response to those requests and, to date, has produced only publicly available documents, but the Debtors' production in response to similar requests demonstrates that Motif closely followed SBI's financial activities

around the time of the SAFE. ███████████████████

███████████████████████████

███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████

      █      ███████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█[3]

      11.    ███████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████,

---

[3] ███████████████████████████████████████████████

11972135v.4

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

██████████████████████████████

12. The above documents are representative only, and the balance of the Motif production (as well as the requested depositions of Motif witnesses) should reveal additional evidence on Motif's knowledge of SBI's financial condition, and the SBI-Ingredion SAFE, at the relevant times. ████████████████████████████████

███████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████. At a minimum, the record is incomplete and insufficient for the Court to find a factual basis for granting Federal Rule 60(b) relief and gutting vital provisions in the DIP Orders.

## II. Both Motif and Ingredion Had Discussions with the Debtors in the Period Just Before the Bankruptcy Filing

13. ████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

██████████████████████████████████████████████

14. The fact that the Debtors-Ingredion discussions included references to the Motif loan simply shows that the Debtors were attempting to reach a global resolution involving all parties, which is not unusual for a distressed company. Critically, there is no evidence that Ingredion learned of any allegation of a breach of covenants before Motif made that claim in these proceedings in early September 2024 (and Ingredion reserves all rights as to whether any breach

occurred). Thus, there is no basis for the nefarious spin that Motif attempts to put on the SBI-Ingredion discussions in April and May 2024.

### III. The Court Entered the DIP Orders After Interested Parties Vetted Them

15. The Debtors filed the agreed-upon, proposed First Interim DIP Order and the Second Interim DIP Order on June 27, 2024 and July 3, 2024, respectively, after consultation with the United States Trustee. (*See* D.I. 39, D.I. 69.) The Committee was formed on July 8, 2024, and it filed an objection to the proposed Final DIP Order on July 11, 2024. (*See* D.I. 82.) The Final DIP Order entered on July 19, 2024 addressed the Committee's concerns and was filed on consent. (*See* D.I. 117.) Thus, the DIP Orders were the product of a transparent and adversarial process.

16. The DIP Orders contain several provisions that are relevant here. As noted above, the Final DIP Order states that only a party with approved standing may file a Challenge Motion, and it expressly provides that the Final DIP Order itself does not establish standing. (*See* D.I. 118, ¶ 32.) Once the period for an appeal or a motion to amend expires, the Final DIP Order is final, non-appealable and binding, subject only to a Challenge Motion. (*See id.*, ¶¶ 12, 32.)

17. Motif has not moved for relief with respect to Paragraphs 12 and 32 of the Final DIP Order, but it attacks other provisions in the DIP Orders that are critical to the DIP financing and typical in such orders. For example, with respect to the Final DIP Order, Motif seeks to remove the Court's findings that (a) the Debtors exercised sound business judgment and the financing was negotiated in good faith (*id.*, ¶ 6); (b) Ingredion's Pre-Petition Obligations and Pre-Petition liens (as defined in the Final DIP Order) are valid and enforceable (*id.*, ¶ 11); (c) in the event of a reversal or modification on appeal, the DIP Orders remain valid until the effective date of such a reversal or modification (*id.*, ¶ 31(iii)); and (d) Ingredion is entitled to reimbursement of costs and expenses (*id.*, ¶ 36). (*See* Mot., at 2.) The DIP financing from Ingredion would not have

been possible without those findings, and any reasonable DIP lender would insist on them. In effect, Motif is improperly asking the Court (through the wrong procedural mechanism) to allow the estates to reap all the benefits of the DIP financing without affording Ingredion the necessary and usual protections.

IV. **Motif's Counsel Contacted Debtors' Counsel in Late August 2024 to Complain About Notice, But Motif Did Not File a Challenge Motion**

18. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Even though Motif presumably received notice of the Chapter 11 Cases by early August 2024, its counsel inexplicably did not contact Debtors' counsel until August 30, 2024. (*See id.*) Thereafter, Motif engaged in an immediate flurry of activity, making five filings between September 5 and September 9, 2024. (*See* D.I. 181, 182, 191, 194, and 195.) The parties then agreed to extend the Challenge Period several times, eventually to November 14, 2024, but Motif did not file a Challenge Motion by that date.

19. Instead, Motif filed the Initial Motion wildly accusing the Debtors and Ingredion of engaging in fraud and collusion. (*See, e.g.*, D.I. 283, ¶¶ 30-32.) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ On December 13, 2024, Motif finally complied by withdrawing the Initial Motion. (D.I. 322.) The withdrawal of the Initial Motion illustrates the "shoot first, ask questions later" approach that Motif has taken in these proceedings, and it casts considerable doubt on all of Motif's allegations.

20. While the Motion does not cite fraud as the basis for relief under Federal Rule 60(b), Motif still implies that Ingredion engaged in fraud or colluded with the Debtors. (*See* Mot., ¶¶ 38-39.) In contrast, the Committee—with the benefit of thousands of documents produced by

8

Ingredion in informal discovery—filed a second complaint on November 18, 2024 (the "Second Complaint") that backed away from the earlier allegations of collusion in the Original Complaint.[4] The Committee also did not object to the releases in the Plan for the Debtors' directors and officers (*see* D.I. 262), or the sale/release of claims against the Debtors employees, including Alex Berlin, in the Sale Order (*see* D.I. 221), further demonstrating that it does not believe there was collusion with Ingredion. Thus, it is evident that Motif's dark implications in the Motion regarding fraud and collusion are as groundless as its similar allegations in the now-withdrawn Initial Motion.

21. Motif's alleged "newly discovered evidence" in support of the Motion similarly disappears on closer scrutiny. And it does not come close to satisfying the demanding Federal Rule 60(b) standard.

## LEGAL STANDARD

### I. Federal Rule 60(b)(2)

22. Motif primarily relies on Federal Rule 60(b)(2), which allows for relief from a final order if the movant can carry its burden of showing the existence of "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." Fed. R. Civ. P. 60(b)(2).

23. In *Bohus v. Beloff*, a case cited by Motif, the Third Circuit noted that a movant under Federal Rule 60(b) "bears a heavy burden," which requires "more than a showing of the potential significance of the new evidence." 950 F.2d 919, 930 (3d Cir. 1991) (internal quotation

---

[4] The Motion states that before the filing of the Second Complaint on November 18, "the existence of the SAFE was never disclosed to the Court or other parties in interest." (Mot., ¶ 27.) That is an egregious misstatement of the facts. In its brief in support of the motion to dismiss, Ingredion set forth the chronology of disclosures that were made regarding the SAFE. (*See* Adv. D.I. 4.) Also, it cannot be disputed that the parties were aware of the SAFE's existence well before the filing of the Original Complaint on October 30, 2024, which was almost three weeks prior to the filing of the Second Complaint. *See infra*, 10-12.

omitted). "We view Rule 60(b) motions as extraordinary relief which should be granted only where extraordinary justifying circumstances are present." *Id.* (internal quotation omitted); *see also In re Syntax-Brillian Corp.*, 551 B.R. 156, 160 (Bankr. D. Del. 2016) ("The framers of Rule 60(b) set a higher value on the social interest in the finality of litigation.") (quoting *Merit Ins. Co. v. Leatherby Ins. Co.*, 714 F.2d 673, 682 (7th Cir.1983)). Finality is especially critical in bankruptcy, given the importance of allowing the estate to marshal assets quickly for distribution to creditors.

24. In addition to these general standards, Federal Rule 60(b)(2) has its own "demanding substantive standard." *Rodrigues v. Wells Fargo Bank, N.A.*, Civ. No. 16-cv-3845 (KM), 2020 WL 278972, at *4 (D.N.J. Jan. 16, 2020). Federal Rule 60(b)(2) requires that "the new evidence (1) be material and not merely cumulative, (2) could not have been discovered before trial through the exercise of reasonable diligence and (3) would probably have changed the outcome of the trial." *Id.* (quoting *Compass Tech., Inc. v. Tseng Labs., Inc.*, 71 F.3d 1125, 1130 (3d Cir. 1995)). A movant must satisfy <u>all</u> three prongs of the Federal Rule 60(b)(2) standard.

## II. Federal Rule 60(b)(6)

25. Federal Rule 60(b)(6) is a catch-all provision which applies to "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). "Relief under Rule 60(b)(6) may only be granted under extraordinary circumstances where, without such relief, an extreme and unexpected hardship would occur." *Sawka v. Healtheast, Inc.*, 989 F.2d 138, 140 (3d Cir. 1993).

## ARGUMENT

### I. Motif Failed to File a Challenge Motion

26. The Challenge Period expired without Motif filing a Challenge Motion, which means that it is bound by the provisions of the DIP Orders and cannot seek relief from them under

Federal Rule 60(b). As of the extended Challenge Period deadline (*i.e.*, November 14, 2024), Motif knew about the SAFE and had other facts necessary for it to file a Challenge Motion on or before November 14 (as the Committee did). Motif may argue that the Motion is the equivalent of a Challenge Motion, but, notably, Motif has not filed a standing motion with the Court and the Motion contains no allegations that would establish standing. Motif should not be permitted to skirt both the standing and timing requirements of the Final DIP Order through the Motion. Under the circumstances, the Court may deny the Motion without reaching the merits of Motif's arguments pursuant to Federal Rule 60(b).

## II. Motif Has Not Carried Its Heavy Burden of Showing the Presence of Extraordinary Circumstances Justifying Relief Under Federal Rule 60(b)(2)

27. Even if the Court considers Motif's arguments under Federal Rule 60(b)(2), Motif fails to meet any of the three prongs required for relief. Motif's alleged "newly discovered evidence" (a) is not material; (b) either was, or could have been, discovered before the entry of the DIP Orders; and (c) would not have changed the outcome.

### A. The "Newly Discovered Evidence" Is Not Material

28. Motif contends that the "newly discovered evidence" is material because "it goes to the genesis of the Pre-Petition Liens and, until the Original Complaint was filed, had not been disclosed to the Court, Motif, or any other party in interest." (Mot., ¶ 33.) However, as Ingredion has explained in the brief in support of its motion to dismiss, the SAFE is not relevant to the Pre-Petition Liens because Ingredion did not purse its right to purchase equity and the original $3 million in proceeds paid to SBI under the cancelled SAFE became part of the subsequent loan package. (*See* Adv. D.I. 4, 3-4.) The Committee has challenged whether SBI received reasonably equivalent value in the various loan transactions with Ingredion, but that is a separate issue from

the source of the $3 million. Moreover, to the extent that the genesis of the loan amount is even an issue, it will be litigated in the Committee's adversary proceeding and it does not provide a reason for the Court to disturb the DIP Orders.

29. It is also not true that the SAFE was undisclosed until the filing of the Original Complaint on October 30, 2024. The first-day declaration of Alex Berlin, filed on June 24, 2024, discusses the July 2023 secured promissory note between Ingredion and SBI, which, in turn, expressly refers to the SAFE. (*See* D.I. 3, ¶¶ 15-19.) The Committee thereafter requested and received the SAFE because the Second Complaint alleges that the Committee had verified the SAFE's existence. (*See* Adv. D.I. 1, ¶ 15.) ███████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████.

   B.   The "Newly Discovered Evidence" Was in Fact Known to Motif, or Should Have Been Discovered, from SBI Documents Received in the Fall of 2022

30. Motif contends in the Motion, as it has in other filings, that it was unaware of the SAFE until well after the Court entered the DIP Orders. (Mot., ¶ 33.) ███████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████ *ee supra*, 5-6. Motif, therefore, had actual or constructive knowledge of the SAFE between Ingredion and SBI several years before the Debtors' bankruptcy filing. It is likely that additional document and deposition discovery will provide further evidence that Motif knew about the SAFE. But even under the current record, Motif cannot satisfy this mandatory prong of the Federal Rule 60(b)(2) standard.

### C. The "Newly Discovered Evidence" Would Not Have Altered the Court's Findings in the DIP Orders

31. As shown above, the existence of the SAFE and the pre-petition restructuring discussions between the Debtors and Ingredion are not material to the DIP financing. The Court, therefore, would not have amended the DIP Orders based on such evidence. The challenged provisions of the DIP Orders are standard, and they are vital to DIP lending. In the Final DIP Order, the Court found that the Debtors did not have other financing options, which makes the challenged provisions even more important.

32. Further, the essence of Motif's complaint is that the SAFE violates the terms of the earlier loan documentation. Ingredion has pointed out in earlier filings in these cases that Motif's allegations do not relate to the DIP financing or Ingredion and, instead, Motif (at most) would have a claim against SBI for breach of contract. (*See* D.I. 209, ¶ 12.) Therefore, even if Motif had appeared in the cases prior to the entry of the DIP Order and had raised the same issues, it is likely that the Court would have found that Motif's sole recourse is against SBI in litigation.

### III. Motif Has Not Shown That There Is an Extreme and Unexpected Hardship Justifying Relief Under Federal Rule 60(b)(6)

33. The basis of Motif's reliance on Federal Rule 60(b)(6) is that there was allegedly a years-long failure to disclose the SAFE, which resulted in the "surreptitious creation of liens in direct violation of [Motif's] bargained-for rights." (Mot., ¶ 35.) Not so. Motif knew, or should have known, about the SAFE and there was nothing surreptitious about the creation of liens. Moreover, the remedy for any purported violation of Motif's contractual rights is a breach of contract claim against SBI, not the elimination of critical provisions in the DIP Orders.

34. Thus, Motif falls well short of demonstrating an extreme and unexpected hardship that would result in the absence of relief pursuant to Federal Rule 60(b)(6).

### IV. Motif's Arguments Regarding Section 364(e) of the Bankruptcy Code Are Irrelevant

35. Motif asserts in the Motion that the Court should strike the findings in the DIP Orders relating to 11 § U.S.C. 364(e) on the grounds that Section 364(e) is not currently applicable here because the DIP Loan has been fully paid off. (Mot., ¶ 37.) Motif misses the point. Section 364(e) was a necessary component of the DIP Orders when they were entered in the event there was a later reversal or modification of those orders on appeal. *See* 11 11 § U.S.C. 364(e) (referring to a "reversal or modification on appeal of an authorization under this section"). Such a reversal or modification on appeal did not occur because no party appealed from the DIP Orders. However, this development does not change the fact that the Court originally and properly made Section 364(e) findings to protect against the contingency of a reversal or modification on appeal.

36. It appears that Motif raised the Section 364(e) argument simply so it could once again cast aspersions on Ingredion and the Debtors by alleging that they acted in bad faith or colluded. (*See id.*, ¶¶ 38-39.) As demonstrated above, however, Motif's allegations regarding non-disclosure and other untoward behavior have no basis in the facts. Thus, there is no reason for the Court to revisit any findings in the DIP Orders regarding the good faith of Ingredion and the Debtors and lack of collusion.

*[Remainder of Page Intentionally Left Blank]*

11972135v.4

**CONCLUSION**

For the foregoing reasons, Ingredion respectfully requests that the Court deny the Motion in its entirety.

Dated: January 10, 2025
       Wilmington, Delaware

Respectfully submitted,

*/s/ M. Blake Cleary*
M. Blake Cleary (No. 3614)
Katelin A. Morales (No. 6683)
**POTTER ANDERSON & CORROON LLP**
1313 N. Market Street, 6th Floor
Wilmington, Delaware 19801
Telephone: (302) 984-6000
Facsimile: (302) 658-1192
Email: bcleary@potteranderson.com
      kmorales@potteranderson.com

– and –

Christopher R. Donoho III (admitted *pro hac vice*)
Christopher R. Bryant (admitted *pro hac vice*)
William C. Winter (admitted *pro hac vice*)
**HOGAN LOVELLS US LLP**
390 Madison Avenue
New York, NY 10017
Telephone: (212) 918-3000
Email: chris.donoho@hoganlovells.com
      chris.bryant@hoganlovells.com
      william.winter@hoganlovells.com

-and-

Pieter Van Tol (admitted *pro hac vice*)
**VAN TOL LAW PLLC**
199 8th Avenue
Brooklyn, NY 11215
Telephone: (917) 514-9464
Email: pvantol@vantol-law.com

*Counsel for Ingredion Incorporated*

11972135v.4