**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| SOLAR BIOTECH, INC., *et al.*,[1] | Case No. 24-11402 (LSS) |
| Debtors. | (Jointly Administered) |

**FIRST AMENDED COMBINED DISCLOSURE STATEMENT
AND CHAPTER 11 PLAN OF LIQUIDATION OF SOLAR
BIOTECH, INC. AND ITS DEBTOR AFFILIATE**

Dated: July 2, 2025

Katharina Earle (No. 6348)
**GIBBONS P.C.**
300 Delaware Avenue, Suite 1015
Wilmington, Delaware 19801
Telephone: (302) 518-6300
Email: kearle@gibbonslaw.com

-and-

John S. Mairo (admitted *pro hac vice*)
Kyle P. McEvilly (admitted *pro hac vice*)
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102
Telephone: (973) 596-4500
Email: jmairo@gibbonslaw.com
Email: kmcevilly@gibbonslaw.com

*Counsel to the Debtors and Debtors in
Possession*

---

[1] The Debtors in these Chapter 11 Cases are Solar Biotech, Inc. and Noblegen Inc. The location of Debtors' principal place of business is 5516 Industrial Park Rd, Norton, VA 24273, Attn: Alex Berlin.

# TABLE OF CONTENTS

ARTICLE I  INTRODUCTION AND EXECUTIVE SUMMARY ............................................. 1

ARTICLE II  DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION
OF TIME AND GOVERNING LAW ............................................................... 3

    A.    Defined Terms ............................................................................................. 3

    B.    Rules of Interpretation ............................................................................... 16

    C.    Computation of Time ................................................................................. 17

    D.    Governing Law .......................................................................................... 17

    E.    Reference to Monetary Figures .................................................................. 17

    F.    Controlling Document ................................................................................ 17

ARTICLE III  BACKGROUND AND DISCLOSURES ................................................ 18

    A.    The Debtors' Corporate History ................................................................ 18

    B.    The Debtors' Business Operations ............................................................. 18

    C.    The Debtors' Prepetition Capital Structure ............................................... 18

        1.    The Prepetition Secured Convertible Promissory Note .......................... 19

        2.    The Secured Mortgage ............................................................................ 19

        3.    Unsecured Debts ..................................................................................... 20

    D.    Circumstances Leading to These Chapter 11 Cases ................................... 20

        1.    Challenges Facing the Debtors' Business ................................................ 20

        2.    The Debtors' Efforts to Address Business Challenges, the
Prepetition Marketing Process, and Entry into the Stalking Horse
APA ......................................................................................................... 20

    E.    The Chapter 11 Cases ................................................................................ 21

        1.    First Day Relief ....................................................................................... 21

        2.    DIP Financing .......................................................................................... 22

        3.    Retention of Professional Advisors ......................................................... 23

        4.    Appointment of the Committee ............................................................... 23

        5.    Schedules and Statements of Financial Affairs ...................................... 24

        6.    Bar Date .................................................................................................. 24

        7.    Ordinary Course Professionals ............................................................... 24

        8.    Rejection Motion ..................................................................................... 24

        9.    Bidding Procedures and Postpetition Marketing and Sale Process ......... 24

        10.    The Sale .................................................................................................. 25

10.    The Sale .................................................................................... 26

10.    The Sale .................................................................................... 28

ARTICLE IV ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS..................... 29

A.    Administrative Claims ............................................................... 29

B.    Professional Fee Claims............................................................. 30

    1.    Final Fee Applications and Payment of Professional Fee Claims .......... 30

C.    Priority Tax Claims.................................................................... 31

D.    Statutory Fees and Related Reporting Obligations............................. 31

ARTICLE V CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ...... 32

A.    Classification of Claims and Interests............................................ 32

B.    Treatment of Claims and Interests ................................................ 33

    1.    Class 1 – Ingredion Secured Claim....................................... 34

    2.    Class 2 – Other Priority Claims ........................................... 34

    3.    Class 3 – General Unsecured Claims..................................... 35

    4.    Class 3A – Intercompany Claims ......................................... 35

    5.    Class 4 – SAFE Note Claims .............................................. 35

    6.    Class 5 – Existing Equity................................................... 35

C.    Special Provision Governing Unimpaired Claims.............................. 36

D.    Nonconsensual Confirmation....................................................... 36

E.    Acceptance or Rejection of the Plan .............................................. 36

    1.    Voting Classes .............................................................. 36

    2.    Presumed Acceptance of the Plan......................................... 36

    3.    Presumed Rejection of the Plan ........................................... 36

F.    Controversy Concerning Impairment ............................................. 36

G.    No Waiver............................................................................... 37

ARTICLE VI CONFIRMATION AND VOTING PROCEDURES.......................... 37

A.    Confirmation Procedures ............................................................ 37

B.    Procedure for Objections ............................................................ 38

C.    Requirements for Confirmation .................................................... 38

D.    Classification of Claims and Interests............................................ 38

E.    Impaired Claims or Interests ....................................................... 39

2

F.      Confirmation Pursuant to Section 1129(a)(10) and 1129(b) of the
        Bankruptcy Code ........................................................................... 40

G.      Feasibility .......................................................................................... 41

H.      Best Interests Test and Liquidation Analysis ..................................... 41

ARTICLE VII  MEANS FOR IMPLEMENTATION OF THE PLAN ..................................... 42

A.      Restructuring Transactions ................................................................. 43

B.      Sources of Consideration for Plan Distributions ................................ 43

C.      The Liquidating Trust Agreement ....................................................... 43

D.      Corporate Action ................................................................................ 44

E.      Effectuating Documents; Further Transactions .................................. 44

F.      Section 1146 Exemption ..................................................................... 44

G.      Preservation of Retained Causes of Action ........................................ 45

H.      Health and Benefit Plans of the Debtors and Post-Effective Date Debtors ......... 45

I.      Closing the Chapter 11 Cases ............................................................. 45

J. All fd Exchange Commission ................................................................. 46

ARTICLE VIII  SUBSTANTIVE CONSOLIDATION .......................................................... 46

ARTICLE IX  TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
        LEASES ............................................................................................. 46

A.      Rejection of Executory Contracts and Unexpired Leases .................... 46

B.      Insurance Policies .............................................................................. 47

C.      Indemnification Obligations ............................................................... 48

D.      Claims Based on Rejection of Executory Contracts or Unexpired Leases .......... 49

E.      Preexisting Obligations to the Debtors under Executory Contracts and
        Unexpired  Leases .............................................................................. 49

F.      Modifications, Amendments, Supplements, Restatements, or Other
        Agreements ........................................................................................ 49

G.      Reservation of Rights .......................................................................... 50

H.      Nonoccurrence of Effective Date ........................................................ 50

ARTICLE X  CERTAIN RISK FACTORS TO BE CONSIDERED PRIOR TO VOTING ...... 50

A.      The Plan May Not Be Accepted .......................................................... 50

B.      The Plan May Not Be Confirmed ........................................................ 51

C.      Distributions to Holders of Allowed Claims Under the Plan May Be
        Inconsistent with Projections ............................................................. 51

3201701.6 118609-112672

D.      Objections to Classification of Claims ................................................. 51

E.      Failure to Consummate the Plan ......................................................... 52

F.      Debtor Release and/or Injunction Provisions May Not Be Approved................ 52

G.      Reductions to Estimated Creditor Recoveries ....................................... 53

H.      Certain Tax Considerations.................................................................. 53

        1.      Certain U.S. Federal Income Tax Consequences..................................... 53

ARTICLE XI  THE LIQUIDATING TRUSTEE ................................................... 57

A.      The Estate Assets ................................................................................ 57

B.      Distribution of the Estate Assets ......................................................... 57

C.      Appointment of the Liquidating Trustee............................................... 57

D.      Rights and Powers of the Debtors and the Liquidating Trustee ........................ 57

        1.      Powers of the Debtors and the Liquidating Trustee................................ 57

        2.      Expenses Incurred On or After the Effective Date ................................. 58

E.      Distribution and Withholding ............................................................... 58

F.      Insurance ............................................................................................ 58

G.      Other Rights and Remedies ................................................................. 58

H.      Priority Claims Reserve ...................................................................... 59

I.      Disputed Claims Reserve .................................................................... 59

J.      Tax Identification Numbers ................................................................. 59

K.      Wind Down......................................................................................... 60

L.      Termination of the Liquidating Trust Agreement................................. 60

ARTICLE XII  PROVISIONS GOVERNING DISTRIBUTIONS........................... 61

A.      Timing and Calculation of Amounts to Be Distributed ....................... 61

B.      Delivery of Distributions and Undeliverable, Unclaimed, of Forfeited
        Distributions........................................................................................ 61

        1.      Record Date for Distribution .................................................. 61

        2.      Delivery of Distributions .......................................................... 61

        3.      Payments and Distributions on Disputed Claims..................................... 62

        4.      Special Rules for Distributions to Holders of Disputed Claims and
                Interests ................................................................................. 62

        5.      Fractional Cents ...................................................................... 62

        6.      Minimum Distributions............................................................ 62

4

7.  Undeliverable Distributions and Unclaimed Property ............................ 62

8.  Forfeiture of Distribution ................................................................ 63

9.  Further Distributions Not Feasible ................................................... 63

10.  Manner of Payment Pursuant to the Plan ......................................... 63

C. Compliance with Tax Requirements ........................................................ 64

D. Allocations .............................................................................................. 64

E. No Postpetition Interest on Claims .......................................................... 64

F. Foreign Currency Exchange Rate ............................................................ 64

G. Setoffs and Recoupment ......................................................................... 65

H. Claims Paid or Payable by Third Parties ................................................. 65

1.  Claims Paid or Payable by Third Parties .......................................... 65

2.  Applicability of Insurance Policies .................................................. 65

ARTICLE XIII  PROCEDURES FOR RESOLVING CONTINGENT,
UNLIQUIDATED AND DISPUTED CLAIMS AND INTERESTS ............................. 66

A. Allowance of Claims and Interests .......................................................... 66

B. Prosecution of Objections to Claims and Interests ................................... 66

C. Estimation of Claims ............................................................................... 66

D. Expungement or Adjustment to Claims Without Objections ...................... 67

E. Time to File Objections to Claims ............................................................ 67

F. Disallowance of Claims ........................................................................... 67

G. Amendments to Claims ............................................................................ 68

H. No Distributions Pending Allowance ....................................................... 68

I. Distributions After Allowance ................................................................. 68

ARTICLE XIV SETTLEMENT, RELEASE, INJUNCTION AND RELATED
PROVISIONS ......................................................................................................... 68

A. Termination of Claims and Interests ........................................................ 68

B. Release of Liens ...................................................................................... 69

C. Releases by the Debtors ........................................................................... 70

E. Exculpation ............................................................................................. 71

F. Injunction ................................................................................................ 71

G. Protections Against Discriminatory Treatment ........................................ 72

H. Document Retention ................................................................................ 72

5

I.      Reimbursement or Contribution ........................................................................ 72

J.      Term of Injunctions or Stays............................................................................ 72

ARTICLE XV  CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN ........ 73

A.      Conditions Precedent to the Effective Date ..................................................... 73

B.      Waiver of Conditions ....................................................................................... 74

C.      Effect of Failure of Conditions ....................................................................... 74

ARTICLE XVI MODIFICATION, REVOCATION OR WITHDRAWAL OF THE
PLAN ................................................................................................................................... 74

A.      Modification and Amendments......................................................................... 74

B.      Effect of Confirmation on Modifications ........................................................ 75

C.      Revocation or Withdrawal of Plan................................................................... 75

ARTICLE XVII  RETENTION OF JURISDICTION....................................................... 75

ARTICLE XVIII  MISCELLANEOUS PROVISIONS ..................................................... 77

A.      Immediate Binding Effect................................................................................ 77

B.      Additional Documents ...................................................................................... 78

C.      Reservation of Rights........................................................................................ 78

D.      Successors and Assigns..................................................................................... 78

E.      Dissolution of the Committee ........................................................................... 78

F.      Notices .............................................................................................................. 78

G.      Entire Agreement ............................................................................................. 80

H.      Exhibits ............................................................................................................. 80

I.      Non-Severability of Plan Provisions................................................................ 80

J.      Votes Solicited in Good Faith.......................................................................... 80

K.      Closing of Chapter 11 Cases............................................................................ 80

3201701.6 118609-112672

## DISCLAIMERS

EACH HOLDER OF A CLAIM AGAINST THE DEBTORS ENTITLED TO VOTE TO ACCEPT OR REJECT THE COMBINED DISCLOSURE STATEMENT AND PLAN SHOULD READ THE COMBINED DISCLOSURE STATEMENT AND PLAN IN ITS ENTIRETY BEFORE VOTING. NO SOLICITATION OF VOTES TO ACCEPT OR REJECT THE COMBINED DISCLOSURE STATEMENT AND PLAN MAY BE MADE EXCEPT PURSUANT TO THE TERMS HEREOF AND SECTIONS 1121 AND 1125 OF THE BANKRUPTCY CODE. IF YOU ARE ENTITLED TO VOTE TO ACCEPT THE COMBINED DISCLOSURE STATEMENT AND PLAN, YOU ARE RECEIVING A BALLOT WITH YOUR NOTICE OF THE COMBINED DISCLOSURE STATEMENT AND PLAN. THE DEBTORS URGE YOU TO VOTE TO ACCEPT THE COMBINED DISCLOSURE STATEMENT AND PLAN.

THE COMBINED DISCLOSURE STATEMENT AND PLAN HAS BEEN PREPARED IN ACCORDANCE WITH SECTIONS 1121 AND 1125 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 3016 AND 3017, AND NOT IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER APPLICABLE NON-BANKRUPTCY LAW. PERSONS OR ENTITIES TRADING IN OR OTHERWISE PURCHASING, SELLING, OR TRANSFERRING CLAIMS AGAINST OR INTERESTS IN THE DEBTORS SHOULD EVALUATE THE COMBINED DISCLOSURE STATEMENT AND PLAN IN LIGHT OF THE PURPOSE FOR WHICH IT WAS PREPARED. THE COMBINED DISCLOSURE STATEMENT AND PLAN SHALL NOT BE CONSTRUED TO BE ADVICE ON THE TAX, SECURITIES, OR OTHER LEGAL EFFECTS OF THE COMBINED DISCLOSURE STATEMENT AND PLAN AS TO HOLDERS OF CLAIMS AGAINST OR INTERESTS IN THE DEBTORS. YOU SHOULD CONSULT YOUR PERSONAL COUNSEL OR TAX ADVISOR ON ANY QUESTIONS OR CONCERNS RESPECTING TAX, SECURITIES, OR OTHER LEGAL CONSEQUENCES OF THE COMBINED DISCLOSURE STATEMENT AND PLAN.

THE COMBINED DISCLOSURE STATEMENT AND PLAN CONTAINS SUMMARIES OF CERTAIN STATUTORY PROVISIONS, DOCUMENTS RELATED TO THE COMBINED DISCLOSURE STATEMENT AND PLAN, ANTICIPATED EVENTS IN THE CHAPTER 11 CASES, AND FINANCIAL INFORMATION. ALTHOUGH THE DEBTORS BELIEVE THAT THE STATEMENTS AND DESCRIPTIONS CONTAINED IN THE COMBINED DISCLOSURE STATEMENT AND PLAN ARE TRUE AND ACCURATE, THEY ARE QUALIFIED TO THE EXTENT THAT THEY DO NOT SET FORTH THE ENTIRE TEXT OF THE DOCUMENTS RELATED TO THE COMBINED DISCLOSURE STATEMENT AND PLAN AND APPLICABLE STATUTORY PROVISIONS. THE TERMS OF THE DOCUMENTS RELATED TO THE COMBINED DISCLOSURE STATEMENT AND PLAN AND APPLICABLE STATUTES GOVERN IN THE EVENT OF ANY DISCREPANCY WITH THE COMBINED DISCLOSURE STATEMENT AND PLAN. CREDITORS AND OTHER INTERESTED PARTIES SHOULD READ THE COMBINED DISCLOSURE STATEMENT AND PLAN, THE DOCUMENTS RELATED TO THE COMBINED DISCLOSURE STATEMENT AND PLAN, AND THE APPLICABLE STATUTES THEMSELVES FOR THE FULL AND COMPLETE STATEMENTS OF SUCH TERMS AND PROVISIONS.

THE FACTUAL STATEMENTS AND REPRESENTATIONS CONTAINED IN THE COMBINED DISCLOSURE STATEMENT AND PLAN ARE MADE BY THE DEBTORS AS OF THE DATE HEREOF, UNLESS OTHERWISE SPECIFIED, AND THE DEBTORS DISCLAIM ANY OBLIGATION TO UPDATE ANY SUCH STATEMENTS AFTER THE SOLICITATION OF VOTES TO ACCEPT OR REJECT THE COMBINED DISCLOSURE STATEMENT AND PLAN. THE DELIVERY OF THE COMBINED DISCLOSURE STATEMENT AND PLAN SHALL NOT BE DEEMED OR CONSTRUED TO CREATE ANY IMPLICATION THAT THE INFORMATION CONTAINED HEREIN IS CORRECT AT ANY TIME AFTER THE DATE HEREOF.

THE FINANCIAL INFORMATION CONTAINED HEREIN HAS NOT BEEN AUDITED BY A CERTIFIED PUBLIC ACCOUNTANT AND HAS NOT NECESSARILY BEEN PREPARED IN ACCORDANCE WITH GENERALLY ACCEPTED ACCOUNTING PRINCIPLES.

ALL FORWARD-LOOKING STATEMENTS CONTAINED HEREIN OR OTHERWISE MADE BY THE DEBTORS INVOLVE MATERIAL RISKS AND UNCERTAINTIES AND ARE SUBJECT TO CHANGE BASED ON NUMEROUS FACTORS, INCLUDING FACTORS THAT ARE BEYOND THE DEBTORS' CONTROL. THE DEBTORS DO NOT INTEND TO UPDATE OR REVISE THEIR FORWARD-LOOKING STATEMENTS EVEN IF EXPERIENCE OR FUTURE CHANGES MAKE IT CLEAR THAT ANY PROJECTED RESULTS EXPRESSED OR IMPLIED THEREIN WILL NOT BE REALIZED.

ANY PROJECTED RECOVERIES TO CREDITORS SET FORTH IN THIS DISCLOSURE STATEMENT ARE BASED UPON THE ANALYSES PERFORMED BY THE DEBTORS AND THEIR ADVISORS. ALTHOUGH THE DEBTORS AND THEIR ADVISORS HAVE MADE EVERY EFFORT TO VERIFY THE ACCURACY OF THE INFORMATION PRESENTED HEREIN, THE DEBTORS AND THEIR ADVISORS CANNOT MAKE ANY REPRESENTATIONS OR WARRANTIES REGARDING THE ACCURACY OF THIS INFORMATION.

IN CONNECTION WITH THE DEBTORS' SOLICITATION OF ACCEPTANCES OF THE COMBINED DISCLOSURE STATEMENT AND PLAN PURSUANT TO SECTION 1126(b) OF THE BANKRUPTCY CODE, THE DEBTORS ARE FURNISHING A SOLICITATION PACKAGE, CONSISTING OF THE COMBINED DISCLOSURE STATEMENT AND PLAN, THE EXHIBITS HERETO, THE CONFIRMATION NOTICE, AND A BALLOT OR NOTICE OF NON-VOTING STATUS, AS APPLICABLE, TO EACH RECORD HOLDER OF CLAIMS ELIGIBLE TO VOTE OR ITS COUNSEL. THE COMBINED DISCLOSURE STATEMENT AND PLAN IS TO BE USED BY EACH SUCH ELIGIBLE HOLDER SOLELY IN CONNECTION WITH ITS EVALUATION OF THE COMBINED DISCLOSURE STATEMENT AND PLAN; USE OF THE COMBINED DISCLOSURE STATEMENT AND PLAN FOR ANY OTHER PURPOSE IS NOT AUTHORIZED. NOTHING STATED IN THE COMBINED DISCLOSURE STATEMENT AND PLAN SHALL BE DEEMED OR CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, OR BE ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DEBTORS OR ANY OTHER PARTY.

# ARTICLE I
## INTRODUCTION AND EXECUTIVE SUMMARY[1]

The Debtors propose the following Combined Disclosure Statement and Plan pursuant to sections 1121(a) and 1125(b) of the Bankruptcy Code.

The Plan provides for the disposition of the Debtors' Assets and the distribution of the proceeds in accordance with the priorities and requirements of the Bankruptcy Code. As of the expected Confirmation Date, the Assets will largely consist of Cash and Retained Causes of Action.

The Plan provides for appointment of a Liquidating Trustee to serve as the manager of the Debtors. The Liquidating Trustee will ultimately wind down the Debtors' business affairs and be empowered to, among other things, administer and liquidate all Assets, object to and settle Claims, and prosecute Retained Causes of Action in accordance with the Plan. The Plan provides for the payment of Wind Down Expenses and Distributions to Holders of Allowed Claims, including Administrative Claims, Professional Fee Claims, Priority Tax Claims, Other Priority Claims, Statutory Fees, the Ingredion Secured Claim, Other Secured Claims, and General Unsecured Claims. In addition, the Plan cancels all Interests in the Debtors, and provides for the dissolution and wind up of the Debtors' affairs.

ALL HOLDERS OF CLAIMS AGAINST THE DEBTORS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THE COMBINED DISCLOSURE STATEMENT AND PLAN IN ITS ENTIRETY, AND TO CONSULT WITH AN ATTORNEY, BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

The classification of Claims and Interests against the Debtors pursuant to the Plan is as set forth below and as further detailed in Article V hereof. The information in the table below is provided in summary form for illustrative purposes only and is subject to material change based on certain contingencies, including those related to the Claims reconciliation process. Actual recoveries may widely vary within these ranges, and any changes to any of the assumptions underlying these amounts could result in material adjustments to recovery estimates provided herein and/or the actual Distributions received by Holders of Allowed Claims. The projected recoveries are based on information available to the Debtors as of the date hereof and reflect the Debtors' estimates as of the date hereof only. In addition to the cautionary notes contained elsewhere in the Combined Disclosure Statement and Plan, it is underscored that the Debtors make no representation as to the accuracy of these recovery estimates. The Debtors expressly disclaim any obligation to update any estimates or assumptions after the date hereof on any basis (including new or different information received and/or errors discovered).

---

[1] Capitalized terms in this section, not otherwise defined herein, shall have the meanings ascribed to them below, in Article II.

| Class | Claim/Interest | Estimated Allowed Amount of Claims[2] | Status | Voting Rights | Projected Recovery[3] |
|-------|----------------|-----------------------|--------|---------------|-----------------------|
| 1 | Compromised Ingredion Secured Claim | $7.6 million | Impaired | Entitled to Vote | 88% |
| 1A | Wise County Secured Claim | $7,250.00 | Impaired | Entitled to Vote | 95%[4] |
| 2 | Other Priority Claims | $5,000.00 | Unimpaired | Not Entitled to Vote (Deemed to Accept) | 100% |
| 3 | General Unsecured Claims | $11 million | Impaired | Entitled to Vote | 5% |
| 3A | Intercompany Claims | $0.00 | Impaired | Not Entitled to Vote (Deemed to Reject) | 0% |
| 4 | SAFE Note Claims | $1.25 million | Impaired | Not Entitled to Vote (Deemed to Reject) | 0% |
| 5 | Existing Equity | $0.00 | Impaired | Not Entitled to Vote (Deemed to Reject) | 0% |

---

[2]  These amounts represent estimated Allowed Claims against the Debtors and do not represent amounts actually asserted by creditors in Proofs of Claim or otherwise. The Debtors have not completed their analysis of Claims in the Chapter 11 Cases, and all objections to such Claims have not been Filed and/or fully litigated and may continue following the Effective Date. Therefore, there can be no assurances of the exact amount of the Allowed Claims at this time. Rather, the actual amount of the Allowed Claims may be greater or lower than estimated.  Further, this does not include the Ingredion Allowed Unsecured Claim which is not receiving any Distribution.

[3]  The estimated percentage recovery is based upon, among other things, an estimate of the Allowed Claims against the Debtors in the Chapter 11 Cases. As set forth above, the actual amount of the Allowed Claims may be greater or lower than estimated. Thus, the actual recoveries may be higher or lower than projected depending upon, among other things, the amounts and priorities of Claims that are actually Allowed by the Bankruptcy Court and the actual amount of cash available for Distribution.

[4] The Debtors are investigating this Claim.  If Allowed, the Debtors expect an impairment since the Claim may contain objectionable components, e.g., penalties, which the Debtors will seek to not pay.

2

## ARTICLE II
## DEFINED TERMS, RULES OF INTERPRETATION,
## COMPUTATION OF TIME AND GOVERNING LAW

**A.**    **Defined Terms**

As used in this Combined Disclosure Statement and Plan, capitalized terms have the meanings ascribed to them below.

**1.**    "**Administrative Claim**" means a Claim (other than a Claim of the DIP Lender and Prepetition Secured Parties) for the costs and expenses of administration of the Estates under sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred on or after the Petition Date of preserving the Estates and operating the businesses of the Debtors; and (b) Allowed Professional Fee Claims in the Chapter 11 Cases.

**2.**    "**Administrative Expense Bar Date**" means the date, as established by the Disclosure Statement Order, the Confirmation Order, or any other order of the Bankruptcy Court, as the deadline for filing any motions or proofs of claim (if allowed pursuant to such order) asserting Administrative Claims arising on or after the Petition Date and to and including the Effective Date.

**3.**    "**Affiliate**" means an "affiliate" as defined in Bankruptcy Code section 101(2).

**4.**    "**Allowed**" means with reference to any Claim, proof of which was properly Filed or, if no Proof of Claim was filed, that has been or hereafter is listed by a Debtor on its Schedules and Statements as liquidated in amount and not disputed or contingent and, in each case, as to which: (a) no objection to allowance has been interposed within the applicable period fixed by the Combined Disclosure Statement and Plan, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, or the Bankruptcy Court; or (b) an objection has been interposed and such Claim has been allowed by the Bankruptcy Court, in whole or in part, by a Final Order.

**5.**    "**APA**" means that certain *Asset Purchase Agreement*, dated October 4, 2024, between Debtors and Purchaser attached to the Sale Order, which appears at Docket No. [221] (as may be amended, including all schedules and exhibits thereto).

**6.**    "**Assets**" means any and all right, title, and interest of the Debtors in and to property of whatever type or nature, real or personal, tangible or intangible, including, without limitation, any real estate, buildings, structures, improvements, privileges, rights, easements, leases, subleases, licenses, goods, materials, supplies, furniture, fixtures, equipment, works in progress, accounts, chattel paper, deposit accounts, reserves, deposits, contractual rights, intellectual property rights, Causes of Action, Claims, other causes of action, and any general intangibles, but specifically excludes the Purchased Assets.

**7.**    "**Avoidance Actions**" means any and all actual or potential avoidance, recovery, subordination, or other Causes of Action that may be brought by or on behalf of any Debtor or its Estate or other authorized parties in interest under the Bankruptcy Code or applicable non-

bankruptcy law, including Causes of Action under sections 502, 510, 542, 544, 545, 547–553, and 724(a) of the Bankruptcy Code or under similar or related local, state, federal, or foreign statutes and common law, including fraudulent transfer laws.

8.    "**Ballot**" means the ballots upon which certain Holders of Impaired Claims shall indicate their acceptance or rejection of the Plan in accordance with the Combined Disclosure Statement and Plan and the Voting Instructions.

9.    "**Bankruptcy Code**" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

10.    "**Bankruptcy Court**" means the United States Bankruptcy Court for the District of Delaware having jurisdiction over the Chapter 11 Cases and, to the extent of (a) the withdrawal of reference under section 157 of the Judicial Code or (b) the entry of an order or judgment for which it is determined the United States Bankruptcy Court for the District of Delaware does not have constitutional authority to enter such order or judgment and the parties to such dispute do not consent to entry of such order or judgment by the United States Bankruptcy Court for the District of Delaware, the United States District Court for the District of Delaware.

11.    "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Cases, promulgated under section 2075 of the Judicial Code and the general, local, and chambers rules of the Bankruptcy Court.

12.    "**Bar Date**" means, collectively, the applicable dates (including the Administrative Expense Bar Date) by which Proofs of Claim and requests for payment of Administrative Claims must be filed, as established by: (a) the Bar Date Order; (b) a Final Order of the Bankruptcy Court; or (c) the Combined Disclosure Statement and Plan.

13.    "**Bar Date Order**" means the *Order (A) Establishing Bar Dates For Filing Proofs of Claim (II) Approving the Forms and Manner For Filing Proofs Of Claim, and (III) Approving Notice Thereof* [Docket No. 239].

14.    "**Bidding Procedures**" means the procedures governing the auction and Sale, as approved by the Bankruptcy Court and as may be amended from time to time in accordance with their terms.

*15.*    "**Bidding Procedures and Sale Motion**" means the *Debtors' Motion for (I) An Order(A) Approving Bid Procedures and Stalking Horse Protections for the Sale of Substantially all of the Debtors' Assets, (B) Approving the Stalking Horse and Stalking Horse Purchase Agreement; (C) Approving Procedures for the Assumption and Assignment and Rejection of Designated Executory Contracts; (D) Scheduling the Auction and Sale Hearing, (E) Approving Forms and Manner of Notice of Respective Dates, Times and Places in Connection Therewith; and (F) Granting Related Relief; and (II) An Order Authorizing and Approving the Debtors' Sale of Substantially All of the Debtors' Assets and Entry into a Purchase Agreement; (B) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of All Encumbrances, (C) Approving the Assumption and Assignment of Designated Executory Contracts, and (D) Granting Related Relief* [Docket No. 11].

3201701.6 118609-112672

**16.**     "**Bidding Procedures Order**" means the *Order (A) Approving Bid Procedures and Stalking Horse Protections for the Sale of Substantially All of the Debtors' Assets; (B) Approving the Stalking Horse and Stalking Horse Purchase Agreement; (C) Approving Procedures for the Assumption and Assignment and Rejection of Designated Executory Contracts; (D) Scheduling the Auction and Sale Hearing; (E) Approving Forms and Manner of Notice of Respective Dates, Times, and Places in Connection Therewith; and (F) Granting Related Relief* [Docket No. 123].

**17.**     "**Board of Directors**" means the members of the Debtors' board of directors from any time prior to or after the Petition Date through the Effective Date.

**18.**     "**Bridge Loan**" means the June 2024 secured bridge loan from Ingredion to the Debtors in the principal amount of $400,000.00.

**19.**     "**Business Day**" means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)(6)).

**20.**     "**Cash**" means cash and cash equivalents, including bank deposits, checks, and other similar items in legal tender of the United States of America.

**21.**     "**Causes of Action**" means any action, claim, cross-claim, third-party claim, cause of action, controversy, dispute, demand, right, lien, indemnity, contribution, guaranty, suit, obligation, liability, loss, debt, fee or expense, damage, interest, judgment, cost, account, defense, remedy, offset, power, privilege, proceeding, license, and franchise of any kind or character whatsoever, known, unknown, foreseen or unforeseen, existing or hereafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively (including any alter ego theories), whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law (including under any state or federal securities laws). For the avoidance of doubt, Cause of Action also includes (a) any right of setoff, counterclaim, or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity, (b) the right to object to Claims or Interests, (c) any claim pursuant to section 362 or chapter 5 of the Bankruptcy Code, (d) any claim or defense including fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code, and (e) any Avoidance Action or state law fraudulent transfer claim.

**22.**     "**Challenge Period**" has the meaning ascribed to it as more fully set forth in Paragraph 32 of the Final DIP Order.

**23.**     "**Chapter 11 Cases**" means the chapter 11 cases initiated by the Debtors' filing of voluntary petitions on the Petition Date for relief in the Bankruptcy Court under chapter 11 of the Bankruptcy Code. The Chapter 11 Cases are being jointly administered by the Bankruptcy Court under Case No. 24-11402 (LSS).

**24.**     "**CIAP**" shall mean the pending adversary proceeding commenced by the Committee against Ingredion, assigned adversary proceeding number 24-50234 (LSS).

25.     **"CIAP Settlement"** shall mean the settlement and good faith compromise of the CIAP, which is more fully described in Article III.E.12.

26.     **"Claim"** means any claim, as such term is defined in section 101(5) of the Bankruptcy Code, against the Debtors and the Debtors' Estates.

27.     **"Claims Register"** means the official register of Claims maintained by the Notice, Claims, and Solicitation Agent.

28.     **"Class"** means a class of Claims or Interests as set forth in Article V of the Plan in accordance with section 1122(a) of the Bankruptcy Code.

29.     **"Closing Date"** means the day the Sale closed, or October 6, 2024.

30.     **"Combined Disclosure Statement and Plan"** means this first amended combined chapter 11 plan of liquidation and disclosure statement (the disclosure statement portion, the "Disclosure Statement" and the chapter 11 portion, the "Plan") including, without limitation, all exhibits, supplements, appendices, and schedules hereto, either in their present form or as the same may be altered, amended, or modified from time to time, including those set forth in the Plan Supplement.

31.     **"Committee"** means the Official Committee of Unsecured Creditors appointed by the U.S. Trustee in the Chapter 11 Cases on July 8, 2024.

32.     **"Committee/Ingredion Adversary Proceeding"** shall mean the pending adversary proceeding commenced by the Committee against Ingredion, assigned adversary proceeding number 24-50234 (LSS).

33.     **"Committee Retention Applications"** means the applications the Committee filed in these Chapter 11 Cases seeking to retain certain Professionals pursuant to sections 327, 328, and/or 363 of the Bankruptcy Code.

34.     **"Company"** means, collectively, Solar Biotech, Inc. and its Debtor Affiliate Noblegen Inc.

35.     **"Compromised Ingredion Secured Claim"** means the reduced Ingredion Secured Claim to settle the CIAP, which claim shall be Allowed as of the Effective Date in the aggregate amount of $7,595,613.87, consisting of: (i) a pre-petition secured claim of remaining principal in the amount of $6,595,613.87; and (ii) a secured claim of interest, fees, costs and expenses in the aggregate amount of $1,000,000.00.

36.     **"Confirmation"** means the Bankruptcy Court's entry of the Confirmation Order on the docket of the Chapter 11 Cases within the meaning of Bankruptcy Rules 5003 and 9021.

37.     **"Confirmation Date"** means the date upon which Confirmation occurs.

**38.** "**Confirmation Hearing**" means the hearing held by the Bankruptcy Court to consider Confirmation of the Plan pursuant to sections 1128 and 1129 of the Bankruptcy Code.

**39.** "**Confirmation Order**" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

**40.** "**Consummation**" means the occurrence of the Effective Date.

**41.** "**Convertible Notes**" shall mean the instruments representing Motif's initial $2,000,000.00 investment in Solar Bio on or about April 16, 2021, and Motif's second $2,000,000.00 investment in Solar Bio on or about June 15, 2021.

**42.** "**Creditor**" means any Person that is the Holder of a Claim against the Debtors as defined in Bankruptcy Code section 101(10).

**43.** "**Cure Claim**" means a Claim (unless waived or modified by the applicable counterparty) based upon a Debtor's defaults under an Executory Contract or an Unexpired Lease assumed by such Debtor under section 365 of the Bankruptcy Code, other than a default that is not required to be cured pursuant to section 365(b)(2) of the Bankruptcy Code.

**44.** "**D&O Liability Insurance Policies**" means all Insurance Policies (including any "tail policy") issued or providing coverage to the Debtors for liabilities against any of the Debtors' current or former directors, managers, and officers, and all agreements, documents, or instruments relating thereto.

**45.** "**Debtor Retention Applications**" means the applications the Debtors filed in these Chapter 11 Cases seeking to retain certain Professionals pursuant to sections 327, 328, and/or 363 of the Bankruptcy Code.

**46.** "**Debtors**" means, collectively: (a) Solar Biotech, Inc. ("Solar Bio"); and (b) Noblegen Inc. ("Noblegen").

**47.** "**DIP Claims**" means all Claims associated with the DIP Obligations.

**48.** "**DIP Credit Agreement**" means that certain Debtor in Possession Loan And Security Agreement, dated as of June 23, 2024, as amended, restated, amended and restated, supplemented, or otherwise modified from time to time.

**49.** "**DIP Financing**" means the senior secured debtor in possession financing obtained by the Debtors, pursuant to the DIP Orders.

**50.** "**DIP Financing Motion**" means the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Debtor-in-Possession Financing and (B) Use Cash Collateral, (II) Granting DIP Liens and Claims with Superpriority Administrative Expense Status, (III) Scheduling a Final Hearing; and (IV) Granting Related Relief* [Docket No. 10].

3201701.6 118609-112672

51.     "**DIP Lender**" means Ingredion.

52.     "**DIP Obligations**" means all "DIP Obligations" (as defined in the DIP Credit Agreement).

53.     "**DIP Orders**" means, collectively, the First Interim DIP Order, Second Interim DIP Order, and the Final DIP Order.

54.     "**Disallowed**" means, with respect to any Claim, or any portion thereof, that such Claim, or any portion thereof, is disallowed under the Plan, the Bankruptcy Code, or a Final Order.

55.     "**Disclosure Statement Order**" means the order (a) conditionally approving the disclosure statement-related provisions of this Combined Disclosure Statement and Plan and (b) approving the Solicitation Procedures.

56.     "**Disputed Claim**" means, with respect to any Claim or Interest, any Claim or Interest that (a) is not yet Allowed or Allowed as of the Effective Date and (b) is not Disallowed.

57.     "**Disputed Claims Reserve**" means a Cash reserve, if any, that may be funded by the Liquidating Trustee with a portion of the Estate Assets for distributions to Holders of Disputed Claims, if and to the extent that such Disputed Claims become Allowed Claims.

58.     "**Distribution**" means any distribution to the Holders of Allowed Claims against the Debtors pursuant to the Combined Disclosure Statement and Plan.

59.     "**Distribution Record Date**" means the record date for purposes of determining which Holders of Allowed Claims or Allowed Interests are eligible to receive distributions under the Plan, which date shall be the first day of the Confirmation Hearing, or such other date as is announced by the Debtors or designated in a Final Order of the Bankruptcy Court.

60.     "**Effective Date**" means the date that is the first Business Day after the Confirmation Date on which (a) the conditions to the occurrence of the Effective Date set forth in Article XV.A of the Combined Disclosure Statement and Plan have been satisfied or waived pursuant to Article XV.B of the Combined Disclosure Statement and Plan, (b) no stay of the Confirmation Order is in effect, and (c) the Debtors declare the Plan effective. Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable thereafter.

61.     "**Entity**" means an "entity" as defined in Bankruptcy Code section 101(15).

62.     "**Estate Assets**" shall consist of (a) Retained Causes of Action; (b) any other Claims and Causes of Action that are not Purchased Assets under the Sale Order; (c) any other remaining Assets of the Estates, including, without limitation, Excess Cash, Excluded Assets, and the Sale Proceeds Trust Account; and (d) the proceeds of each of the foregoing.

63.     "**Estates**" means the estates created on the Petition Date for the Debtors in their Chapter 11 Cases pursuant to section 541 of the Bankruptcy Code and all property (as defined in

8

section 541 of the Bankruptcy Code) acquired by the Debtors after the Petition Date through the Effective Date.

64.    "**Excess Cash**" means any cash on hand in excess of the amount required to fund any amounts expressly set forth in the Wind Down Budget.

65.    "**Excluded Asset**" means any Asset not purchased by the Purchaser pursuant to the Sale Order and the APA.

66.    "**Exculpated Party**" means collectively, and in each case in its capacity as such, (a) the Debtors, (b) the directors, managers (pursuant to the Debtors' corporate organizational documents), and officers of the Debtors who served in such capacity between the Petition Date and the Effective Date, (c) the Professionals retained by the Debtors in the Chapter 11 Cases solely in their capacities as such, except for Ordinary Course Professionals, (d) the Committee, (e) the members of the Committee, and (f) the Professionals retained by the Committee, solely in their capacities as such.

67.    "**Executory Contract**" means a contract to which one or more of the Debtors is a party and that is subject to assumption or rejection under section 365 or 1123 of the Bankruptcy Code.

68.    "**Federal Judgment Rate**" means the federal judgment interest rate in effect as of the Petition Date calculated as set forth in section 1961 of the Judicial Code.

69.    "**File**" or "**Filed**" means file or filed with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases, or, with respect to the filing of a Proof of Claim (including for any Administrative Claim) or Proof of Interest, the Notice, Claims, and Solicitation Agent.

70.    "**Final Decree**" means the order entered pursuant to Bankruptcy Code section 350, Bankruptcy Rule 3022, and Local Rule 5009-1 closing the Chapter 11 Cases.

71.    "**Final DIP Order**" means the *Final DIP Order Pursuant to Sections 105(a), 362, 363, 364, and 507 and Bankruptcy Rules 2002, 4001 and 9014, and Local Bankruptcy Rules 2002-1(b) and 4001-2 (I) Authorizing (A) Debtor-In-Possession Financing and (B) Use of Cash Collateral, (II) Granting DIP Liens and Superpriority Administrative Claims, and (III) Granting Related Relief* [Docket No. 118].

72.    "**Final Order**" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified, or amended, and as to which the time to appeal, petition for certiorari, or move for reargument, reconsideration, or rehearing has expired and no appeal, petition for certiorari, or motion for reargument, reconsideration, or rehearing has been timely taken or filed, or as to which any appeal, petition for certiorari, or motion for reargument, reconsideration, or rehearing that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment could be appealed or from which certiorari could be sought or the new trial, reargument, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice;

3201701.6 118609-112672

provided that the possibility that a motion under rule 60 of the Federal Rules of Civil Procedure or any comparable rule of the Bankruptcy Rules may be filed relating to such order shall not cause such order to not be a Final Order.

73.    "**First Day Declaration**" means the *Amended Declaration of Alex Berlin in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 332].

74.    "**First Day Motions**" means the customary motions the Debtors with their voluntary petitions for relief under chapter 11 designed to facilitate the administration of these Chapter 11 Cases, as further detailed in Article III.E herein.

75.    "**First Interim DIP Order**" means the *First Interim DIP Order Pursuant to Sections 105(a), 362, 363, 364, and 507 and Bankruptcy Rules 2002, 4001 and 9014, and Local Bankruptcy Rules 2002-1(b) and 4001-2 (I) Authorizing (A) Debtor-In-Possession Financing and (B) Use of Cash Collateral, (II) Granting DIP Liens and Superpriority Administrative Claims, and (III) Granting Related Relief* [Docket No. 48].

76.    "**General Unsecured Claim**" means any unsecured Claim against the Debtors which is not an Administrative Claim, Professional Fee Claim, Priority Tax Claim, Ingredion Secured Claim, Other Priority Claim, SAFE Note Claim, or Existing Equity.

77.    "**Governmental Unit**" means a "governmental unit" as defined in Bankruptcy Code section 101(27).

78.    "**GUC Recovery**" means, with respect to Holders of Allowed Class 3 General Unsecured Claims, each such Holder's pro rata share of distributable Cash, after payment of all Administrative Claims, Professional Fee Claims, Priority Tax Claims, the Allowed Class 1 Compromised Ingredion Secured Claim, Class 2 Other Priority Claims, and Wind Down Expenses.

79.    "**Holder**" means a Person holding a Claim against or an Interest in any Debtor.

80.    "**Impaired**" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

81.    "**Independent Director**" means the former independent director of Solar Biotech during these Chapter 11 Cases, Michael Sullivan.

82.    "**Ingredion**" means Ingredion, Inc. or Ingredion Incorporated.

83.    "**Ingredion Allowed Unsecured Claim**" shall mean a $1 million Allowed General Unsecured Claim of Ingredion consisting of accrued interest and unreimbursed fees and expenses through the Effective Date, which shall be part of Class 3; Ingredion shall be entitled to vote such claim but Ingredion will not receive any distribution on account of this Claim.

84.    "**Ingredion Secured Claim**" means the asserted secured claim of Ingredion of approximately $8.6 million.

85.     "**Insurance Policies**" means all insurance policies that have been issued at any time to or provide coverage to any of the Debtors (or their predecessors) and all agreements, documents or instruments relating thereto.

86.     "**Insurer"** means any company or other Person that issued or entered into an Insurance Policy, any third party administrator, and any respective predecessors and/or affiliates thereof.

87.     "**Interest**" means any equity security as defined in section 101(16) of the Bankruptcy Code, including all issued, unissued, authorized, or outstanding shares of capital stock of the Debtors and any other rights, options, warrants, stock appreciation rights, phantom stock rights, restricted stock units, redemption rights, repurchase rights, convertible, exercisable, or exchangeable securities, or other agreements, arrangements, or commitments of any character relating to, or whose value is related to, any such interest or other ownership interest in any Debtor whether or not arising under or in connection with any employment agreement and whether or not certificated, transferable, preferred, common, voting, or denominated "stock" or a similar security, including any Claims against any Debtor subject to subordination pursuant to section 510(b) of the Bankruptcy Code arising from or related to any of the foregoing.

88.     "**IRS**" means Internal Revenue Service.

89.      "**Judicial Code**" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder

90.     "**Liquidating Trustee**" means the Person identified by the Committee in the Plan Supplement, or other filing with the Bankruptcy Court, and retained as of the Effective Date pursuant to the Liquidating Trust Agreement, as the employee or fiduciary responsible for implementing the applicable provisions of the Plan.

91.     "**Liquidating Trust Agreement**" means the agreement and related documents, which shall be entered into as of the Effective Date, which sets forth, among other things, the duties and compensation of the Liquidating Trustee.

92.     "**Motif"** shall mean Motif FoodWorks, Inc.

93.     "**Notice, Claims, and Solicitation Agent**" means Epiq Corporate Restructuring, LLC, in its capacity as the notice, claims, and solicitation agent in the Chapter 11 Cases for the Debtors and any successors appointed by an order of the Bankruptcy Court.

94.     "**OCP Order**" means the *Order Approving Procedures for the Retention and Compensation of Ordinary Course Professionals* [Docket No. 219].

95.     "**Ordinary Course Professionals**" means Professionals retained pursuant to the OCP Order.

96.     "**Other Priority Claim**" means any Claim (other than a Claim of the DIP Lender and Prepetition Secured Parties), to the extent such Claim has not already been paid during the

3201701.6 118609-112672

Chapter 11 Cases, other than an Administrative Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

97. "**Person**" means a "person" as defined in Bankruptcy Code section 101(41).

98. "**Petition Date**" means June 23, 2024.

99. "**Plan Supplement**" means the compilation of documents and forms of documents, agreements, schedules, and exhibits to the Plan (as may be altered, amended, modified, or supplemented from time to time in accordance with the terms hereof and in accordance with the Bankruptcy Code and Bankruptcy Rules) to be Filed by the Debtors no later than seven days before the Voting Deadline or such later date as may be approved by the Bankruptcy Court, and, to the extent the Plan Supplement relates in any material way to the Compromised Ingredion Secured Claim or the CIAP Settlement, shall be in form and substance reasonably satisfactory to Ingredion. The Plan Supplement will contain, among other things: (a) a liquidation analysis; (b) the Liquidating Trust Agreement; (c) the identity of the Liquidating Trustee; (d) a schedule of Retained Causes of Action; and (e) any other disclosures as required by the Bankruptcy Code.

100. "**PVNB**" means Powell Valley National Bank.

101. "**Prepetition Security Agreement**" means the security agreement between Solar Biotech and Ingredion related to the Prepetition Secured Convertible Promissory Note.

102. "**Prepetition Secured Convertible Note Documents**" means the agreements entered into between Ingredion and the Debtors, consisting of the following agreements: (i) the Prepetition Secured Convertible Promissory Note; (ii) the Prepetition Security Agreement; (iii) a grant of security interest in United States trademarks from Solar Bio to Ingredion; (iv) Guarantee from Noblegen to Ingredion with respect to all indebtedness and obligations of Solar Bio arising pursuant to or in connection with the Prepetition Secured Convertible Promissory Note; (v) a General Security Agreement between Noblegen and Ingredion; (vi) a Confirmation of Security Interest (Intellectual Property) from Noblegen to Ingredion; and (vii) all other instruments, documents, amendments, and agreements relating to the foregoing evidencing the obligations thereunder.

103. "**Prepetition Secured Convertible Promissory Note**" means that certain $7 million secured convertible promissory note entered into by and among Ingredion and the Debtors dated July 17, 2023, and was subsequently amended in January 2024, whereby Ingredion provided an additional $2 million in principal amount of secured loans to the Debtors, increasing its secured debt position to $9 million.

104. "**Prepetition Secured Convertible Promissory Note Obligations**" means the Debtors' obligations under the Prepetition Secured Convertible Promissory Note Documents as further detailed in the Prepetition Secured Convertible Promissory Note Documents.

105. "**Prepetition Collateral**" means the Collateral contemplated under the Prepetition Security Agreement.

12

106.    "**Prepetition Secured Parties**" means, Ingredion, PVNB, and the County of Wise (Virginia).

107.    "**Priority Claims Reserve**" means a reserve to be funded on the Effective Date by the Debtors to pay all anticipated Allowed Priority Tax Claims and Allowed Other Priority Claims, to the extent such Claims are not Allowed and paid by the Debtors on the Effective Date. The Priority Claims Reserve shall be maintained by and administered by the Liquidating Trustee.

108.    "**Priority Tax Claim**" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

109.    "**Professional**" means a Person retained pursuant to a Bankruptcy Court order in accordance with sections 327 or 1103 of the Bankruptcy Code and to be compensated for services rendered and expenses incurred pursuant to sections 327, 328, 329, 330, 331, or 363 of the Bankruptcy Code.

110.    "**Professional Fee Claim**" means any Administrative Claim by a Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date.

111.    "**Proof of Claim**" means a written proof of Claim Filed against any of the Debtors in the Chapter 11 Cases.

112.    "**Proof of Interest**" means a written proof of Interest Filed against any of the Debtors in the Chapter 11 Cases.

113.    "**Purchased Assets**" means the "Purchased Assets" as defined in the APA.

114.    "**Purchaser**" means Pictor Biotech, Inc.

115.    "**Related Parties**" means, to the fullest extent permitted by law, with respect to any Person, such Person's predecessors, successors, assigns, subsidiaries, and Affiliates (whether by operation of Law or otherwise), and each of their respective managed accounts or funds or investment vehicles, and each of their respective current and former equity holders (regardless of whether such Interests are held directly or indirectly), officers, directors, managers, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, actuaries, investment bankers, consultants, representatives, management companies, fund advisors, direct and indirect parent Entities, "controlling persons" (within the meaning of the federal securities law), heirs, administrators, and executors, and other Professionals, in each case acting in such capacity whether current or former.

116.    "**Released Party**" means collectively, and in each case in its capacity as such: (a) the Debtors; (b) the Prepetition Secured Parties; (c) the DIP Lender; (d) the Committee and its Professionals; (e) the Committee members, in their individual capacities as Committee members; and (f) as to the foregoing (a) through (c) each such Person's Related Parties.  Nothing in the foregoing or the Plan or Confirmation Order, shall preclude the Liquidating Trustee from naming an officer or director for the purpose of seeking to recover against available Insurance Policies,

13

however, recovery is limited to available Insurance Policies.  Nothing in the foregoing is intended to modify any releases or purchased assets in the Sale Order and Sale documents, including the APA.  The Debtors' directors and officers agree to reasonably cooperate with the Liquidating Trustee.

117.    "**Restructuring Transactions**" means the transactions described in Article VII.A of the Plan.

118.    "**Retained Causes of Action**" means, collectively, all Causes of Action which do not constitute Purchased Assets under the APA, Causes of Action released by the Plan, or Causes of Action settled by the CIAP Settlement, or any other Causes of Action of any other type or nature against Ingredion.

119.    "**Revised DS/Plan**" shall mean this first amended combined chapter 11 plan of liquidation and disclosure statement (the disclosure statement portion, the "Disclosure Statement" and the chapter 11 portion, the "Plan") including, without limitation, all exhibits, supplements, appendices, and schedules hereto, either in their present form or as the same may be altered, amended, or modified from time to time, including those set forth in the Plan Supplement, in accordance with the provisions of the Plan.

120.    "**Sale Order**" means the *Order (I) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, (II) Approving the Assumption and Assignment of Designated Executory Contracts and Unexpired Leases, and (III) Granting Related Relief* [Docket No. 221].

121.    "**Sale**" means those certain transactions between the Debtors and the Purchaser as set forth in the APA.

122.    "**Sale Proceeds**" means the net Cash proceeds received by the Debtors from the sale of the Purchased Assets pursuant to the APA, as approved by the Sale Order.

123.    "**Sale Proceeds Trust Account**" means Porzio's Delaware attorney trust account that is holding the Sale Proceeds, or such other account which is designated by the Debtors to hold the Sale Proceeds until the Effective Date, and following the Effective Date, the Liquidating Trustee shall designate such account.

124.    "**Schedules and Statements**" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs Filed by each of the Debtors pursuant to section 521 of the Bankruptcy Code, as such schedules may have been or may be amended, modified, or supplemented from time to time.

125.    "**SEC**" means the United States Securities and Exchange Commission.

126.    "**Second Interim DIP Order**" means the *Second Interim DIP Order Pursuant to Sections 105(a), 362, 363, 364, and 507 and Bankruptcy Rules 2002, 4001 and 9014, and Local Bankruptcy Rules 2002-1(b) and 4001-2 (I) Authorizing (A) Debtor-In-Possession Financing and*

*(B) Use of Cash Collateral, (II) Granting DIP Liens and Superpriority Administrative Claims, and (III) Granting Related Relief* [Docket No. 71]

127.    "**Secured**" means when referring to a Claim: (a) secured by a lien on property in which the applicable Estate has an interest, which lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Final Order of the Bankruptcy Court, or that is subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's valid interest in such Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code; or (b) Allowed pursuant to the Plan as a Secured Claim.

128.    "**Solicitation Date**" means the date upon which the Debtors commence the solicitation process in accordance with the Disclosure Statement Order.

129.    "**Solicitation Procedures**" means that form of solicitation procedures approved by the Disclosure Statement Order.

130.    "**Stalking Horse APA**" means the good faith, arm's length negotiations, the Debtors and the Stalking Horse Bidder entered into, under which the Debtors agreed to sell substantially all of their Assets to the Stalking Horse Bidder, free and clear of all liens, claims, and encumbrances, except where the Debtors agreed to transfer, and the Stalking Horse Bidder expressly agreed to permit or assume, certain encumbrances and certain liabilities of the Debtors, which appears at Docket No. 54.

131.    "**Stalking Horse Bid**" means the bid submitted by Ingredion for $15.2 million.

132.    "**Stalking Horse Bidder**" means Ingredion.

133.    "**Statutory Fees**" means all fees payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930, and any interest thereupon.

134.    "**U.S.**" means the United States of America.

135.    "**U.S. Trustee**" means the Office of the United States Trustee for the District of Delaware.

136.    "**Unexpired Lease**" means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 or section 1123 of the Bankruptcy Code.

137.    "**Unimpaired**" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

138.    "**Voting Deadline**" means 4:00 p.m. (prevailing Eastern Time) on _____ [•], 2025.

**139.** "**Voting Instructions**" means the instructions for voting on the Plan contained on the Ballot.

**140.** "**Wind Down Expenses**" means the expenses to be incurred in complying with the Combined Disclosure Statement and Plan and winding down the Chapter 11 Cases, including, but not limited to, the liquidation of any residual assets, preparation and filing of final tax returns, making distributions to Holders of Allowed Claims, the Claims reconciliation and objection process, the dissolution of each Debtor Entity, and all actual and necessary fees, costs, expenses, and obligations incurred or owed by the Debtors, advisors, or other Professionals in administering the Combined Disclosure Statement and Plan arising after the Effective Date through and including the date upon which the Bankruptcy Court enters a Final Decree closing the Chapter 11 Cases.

**141.** "**Wise County**" means the county in Virginia where Solar Bio's operations in Virginia were located.

**142.** "**Wise County Secured Claim**" means the asserted remaining secured claim of Wise County in the approximate amount of $7,250 relating to machinery and equipment.

## B.    Rules of Interpretation

For purposes of this Combined Disclosure Statement and Plan: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed, or to be Filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, restated, supplemented, or otherwise modified; (4) any reference to a Person as a Holder of a Claim or Interest includes that Person's successors and assigns; (5) unless otherwise specified, all references herein to "Articles" are references to Articles of the Combined Disclosure Statement and Plan or hereto; (6) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement; (7) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Combined Disclosure Statement and Plan in its entirety rather than to a particular portion of the Combined Disclosure Statement and Plan; (8) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Combined Disclosure Statement and Plan; (9) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (10) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (11) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated; (12) any effectuating provisions may be interpreted by the Liquidating Trustee in such a manner that is consistent with the overall purpose and intent of the Combined Disclosure Statement and Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Person; (13) any references herein to the Effective Date

shall mean the Effective Date or as soon as reasonably practicable thereafter; (14) all references herein to consent, acceptance, or approval shall be deemed to include the requirement that such consent, acceptance, or approval be evidenced by a writing, which may be conveyed by counsel for the respective parties that have such consent, acceptance, or approval rights, including by electronic mail; and (15) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

### C.     Computation of Time

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

### D.     Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Delaware, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); provided that corporate or limited liability company governance matters relating to the Debtors not incorporated in Delaware shall be governed by the laws of the state of incorporation or formulation of the applicable Debtor.

### E.     Reference to Monetary Figures

All references in the Combined Disclosure Statement and Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

### F.     Controlling Document

In the event of an inconsistency between the Plan and the Plan Supplement, the Plan Supplement shall control.  In the event of any inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall control.

3201701.6 118609-112672

## ARTICLE III
## BACKGROUND AND DISCLOSURES

### A.        The Debtors' Corporate History

In 2019, Solar Biotech ("Solar Bio") was founded, and in the summer of 2023, Noblegen was acquired by Solar Bio.  Alex Berlin owns 75% of Solar Bio and Ronald Morris owns the remaining 25% of Solar Bio.  Noblegen is a wholly owned subsidiary of Solar Bio.  Solar Bio is headquartered in Norton, Virginia, while Noblegen's operation was based in Peterborough, Ontario, Canada.

### B.        The Debtors' Business Operations

The Debtors were a biotechnology company with nearly five (5) years of experience in scaling biotech designs and prototypes on a commercial scale. The Debtors provided services to customers, in the form of various phases, which are as follows: (i) concept development; (ii) develop prototypes; (iii) optimize costs; (iv) use prototype samples for business development and sampling; and (v) commercialization agreements to help transfer developed technology into commercial products.  By offering a wide range of services, the Debtors were able to successfully meet the varying needs of its customers across the biotech market.

The Debtors were able to provide sustainable and scalable services to a wide range of customers, and brought over ten (10) synthetic products to market, including: (i) a synthetic protein added to veggie burgers; and (ii) cosmetic oils. The business was focused on technology development services for commercialization of wellness, nutrition, and beauty products.

### C.        The Debtors' Prepetition Capital Structure

The following table summarizes the Debtors' prepetition capital structure (as of the Petition Date).

| Debt | Approximate Amount Outstanding On Petition Date |
|---|---|
| Prepetition Secured Convertible Note | $10 million |
| Mortgages | $1.6 million |
| Unsecured Debts | $12 million |

1.      **The Prepetition Secured Convertible Promissory Note**

On July 17, 2023, the Debtors and Ingredion entered into Pre-Petition Secured Convertible Note Documents.

On July 17, 2023, Ingredion filed a UCC-1 Financing Statement (under Filing Number 2023 4935283) in the office of the State of Delaware, Department of State, to perfect its liens and security interests arising under the applicable Pre-Petition Secured Convertible Note Documents against Debtor Solar Bio's assets and listing "all assets of Debtor [Solar Bio], whether now owned or hereinafter acquired." Relatedly, on July 14, 2023, Ingredion filed a financing statement under the Personal Property Security Act (Ontario) to perfect its liens and security interests arising under the applicable Pre-Petition Secured Convertible Note Documents against Debtor Noblegen's assets, including inventory, equipment, and accounts.

In January 2024, Ingredion provided an additional $2 million in principal amount of secured loans to the Debtors through an amendment to the Pre-Petition Secured Convertible Note Documents, which increased its secured debt position to $9 million, exclusive of accrued but unpaid interest, fees, and other expenses. The existing U.S. and Canadian financing statements recorded by Ingredion relate to this additional secured financing.

In June 2024, Ingredion provided the Bridge Loan in the principal amount of $400,000.00, which provided the Debtors with essential capital to get it through the filing date and preserve value for the Debtors' stakeholders.

As of the Petition Date, the Debtors were indebted and liable to Ingredion in respect of the obligations under the Prepetition Secured Convertible Note Documents in the aggregate principal amount of approximately $10 million plus all accrued but unpaid interest, penalties and fees thereon (including interest paid in kind and interest at the default rate, as applicable), fees, expenses, and all other obligations expressly provided for thereunder, or incurred in connection therewith, including any "Obligations" as defined in the Secured Convertible Note Documents (such obligations under the Secured Convertible Note Documents, the "<u>Prepetition Secured Convertible Note Obligations</u>").

2.      **The Secured Mortgage**

In August 2023, Solar Bio obtained a loan from Powell Valley National Bank ("<u>PVNB</u>") for the purchase of certain real property located at 5516 Industrial Park Road in Norton, Virgina, owned by the Industrial Development Authority of Wise County (the "<u>Authority</u>"). To secure that loan, PVNB was granted a senior mortgage on the subject property. Additionally, an intercreditor agreement among PVNB, the Authority, and Ingredion was entered into setting forth the respective parties' rights regarding the subject property and related debts/mortgages. PVNB held an approximate claim of $1,500,000.00. An additional, adjacent and vacant parcel of land (5537 Industrial Park Road, Norton, Virginia) was owned by Solar Bio and Wise County held the mortgage of approximately $100,000.00 on that property.

### 3. Unsecured Debts

The unsecured debts of the Debtors total approximately $12 million, which includes Motif's Convertible Notes.

### 4. SAFE Notes

The Debtors had several simple agreements for future equity ("<u>SAFE Notes</u>"). There was approximately $1.25 million invested by certain parties through SAFE Notes, specifically, (i) Good Protein Fund - $500,000.00; (ii) Siddhi Capital Fund II LP - $500,000.00; and (iii) Siddhi Foodtech Scout Fund I LP - $250,000.00.

## D. <u>Circumstances Leading to These Chapter 11 Cases</u>

### 1. Challenges Facing the Debtors' Business

The Debtors lost a major customer who provided roughly 80% ($400,000.00 in monthly revenue) of the Debtors' revenue in the two years before the Petition Date. Due to the customer's decision to cease business with the Debtors, the Debtors suffered a major loss of revenue, which greatly hampered the Debtors' liquidity situation.

Additionally, the Debtors were unable to close its round of seed funding, due in part to the venture capital slowdown.

Finally, the effects of the COVID-19 pandemic caused disruptions to the Debtors' global supply chain and general business flow. Throughout 2021 and 2022, the Debtors experienced shortages of supply that resulted in an inability to fulfill certain customer orders within normal lead times. This adversely impacted the Debtors' revenue and operating results for fiscal years 2021 and 2022.

### 2. The Debtors' Efforts to Address Business Challenges and Entry into the Stalking Horse APA

Despite management's best efforts, the significant impact of growing vendor and supplier issues coupled with the Debtors' constrained liquidity, made it apparent that the Debtors would not be able to sustain its outstanding debt on a long-term basis and maintain the liquidity necessary to operate their business and maximize long-term enterprise value.

During June 2024, Ingredion and the Debtors had discussions related to Ingredion's willingness to fund the completion of a sale transaction through chapter 11. Through these negotiations, Ingredion (a) agreed to fund the Bridge Loan; (b) provide debtor-in-possession financing for a sale process; and (c) serve as a stalking horse bidder for a sale process.

3201701.6 118609-112672

**E.**    **The Chapter 11 Cases**

**1.**    **First Day Relief**

Upon the commencement of these Chapter 11 Cases, the Debtors filed several motions seeking typical "first-day" relief in their Chapter 11 Cases (collectively, the "First Day Motions"), as well as the First Day Declaration in support thereof, in order to ensure a smooth transition into chapter 11 and to allow the Debtors to continue to operate their business and administer their Estates.  As set forth below, the Debtors obtained orders on the First Day Motions on June 26, 2024, July 18, 2024, July 19, 2024, and August 12, 2024:

- *Order Authorizing Joint Administration of the Debtors' Chapter 11 Cases* [Docket No. 31];

- *Final Order (I) Authorizing Debtors to Pay Certain Taxes and Fees and (II) Granting Related Relief* [D.I. 98];

- *Final Order (I) (A) Approving Debtors' Proposed Form of Adequate Assurance of Payment for Future Utility Services, (B) Approving Debtors' Proposed Procedures for Resolving Additional Assurance Requests, and (C) Prohibiting Utility Providers from Altering, Refusing, or Discontinuing Services; and (II) Granting Related Relief* [Docket No. 99];

- *Final Order (I) Authorizing Debtors To (A) Maintain Existing Insurance Policies And Pay All Insurance Obligations Arising Thereunder And (B) Renew, Supplement, Modify, Or Purchase Insurance Coverage; (II) Authorizing Continuation Of Insurance Premium Financing Agreement; And (III) Granting Related Relief* [Docket No. 101];

- *Final Order (I) Authorizing Debtors To (A) Pay Prepetition Wages, Reimbursable Expenses, Employee Benefits Obligations And Other Compensation And (B) Continue Compensation And Employee Benefits Programs And Pay Related Administrative Obligations; And (II) Granting Related Relief* [D.I. 102];

- *Final Order (I) Authorizing Debtors To (A) Continue To Operate Their Cash Management System, (B) Maintain Current Bank Accounts, (C) Honor Certain Prepetition Obligations Related Thereto, And (D) Maintain Existing Business Forms; And (II) Granting Related Relief* [Docket No. 104];

- *Final Order (I) Authorizing the Debtors to Pay Prepetition Claims of Critical Vendors, Foreign Vendors, and (II) Granting Related Relief* [Docket No. 105];

- *Final Order (I) Authorizing Debtors To (A) Continue To Operate Their Cash Management System, (B) Maintain Current Bank Accounts, (C) Honor Certain Prepetition Obligations Related Thereto, And (D) Maintain Existing Business Forms; And (II) Granting Related Relief* [D.I. 116]; and

3201701.6 118609-112672

- *Final DIP Order Pursuant to Sections 105(a), 362, 363, 364, and 507 and Bankruptcy Rules 2002, 4001 and 9014, and Local Bankruptcy Rules 2002-1(b) and 4001-2(I) Authorizing (A) Debtor-in-Possession Financing and (B) Use Cash Collateral, (II) Granting DIP Liens and Superpriority Administrative Claims, and (III) Granting Related Relief* [Docket No. 118];

- *Order (A) Approving Bid Procedures And Stalking Horse Protections For The Sale Of Substantially All Of The Debtors Assets; (B) Approving The Stalking Horse And Stalking Horse Purchase Agreement; (C) Approving Procedures For The Assumption And Assignment And Rejection Of Designated Executory Contracts; (D) Scheduling The Auction And Sale Hearing; (E) Approving Forms And Manner Of Notice Of Respective Dates, Times, And Places In Connection Therewith; And (F) Granting Related Relief* [Docket No. 123]; and

- *Order Authorizing Retention and Appointment of Epiq Restructuring LLC as Claims and Noticing Agent* [Docket No. 148].

### 2.    DIP Financing

On June 24, 2024, the Debtors filed the DIP Financing Motion.  Pursuant to the DIP Financing Motion, the Debtors sought, among other things, authorization and approval of the DIP Financing from the DIP Lender, with up to $3,400,000.00 in new money borrowing capacity.  The Debtors entered these Chapter 11 Cases with minimal cash on hand, and thus access to the DIP Financing and the use of cash collateral was critical to ensure the Debtors' smooth entry into chapter 11. The DIP Financing was evaluated by the Debtors and their Professionals and included the roll-up of certain obligations under the Prepetition Secured Convertible Notes into the DIP Financing (the "DIP Roll-up Loans").  The Bankruptcy Court entered the First Interim DIP Order on June 27, 2024 [Docket No. 48],  the Second Interim DIP Order on July 3, 2024 [Docket No. 71], and the Final DIP Order on July 19, 2024 [Docket No. 118].

On July 11, 2024, the Committee filed an objection to the DIP Motion [Docket No. 82] (the "Committee DIP Objection"), which focused on, among other things, the propriety of rolling up prepetition debt that the Committee believed was susceptible to challenge.  The Committee asserted, among other things, that the DIP Roll-up Loans should not be approved and, at a minimum, should be subject to the Committee's challenge.

The Court scheduled a hearing for July 15, 2024 to consider approval of the original DIP Facility on a final basis.  Prior to the hearing, the Debtors informed the Bankruptcy Court that the Debtors, the DIP Secured Parties, the Committee, and their respective advisors continued to engage in arm's length negotiations in an effort to resolve the Committee DIP Objection.  On July 19, 2024, the Debtors informed the Bankruptcy Court on the record that the parties had reached an agreement in principle with respect to the Committee DIP Objection and the terms of a revised DIP facility (the "DIP Facility").  The Debtors presented the terms of the revised DIP Facility to the Bankruptcy Court on July 19, 2024, at which time the Bankruptcy Court entered an order [Docket No. 118] (the "Final DIP Order") approving the DIP Facility on a final basis.  The consensual resolution provided for, among other things: (i) DIP Roll-Up Loans were on a one-to-

one basis for post-petition loans made; (ii) an additional $200,000.00 was placed in the Approved Budget for Committee Professionals; and (iii) the maximum potential commitment under the DIP Facility was increased to $3.6 million.

As security for the DIP Obligations, the Final DIP Order granted (i) the DIP Secured Parties valid, binding, continuing, and enforceable DIP liens on all of the DIP Collateral and DIP Superpriority Claims (each as defined in the Final DIP Order), and (ii) the Prepetition Secured Parties' Adequate Protection Liens and Adequate Protection Superpriority Claims (each as defined in the Final DIP Order), as set forth in the Final DIP Order.  The DIP Obligations were repaid in full by the Debtors from Sale Proceeds in accordance with the Final DIP Order and the Sale Order.

**3.      Retention of Professional Advisors**

In June and July 2024, the Debtors filed the Debtor Retention Applications, including:

- Porzio Bromberg & Newman LLP, as legal counsel [Docket No. 86];

- Epiq Corporate Restructuring, LLC as claims and noticing agent [Docket No. 81]; and

- Newpoint Advisors Corporation, to provide a Chief Restructuring Officer and other personnel [Docket No. 142].

The Debtor Retention Applications were approved, and orders were entered authorizing the Debtor Retention Applications.  Also, by order entered December 18, 2024 [Docket No. 326], Ronald L. Morris was appointed as consultant/oversight director *nunc pro tunc* to October 1, 2024.  Thereafter, an order was entered retaining Gibbons P.C. as the Debtors' legal counsel, effective as of January 17, 2025 [Docket No. 417].

**4.      Appointment of the Committee**

On July 8, 2024, the U.S. Trustee filed the *Notice of Appointment of Committee of Unsecured Creditors* [Docket No. 82], notifying parties in interest that the U.S. Trustee had appointed the Committee in these Chapter 11 Cases, which members consist of: (a) Dr. Marat Khodun; (b) Separation Guru, LLC; and (c) Boone Dominion Process Company, LLC.

In August 2024, the Committee filed the Committee Retention Applications, including:

- Brinkman Law Group, as legal counsel [Docket No. 167];

- Young America Capital, LLC as financial advisor and investment banker [Docket No. 162].

- The Rosner Law Group LLC as Delaware counsel [Docket No. 144].

In October 2024, the Committee filed the following additional Committee Retention Application:

- Esbrook P.C. as Delaware counsel [Docket No. 247]

23

5.      **Schedules and Statements of Financial Affairs & 341 Meeting Concluded**

On July 29, 2024, the Debtors filed their respective Schedules and Statements [Docket Nos. 128 and 129]. On December 19, 2024, the Debtors filed amended Schedules and Statements [Docket Nos. 329, 330 and 331].

On January 10, 2025, the U.S. Trustee filed a minute sheet concluding the 341 meeting [Docket No. 349].

6.      **Bar Date**

On September 24, 2024, the Bankruptcy Court entered the Bar Date Order. The Bar Date Order established the General Bar Date and the Governmental Bar Date. A copy of the *Notice of Bar Date for Filing Proofs of Claim Against The Debtors* can be found at Docket No. 243.

7.      **Ordinary Course Professionals**

On August 21, 2024, the Debtors filed a motion [Docket No. 159] seeking entry of an order establishing the orderly and regular process for: (a) the retention of Ordinary Course Professionals including accountants, attorneys, and other Professionals on an "as needed" basis without the submission of separate, formal retention applications; and (b) for the allowance and payment of compensation and reimbursement of expenses for such Ordinary Course Professionals *nunc pro tunc* to the Petition Date. On September 16, 2024, the Bankruptcy Court entered the OCP Order [Docket No. 219].

8.      **Rejection Motion**

In efforts to start effectuating a wind down after the Sale and to prevent administrative expenses from accruing in these Chapter 11 Cases, the Debtors successfully rejected its lease with Trent University and vacated those related premises. *See* Docket No. 175.

9.      **Bidding Procedures and Postpetition Marketing and Sale Process**

Following the Petition Date, on June 24, 2024, the Debtors filed a *Motion For Sale of Property Free and Clear of Liens Debtors' Motion for (I) An Order (A) Approving Bid Procedures and Stalking Horse Protections for the Sale of Substantially All of the Debtors Assets* (the "Bidding Procedures")*; (B) Approving the Stalking Horse and Stalking Horse Purchase Agreement; (C) Approving Procedures for the Assumption and Assignment and Rejection of Designated Executory Contracts; (D) Scheduling the Auction and Sale Hearing* (the "Auction")*; (E) Approving Forms and Manner of Notice of Respective Dates, Times, and Places in Connection Therewith; and (F) Granting Related Relief; and (II) An Order Authorizing and Approving the Debtors Sale of Substantially All of the Debtors Assets and Entry Into A Purchase Agreement, (B) Authorizing the Sale of Substantially All of the Debtors Assets Free And Clear of All Encumbrances, (C) Approving the Assumption and Assignment of Designated Executory Contracts, and (D) Granting Related Relief* [D.I. 11] (the "Sale Motion").

24

On July 1, 2024, following good faith, arm's length negotiations, the Debtors and Ingredion as the Stalking Horse Bidder entered into an asset purchase agreement (the "Stalking Horse Purchase APA"), under which the Debtors agreed to sell substantially all of their Assets to the Stalking Horse Bidder, free and clear of all liens, claims, and encumbrances, except where the Debtors agreed to transfer, and the Stalking Horse Bidder expressly agreed to permit or assume, certain encumbrances and certain liabilities of the Debtors.

On July 19, 2024, the Debtors filed a revised proposed bid procedures order under certification of counsel [Docket No. 110], incorporating the changes agreed to by the parties.  On July 23, 2024, the Bankruptcy Court entered an order [Docket No. 123] (the "Bid Procedures Order") approving the Bidding Procedures for the Sale. The Debtors continued marketing the Debtors' Assets on a postpetition basis in accordance with the Bid Procedures Order and the Bidding Procedures. On August 28, 2024, the Debtors filed a Notice of Filing of Proposed Sale Order [Docket No. 171].

### 10.     The Sale

Newpoint and the Debtors continued postpetition marketing efforts in order to seek a competitive bidding process, including reaching out to over 3,000 companies in Newpoint's own and other's proprietary databases, and had direct correspondence with approximately seventy (70) potential buyers. Six (6) of these parties entered into non-disclosure agreements with the Debtors to further explore the potential acquisition of the Debtors' business and Assets.  To increase the likelihood of finding additional bidders and assist with the sale and marketing process, the Committee also entered into a proposed retention agreement with Debtors' prepetition investment banker, Young America Capital.  Young America contacted a number of potentially interested parties, and four (4) of those parties entered into non-disclosure agreements with the Debtors.  Overall, Newpoint coordinated entry into non-disclosure agreements with ten (10) interested parties.  As a result of those efforts, the Debtors received and designated two additional qualified competing written offers to the Stalking Horse APA. Ultimately, Pictor Biotech, Inc.'s ("Pictor") competing bid of $20 million (the "Pictor Bid") was deemed the successful bid at the auction.  *See* Docket No. 190.

The Pictor Bid was for the purchase of substantially all of the Debtors' assets, including the specified assets excluded from the Stalking Horse Purchase Agreement.  The Pictor Bid also included (i) the assumption and assignment of various executory contracts and unexpired leases of the Debtors, together with payment of appurtenant cure costs consistent with Sections 363 and 365 of the Bankruptcy Code, including an assignment and extension of the lease with McWilliams Brothers Holding, LTD., the landlord of Noblegen's Peterborough, Ontario facility; (ii) the transfer of all Solar Bio employees to Pictor; (iii) the assumption of all claims against any transferred employee; (iv) a requirement of an insurance tail policy for Director and Officers of the Debtors (the "D&O Tail Policy"); and (v) assignment of all Avoidance Actions against vendors of the Debtors that continued to do business with Pictor.

On September 16, 2024, after good faith negotiations amongst the parties, the Bankruptcy Court entered that certain *Joint Stipulation and Agreed Order Between the Debtors, Ingredion Incorporated, Official Committee of Unsecured Creditors, and Motif FoodWorks, Inc.* [Docket No. 220] (the "Stipulation"), which resolved certain objections of the Committee and Motif related to the Sale, the designation of Ingredion as Backup Bidder, and requests to extend the

Challenge Period. Pursuant to the Stipulation, *inter alia*, the pending objections and requests of the Committee and Motif were resolved, the parties agreed as to the form and substance of the proposed Sale Order, the parties stipulated to the Committee's standing to pursue a Challenge (as defined in the Final DIP Order), and the Challenge Period was extended to October 25, 2024.

Concurrent with entry of the Stipulation, on September 16, 2024, the Bankruptcy Court entered the Sale Order [Docket No. 221] approving the Sale to Pictor.

On October 6, the Sale closed (the "Closing"). *See* Docket No. 248. Pursuant to the Closing, among other things, (i) Ingredion's DIP Loan, including that certain portion of the Pre-Petition Secured Claim that was rolled up, was paid in full; (ii) the mortgages on the Debtors' real property held by Wise County Industrial Development Authority and PVNB were paid in full; (iii) all cure costs associated with Assumed Contracts were paid in full; (iv) the premium for the D&O Tail Policy was paid to the insurance broker; and (v) the Sale Proceeds were transferred to the Sale Proceeds Trust Account. Additionally, $600,000 was placed into an escrow account with the title agent pending a supplemental closing related to a vacant parcel of land owned by the Debtors as more fully described in Solar Bio's Schedule A/B at Section 55.2 of Solar Bio's Schedules and Statement of Financial Affairs, with such escrow to be released to the Sale Proceeds Trust Account upon the supplemental closing. The supplemental closing occurred thereafter and the $600,000 (less de minimis expenses) was released to the Sale Proceeds Trust Account.

On February 7, 2025, after a contested evidentiary hearing, the Court entered an order authorizing and approving the payment of a break-up fee to Ingredion [Docket No. 395]. In doing so, the Court overruled the objections raised by Motif.

## 11.    Motif and Withdrawn Motions

Prior to the Petition Date, on June 28, 2020, Solar BioProcessing LLC, Solar Bio's predecessor in interest, and Motif entered into a Master Services Agreement, whereby Motif retained Solar Bio to provide biotechnology services in accordance with certain to be executed statements of work. In order for Solar Bio to meet Motif's needs, Solar Bio had to adapt, scale up its equipment, plant capabilities, and overall production and research ability. To do so, Motif agreed to invest $4,000,000.00 in Solar Bio pursuant to certain convertible note financing. That financing was to be structured in two tranches: (i) an initial $2,000,000.00 on or about April 16, 2021; and (ii) an additional $2,000,000.00 investment on or about June 15, 2021 (the Convertible Notes). Motif was subsequently sued by Impossible Foods Inc. for patent infringement; following dismissal of the patent infringement case, Motif began liquidating and winding down.

On August 29, 2024, Motif, through counsel, entered its appearance in the Chapter 11 Cases. [Docket No. 173]. Motif was not included on the Debtors' initial top thirty (30) list of largest unsecured creditors or the initial notice list regarding the Debtors' first day filings. Debtors' counsel communicated with Motif's counsel that the initial omissions of Motif from the lists was due to some confusion about Motif's claim and the various demands early on in the cases to get the proceedings moving in the right direction. *See Debtors' Objection to the Motion of Motif FoodWorks, Inc. to Shorten Notice for the Hearing on Motif FoodWorks, Inc.'s Motion to Extend Challenge Period* [Docket No. 197], pp. 2-3.

3201701.6 118609-112672

On November 8, 2024, Motif filed *Motif FoodWorks, Inc.'s Motion for Relief from Second Interim and Final DIP Order Pursuant to Fed. R. Civ. P. 60 Made Applicable By Fed. R. Bankr. P. 9024* [Docket No. 283] (the "First Rule 60 Motion"), whereby Motif sought certain relief from the Second Interim DIP Order and Final DIP Order.  Motif asserted that it lacked notice of the commencement of the Chapter 11 Cases and claimed that the Debtors engaged in "fraud on the court"  and a "fraud against Motif" by (i) concealing the true financing arrangement between the Debtors and Ingredion, and (ii) creating secured debt allegedly in violation of Motif's loan documents with the Debtors.

Specifically, with respect to the Debtors' borrowing from Ingredion, in the First Rule 60 Motion, Motif claimed to have "learned of the alleged SAFE [Simple Agreement for Future Equity] though the" Committee's adversary complaint against Ingredion challenging Ingredion's liens.  [First Rule 60 Motion, at ¶ 24].

Additionally, in the First Rule 60 Motion, Motif maintained that, as "a result of … the Debtors' fraud, Motif was unable to timely assert a challenge to the Pre-Petition Liens, and has been severely prejudiced as a result."  [First Rule 60 Motion, at ¶ 32].

Debtors' counsel sent Motif's counsel a letter requesting that Motif withdraw or modify its First Rule 60 Motion due to various inaccuracies in the pleadings and reserving rights to potentially seek Rule 11 sanctions against Motif.  Thereafter, on December 13, 2024, Motif withdrew its First Rule 60 Motion [Docket No. 322].

On December 20, 2024, Motif filed *Motif FoodWorks, Inc.'s Motion for Relief from DIP Orders Pursuant to Fed. R. Civ. P. 60 Made Applicable By Fed. R. Bankr. P. 9024* and supporting declaration [Docket Nos. 338, 340, 341] ("Second Rule 60 Motion" and with the First Rule 60 Motions, the "Rule 60 Motions"), by which Motif requested broader relief from the DIP Orders than initially sought in the First Rule 60 Motion, while concurrently dropping its "fraud on the court"  and "fraud against Motif" arguments.

Motif, throughout the foregoing pleadings, repeated that it (i) only received notice of the Chapter 11 Cases after the entry of the DIP Orders, and (ii) it first learned of the Debtors' SAFE with Ingredion following the Petition Date.  Through discovery, Motif's representations were shown to not have merit.

In connection with trying to engage in global settlement discussions, the Debtors, Ingredion, the Committee and Motif participated in document discovery.  The Debtors and Ingredion each filed an objection to the Second Rule 60 Motion and the Debtors thereafter filed a supplemental objection [Docket Nos. 350, 352, 355, 375] (the "Rule 60 Objections").

The Rule 60 Objections showed that Motif's positions did not have merit.

Similar to the First Rule 60 Motion, Debtors counsel sent Motif's counsel a letter requesting that Motif withdraw its Second Rule 60 Motion due to inaccuracies in the pleadings and reserving rights to potentially seek Rule 11 sanctions.  Thereafter, on February 10, 2025, Motif withdrew its Second Rule 60 Motion [Docket No. 397].

3201701.6 118609-112672

### 12.       Committee/Ingredion Adversary Proceeding & CIAP Settlement

On November 18, 2024, the Committee filed an adversary complaint against Ingredion alleging various causes of action, including fraudulent transfer claims and subordination claims.

On December 18, 2024, Ingredion filed a motion to dismiss the complaint.  Briefs were filed in connection with the dismissal motion but the matter was not decided prior to the parties informing the Court that the matter was resolved, subject to Court approval.

The Debtors worked with the Committee and Ingredion to try and resolve issues relating to the CIAP and the Debtors' chapter 11 plan.  After lengthy, good faith negotiations, the parties executed a term sheet (annexed here as **Exhibit 1**, along with the waterfall analysis) setting forth the provisions of the CIAP Settlement.  As is more fully set forth the attached term sheet, the CIAP Settlement involves:

- Dismissal with prejudice of the CIAP;

- Payments already received by Ingredion during the Chapter 11 Cases, approximately $6,874,284.07, will not be disturbed by the Debtor, the Committee, the Liquidating Trustee, or any other party in interest in the Chapter 11 Case;

- The Compromised Ingredion Secured Claim will be paid in full, in cash on the effective date under a Revised DS/Plan and will consist of  (i) a pre-petition secured claim of remaining principal of $6,595,613.87; and (ii) $1,000,000 towards interest and costs/expenses.

- Ingredion will forego seeking collection of approximately $1,000,000 of its claim as consideration for the settlement of the CIAP, which Claim consists of (a) accrued interest through the Effective Date; and (b) unreimbursed fees and expenses through the Effective Date.

- The Compromised Ingredion Secured Claim will remain in Class 1 but its status will be amended to Impaired and entitled to vote.

- The Ingredion Allowed Unsecured Claim will be part of Class 3 and be entitled to vote but Ingredion will not receive any distribution on account of the Ingredion Allowed Unsecured Claim.

- The Committee will support the Revised DS/Plan and recommend that General Unsecured Creditors vote in favor of the Revised DS/Plan.

- Ingredion will receive releases under the Revised DS/Plan from the Debtors, the Committee and its members, and their respective successors and assigns under the Plan, which releases shall be binding on the Liquidating Trustee.

- The motion seeking approval of the CIAP Settlement, the Revised DS/Plan, the Confirmation Order, and any and all other agreements, motions, orders or otherwise concerning the CIAP Settlement shall be satisfactory to Ingredion in its reasonable discretion.

Further, as provided in the attached term sheet, the CIAP Settlement will be implemented by the filing of a motion by the Committee to approve the resolution under Rule 9019 of the Federal Rules of Bankruptcy Procedure. The approval of the CIAP Settlement will be a condition precedent to Confirmation of the Revised DS/Plan. Approval of the CIAP Settlement will be part of the Confirmation Order.

## ARTICLE IV
## ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Fee Claims, and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article V.

### A.    **Administrative Claims**

Except to the extent that a Holder of an Allowed Administrative Claim and the Debtors or the Liquidating Trustee, as applicable, agree to less favorable treatment with respect to such Allowed Administrative Claim, to the extent an Allowed Administrative Claim has not already been paid in full or otherwise satisfied during the Chapter 11 Cases, each Holder of an Allowed Administrative Claim will be paid the full unpaid amount of such Allowed Administrative Claim in Cash: (a) on the Effective Date or as soon as reasonably practicable thereafter or, if not then due, when such Allowed Administrative Claim becomes due or as soon as reasonably practicable thereafter; (b) if such Administrative Claim is Allowed after the Effective Date, on the date such Administrative Claim is Allowed or as soon as reasonably practicable thereafter or, if not then due, when such Allowed Administrative Claim becomes due or as soon as reasonably practicable thereafter; (c) at such time and upon such terms as may be agreed upon by such Holder and the Debtors or Liquidating Trustee, as applicable; or (d) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court; *provided that* any Allowed Administrative Claim that has been assumed by the Purchaser under the Pictor APA shall not be an obligation of the Debtors and shall not be entitled to any recovery from the Estates under the Plan.

As will be provided in the Disclosure Statement Order, requests for payment of Administrative Claims arising after the Petition Date through May 31, 2025 must be Filed on or before the Administrative Expense Bar Date set forth in the Disclosure Statement Order. Administrative Expense Claims arising after May 31, 2025 shall be filed in accordance with the Confirmation Order. Any Administrative Claim must be filed with the Bankruptcy Court with a copy served on Debtors' counsel (prior to the Effective Date) and the Liquidating Trustee and its counsel (after the Effective Date), as applicable, by regular mail, overnight courier, or hand delivery to the Claims and Noticing Agent at the following addresses by the Administrative Claim Bar Date:

3201701.6 118609-112672

(by mail, overnight mail, courier, or hand delivery)

**If mailed to the Clerk of Court**:
United States Bankruptcy Court
Attn: Claims
824 Market St., 3rd Floor
Wilmington, DE 19801

**If mailed to Epiq**
Solar Biotech, Inc.
Claim Processing Center
c/o Epiq Corporate Restructuring, LLC
P.O. Box 4421
Beaverton, OR 97076-4421

Except as otherwise ordered by the Court, holders of Administrative Claims that are required to, but do not, File and serve a request for payment of such Administrative Claims by such applicable date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors or its property.  Unless the Debtors or the Liquidating Trustee (or other party with standing) object to a timely-filed and properly served Administrative Claim, such Administrative Claim shall be deemed Allowed in the amount requested. In the event that the Debtors or the Liquidating Trustee object to an Administrative Claim, the parties may confer to try to reach a settlement and, failing that, the Bankruptcy Court shall determine whether such Administrative Claim should be Allowed and, if so, in what amount.

**B.**     **Professional Fee Claims**

**1.**     **Final Fee Applications and Payment of Professional Fee Claims**

All final requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Effective Date must be Filed no later than 30 days after the Effective Date unless no final request for payment of such Professional Fee Claims is required pursuant to an order of the Bankruptcy Court. The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, Bankruptcy Rules, and prior Bankruptcy Court orders. The Debtors or the Liquidating Trustee (as applicable) shall pay the amount of the Allowed Professional Fee Claims owing to the Professionals in Cash, or receive such other treatment as may be agreed upon by a Holder of any such Allowed Professional Fee Claim, the Debtors or the Liquidating Trustee, as applicable, to such Professionals, on the later of (i) the Effective Date, or as soon as reasonably practicable thereafter, and (ii) the date such Professional Fee Claim becomes an Allowed Claim by a final order of the Bankruptcy Court or as soon as reasonably practicable thereafter, to be paid in the full allowed amount in cash (as determined by agreement, settlement, or order of the Bankruptcy Court),

The amount of Professional Fee Claims owing to the Professionals shall be paid in Cash to such Professionals by the Debtors or the Liquidating Trustee, as applicable, from the funds held in the Sale Proceeds Trust Account.

## C.    Priority Tax Claims

Except to the extent that a Holder of an Allowed Priority Tax Claim and the Debtors, or the Liquidating Trustee, as applicable, agree to a less favorable treatment, each Holder of an Allowed Priority Tax Claim shall receive, at the option of the Debtors, either (i) the full unpaid amount of such Allowed Priority Tax Claim in Cash on the later of the Effective Date and the date on which such Priority Tax Claim becomes an Allowed Claim, or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Priority Tax Claim is due or as soon as reasonably practicable thereafter), or (ii) equal annual installment payments in Cash, of a total value equal to the Allowed amount of such Priority Tax Claim, over a period ending not later than five (5) years after the Petition Date, in a manner not less favorable than the most favored nonpriority unsecured claim provided for by the Plan (other than cash payments made to a class of creditors under section 1122(b) of the Bankruptcy Code); *provided, that* any Allowed Priority Tax Claim that has been expressly assumed by the Purchaser under the Pictor Biotech APA shall not be an obligation of the Debtors.

There are two Priority Tax Claims that have been filed which the Debtors are investigating:  (i) the Department of Treasury-IRS filed a priority claim for $282,660.93 (the "IRS Estimated Claim") and (ii) the Franchise Tax Board in California filed a priority claim for $3,443.14 (the "CA Franchise Claim").  The IRS Estimated Claim was for certain "estimated" taxes and the Debtors engaged in discussions with the IRS because the Debtors believed the actual tax for the periods referenced are zero.  As a result of the Debtors' discussions with the IRS, an amended claim was filed by the IRS (claim no. 29) which reduced the IRS Estimated Claim to zero.  The CA Franchise Claim is still being reviewed.

Once an Allowed Priority Tax Claim has been paid in full, any liens securing such Allowed Priority Tax Claim shall be deemed released, terminated, and extinguished, in each case without further notice to or order of the Bankruptcy Court, act, or action under applicable law, regulation, order or rule, or the vote, consent, authorization, or approval of any Person.

## D.    Statutory Fees and Related Reporting Obligations

All fees due and payable pursuant to section 1930 of Title 28 of the U.S. Code, together with the statutory rate of interest set forth in section 3717 of Title 31 of the U.S. Code to the extent applicable ("Statutory Fees") prior to the Effective Date shall be paid by the Debtors on the Effective Date.  After the Effective Date, the Debtors and Liquidating Trustee shall be jointly and severally liable to pay any and all Statutory Fees when due and payable. The Debtors shall file all monthly operating reports due prior to the Effective Date when they become due, using UST Form 11-MOR.  After the Effective Date, Liquidating Trustee shall file with the Bankruptcy Court separate UST Form 11-PCR reports when they become due.  Notwithstanding the substantive consolidation of the Debtors called for in the Plan, each and every one of the Debtors and the Liquidating Trustee shall remain obligated to pay Statutory Fees to the Office of the U.S. Trustee

31

until the entry of an order by the Bankruptcy Court that closes, dismisses, or converts to a case under Chapter 7 of the Bankruptcy Code for each of the Chapter 11 Cases of the Debtors. The U.S. Trustee shall not be required to file any Administrative Claim in the case and shall not be treated as providing any release under the Plan.

## ARTICLE V
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

**A.**    **Classification of Claims and Interests**

Except for the Claims addressed in Article IV of the Combined Disclosure Statement and Plan, all Claims against and Interests in the Debtors are classified in the Classes set forth in this Article V for all purposes, including voting, Confirmation, and distributions pursuant to the Plan and in accordance with section 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or an Interest is classified in a particular Class only to the extent that such Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of such Claim or Interest qualifies within the description of such other Classes. A Claim or an Interest also is classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

The Plan shall apply as a substantively consolidated Plan for all of the Debtors. All of the potential Classes for the Debtors are set forth herein.

The information in the table below is provided in summary form for illustrative purposes only and is subject to material change based on certain contingencies, including those related to the Claims reconciliation process. Actual recoveries may widely vary within these ranges, and any changes to any of the assumptions underlying these amounts could result in material adjustments to recovery estimates provided herein and/or the actual distributions received by Holders of Allowed Claims. The projected recoveries are based on information available to the Debtors as of the date hereof and reflect the Debtors' estimates as of the date hereof only. In addition to the cautionary notes contained elsewhere in the Combined Disclosure Statement and Plan, it is underscored that the Debtors make no representation as to the accuracy of these recovery estimates. The Debtors expressly disclaim any obligation to update any estimates or assumptions after the date hereof on any basis (including new or different information received and/or errors discovered).

32

| Class | Claim/Interest | Estimated Allowed Amount of Claims[5] | Status | Voting Rights | Projected Recovery[6] |
|---|---|---|---|---|---|
| 1 | Compromised Ingredion Secured Claim | $7.6 million | Impaired | Entitled to Vote | 88% |
| 1A | Wise County Secured Claim | $7,250 | Impaired | Entitled to Vote | 95% |
| 2 | Other Priority Claims | $5,000.00 | Unimpaired | Not Entitled to Vote (Deemed to Accept) | 100% |
| 3 | General Unsecured Claims | $11 million | Impaired | Entitled to Vote | 5% |
| 3A | Intercompany Claims | $0.00 | Impaired | Not Entitled to Vote (Deemed to Reject) | 0% |
| 4 | SAFE Note Claims | $1.25 million | Impaired | Not Entitled to Vote (Deemed to Reject) | 0% |
| 5 | Existing Equity | $0.00 | Impaired | Not Entitled to Vote (Deemed to Reject) | 0% |

### B.    Treatment of Claims and Interests

Subject to Article XI hereof, each Holder of an Allowed Claim against or Allowed Interest in the Debtors, as applicable, shall receive under the Plan the treatment described below in full and final satisfaction, in exchange for, such Holder's Allowed Claim or Allowed Interest, except to the extent different treatment is agreed to by the Debtors, or the Liquidating Trustee, as applicable, and the Holder of such Allowed Claim or Allowed Interest, as applicable. Unless otherwise indicated, the Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive such

---

[5]  These amounts represent estimated Allowed Claims against the Debtors and do not represent amounts actually asserted by creditors in Proofs of Claim or otherwise. The Debtors have not completed their analysis of Claims in the Chapter 11 Cases, and all objections to such Claims have not been Filed and/or fully litigated and may continue following the Effective Date. Therefore, there can be no assurances of the exact amount of the Allowed Claims at this time. Rather, the actual amount of the Allowed Claims may be greater or lower than estimated.

[6]  The estimated percentage recovery is based upon, among other things, an estimate of the Allowed Claims against the Debtors in the Chapter 11 Cases. As set forth above, the actual amount of the Allowed Claims may be greater or lower than estimated. Thus, the actual recoveries may be higher or lower than projected depending upon, among other things, the amounts and priorities of Claims that are actually Allowed by the Bankruptcy Court and the actual amount of cash available for Distribution.

3201701.6 118609-112672

treatment on the later of the Effective Date and the date such Holder's Claim or Interest becomes an Allowed Claim or Allowed Interest or as soon as reasonably practicable thereafter.

1.    <u>Class 1 –Compromised Ingredion Secured Claim</u>

    (a)    *Classification:* Class 1 consists of the Compromised Ingredion Secured Claim.

    (b)    *Treatment:* Each Holder of an Allowed Class 1 Compromised Ingredion Secured Claim shall receive, on the Effective Date, payment in full in Cash of the Comprised Ingredion Secured Claim.

    (c)    *Voting:* Class 1 is impaired under the Plan. Holders of an Allowed Compromised Ingredion Secured Claim are entitled to vote to accept or reject the Plan.

**2.**    <u>Class 1A – Wise County Secured Claim</u>

    (a)    *Classification:* Class 1A consists of the Wise County Secured Claim.

    (b)    *Treatment:* Each Holder of  a Class 1A Wise County Secured Claim shall receive payment in full in Cash of the Allowed Wise County Secured Claim.

    (c)    *Voting:* Class 1A is impaired under the Plan. Holders of an Allowed Wise County Secured Claim are entitled to vote to accept or reject the Plan.

**3.**    <u>Class 2 – Other Priority Claims</u>

    (a)    *Classification:* Class 2 consists of all Other Priority Claims.

    (b)    *Treatment*: Except to the extent that a Holder of an Allowed Other Priority Claims and either (i) the Debtors, prior to the Effective Date, or (ii) Liquidating Trustee, after the Effective Date agree to less favorable treatment for such Holder, each Holder of an Allowed Other Priority Claim shall receive payment in full in Cash of the Allowed amount of such Claim (as determined by settlement or Final Order of the Bankruptcy Court) on the Effective Date from the Sale Proceeds Trust Account, or as soon as reasonably practicable, or such other treatment rendering such Claim Unimpaired.

    (c)    *Voting:* Class 3 is unimpaired under the Plan. Holders of Other Priority Tax Claims are conclusively deemed to have accepted the

34

Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject the Plan.

4.      Class 3 – General Unsecured Claims

(a)      *Classification*: Class 3 consists of all General Unsecured Claims.

(b)      *Treatment*: Each holder of an Allowed General Unsecured Claim shall receive its *pro rata* share of the GUC Recovery from the Sale Proceeds Trust Account.

(c)      *Voting*: Class 3 is Impaired under the Plan. Holders of General Unsecured Claims are entitled to vote to accept or reject the Plan.

5.      Class 3A – Intercompany Claims

(a)      *Classification:* Class 3A consists of all intercompany Debtor claims and interests.

(b)      *Treatment:* On the Effective Date, intercompany claims shall be cancelled and eliminated under the Plan.

(c)      *Voting:* Class 3A is Impaired under the Plan. Intercompany Claims are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and not entitled to vote to accept or reject the Plan.

6.      Class 4 – SAFE Note Claims

(a)      *Classification:* Class 4 consists of all SAFE Note Claims.

(b)      *Treatment:* On the Effective Date, SAFE Note Claims of the Debtors shall be cancelled, and the Holders of SAFE Note Claims shall receive no Distribution under the Plan.

(c)      *Voting:* Class 4 is Impaired under the Plan. Holders of SAFE Note Claims are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject the Plan.

7.      Class 5 – Existing Equity

(a)      *Classification:* Class 5 consists of all Existing Equity.

(b)      *Treatment:* On the Effective Date, Existing Equity of the Debtors shall be cancelled, and the Holders of Existing Equity Interests shall receive no Distribution under the Plan.

(c)    *Voting:* Class 5 is Impaired under the Plan. Holders of Existing Equity are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject the Plan.

## C.    Special Provision Governing Unimpaired Claims

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' rights in respect of any Claims that are Unimpaired, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Claims that are Unimpaired. Unless otherwise Allowed, Claims that are Unimpaired shall remain Disputed Claims under the Plan.

## D.    Nonconsensual Confirmation

Bankruptcy Code section 1129(a)(10) shall be satisfied for purposes of Confirmation by acceptance of the Plan by at least one Impaired Class of Claims. The Debtors shall seek Confirmation of the Plan pursuant to Bankruptcy Code section 1129(b) with respect to any rejecting Class of Claims or Interests. The Debtors reserve the right to modify the Plan in accordance with Article XVI of the Plan to the extent, if any, that Confirmation pursuant to section Bankruptcy Code section 1129(b) requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Impaired or Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

## E.    Acceptance or Rejection of the Plan

### 1.    Voting Classes

Classes 1,1A, and 3 are entitled to vote on the Plan.

### 2.    Presumed Acceptance of the Plan

Pursuant to the Bankruptcy Code, Class 2 is deemed to have accepted the Plan and are not entitled to vote to accept or reject the Plan.

### 3.    Presumed Rejection of the Plan

Pursuant to the Bankruptcy Code, Classes 3A, 4 and 5 are deemed to have rejected the Plan and are not entitled to vote to accept or reject the Plan.

## F.    Controversy Concerning Impairment

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court may, after notice and a hearing, determine such controversy on or before the Confirmation Date.

Bankruptcy Rule 3018(a) provides that the "court after notice and hearing may temporarily allow [a] claim or interest in an amount which the court deems proper for the purpose of accepting or

rejecting a plan." Fed. R. Bankr. P. 3018(a). If any Holder of a Claim seeks to have its claim temporarily allowed for purposes of voting to accept or reject the Plan pursuant to Bankruptcy Rule 3018(a), such Holder is required to file a motion (the "3018 Motion") for such relief by no later than _____ **at 4:00 p.m. (ET)**. The deadline for any party in interest to object to any 3018 Motion is _____**at 11:59 p.m. (ET)**. Any such 3018 Motion may be resolved by agreement between the Debtors and the movant without the requirement for further order or approval of the Court.

## G.      No Waiver

Nothing contained in this Plan shall be construed to waive the Debtors' or Liquidating Trustee's right to object on any basis to any Claim (other than the Ingredion Secured Claim), including after the Effective Date.

**ARTICLE VI**
**CONFIRMATION AND VOTING PROCEDURES**

### A.      Confirmation Procedures

The Disclosure Statement Order, among other things, will conditionally approve the Combined Disclosure Statement and Plan for solicitation purposes only and authorize the Debtors to solicit votes to accept or reject the Plan. The Confirmation Hearing will be scheduled for _____ **at 10:00 a.m. (ET)** at the Bankruptcy Court, 824 North Market Street, 6th Floor, Courtroom #1, Wilmington, Delaware 19801 to consider (i) final approval of the Disclosure Statement as providing adequate information pursuant to section 1125 of the Bankruptcy Code and (ii) confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code. The Confirmation Hearing may be adjourned from time to time by the Debtors without further notice, except for an announcement of the adjourned date made at the Confirmation Hearing or by filing a notice with the Bankruptcy Court.

**B.      Procedure for Objections**

Any objection to interim approval of the Disclosure Statement as providing adequate information pursuant to section 1125 of the Bankruptcy Code or final approval of the Disclosure Statement and confirmation of the Plan must be made in writing and filed with the Bankruptcy Court and served on (i) counsel to the Debtors, Gibbons P.C., 300 Delaware Avenue, Suite 1015, Wilmington, DE 19801, Attn: Katharina Earle (kearle@gibbonslaw.com) and One Gateway Center, Newark, NJ 07102-5310, Attn: John S. Mairo (jmairo@gibbonslaw.com); (ii) Office of the United States Trustee for the District of Delaware, 844 N. King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, Attn: Rosa Sierra-Fox (Rosa.SierraFox@usdoj.gov); (iii) co-counsel to the Committee: (a) Brinkman Law Group, 543 Country Club Drive, Suite B, Wood Ranch, CA 93065, Attn: Daren Brinkman (dbrinkman@brinkmanlaw.com); (b) Esbrook P.C., 1000 N. West St., Suite 1200, Wilmington, DE 19801, Attn: Scott Leonhardt (scott.leonhardt@esbrook.com); and (iv) co-counsel to Ingredion Incorporated: (a) Hogan Lovells LLP, 390 Madison Avenue, New York, NY 10017, Attn: Christopher R. Donoho III (chris.donoho@hoganlovells.com) and Christopher R. Bryant (chris.bryant@hoganlovells.com) and (b) Potter Anderson & Corroon LLP, Hercules Plaza, 1313 North Market Street, 6th Floor, P.O. Box 951, Wilmington, DE 19801, Attn: Blake Cleary (bcleary@potteranderson.com) (collectively, the "Objection Recipients"); in each case, by no later than _____ **at 4:00 p.m. (ET)** in connection with approval of the Disclosure Statement and confirmation of the Plan. Unless an objection is timely filed and served, it may not be considered by the Bankruptcy Court at the Confirmation Hearing.

**C.      Requirements for Confirmation**

The Bankruptcy Court will confirm the Plan only if it meets all of the applicable requirements of section 1129 of the Bankruptcy Code. Among other requirements, the Plan (a) must be accepted by all Impaired Classes of Claims or Interests or, if rejected by an Impaired Class, the Plan must not "discriminate unfairly" against, and be "fair and equitable" with respect to, such Class; and (b) must be feasible. The Bankruptcy Court must also find that: (x) the Plan has classified Claims and Interests in a permissible manner; (y) the Plan complies with the technical requirements of chapter 11 of the Bankruptcy Code; and (z) the Plan has been proposed in good faith.

**D.      Classification of Claims and Interests**

Section 1123 of the Bankruptcy Code provides that a plan must classify the claims and interests of a debtor's creditors and equity interest holders. In accordance with section 1123 of the Bankruptcy Code, the Plan divides Claims and Interests into Classes and sets forth the treatment for each Class (other than those Claims which, pursuant to section 1123(a)(1) of the Bankruptcy Code, need not be and have not been classified). The Debtors are also required, under section 1122 of the Bankruptcy Code, to classify Claims and Interests into Classes that contain Claims or Interests that are substantially similar to the other Claims or Interests in such Class.

The Bankruptcy Code also requires that a plan provide the same treatment for each claim or interest of a particular class unless the claim holder or interest holder agrees to a less favorable treatment of its claim or interest. The Debtors believe that the Plan complies with such standard. If the Bankruptcy Court finds otherwise, however, it could deny confirmation of the Plan if the

holders of Claims or Interests affected do not consent to the treatment afforded them under the Plan.

A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes. A Claim also is placed in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released, or otherwise settled prior to the Effective Date.

The Debtors believe that the Plan has classified all Claims and Interests in compliance with the provisions of section 1122 of the Bankruptcy Code and applicable case law. It is possible that a Holder of a Claim or Interest may challenge the Debtors' classification of Claims or Interests and that the Bankruptcy Court may find that a different classification is required for the Plan to be confirmed. If such a situation develops, the Debtors intend, in accordance with the terms of the Plan, to make such permissible modifications to the Plan as may be necessary to permit its Confirmation. Any such reclassification could adversely affect Holders of Claims by changing the composition of one or more Classes and the vote required of such Class or Classes for approval of the Plan.

**E.**     **Impaired Claims or Interests**

Pursuant to the provisions of the Bankruptcy Code, only classes of claims or interests that are "impaired" (as defined in section 1124 of the Bankruptcy Code) under a plan may vote to accept or reject such plan. Generally, a claim or interest is impaired under a plan if the holder's legal, equitable, or contractual rights are altered under such plan. In addition, if the holders of claims or interests in an impaired class do not receive or retain any property under a plan on account of such claims or interests, such impaired class is deemed to have rejected such plan under section 1126(g) of the Bankruptcy Code and, therefore, such holders are not entitled to vote on such plan.

Under the Plan, Holders of Claims in Classes 1, 1A, and 3 are Impaired and are entitled to vote on the Plan. Under the Plan, Holders of Claims or Interests in Classes 3A, 4 and 5 are Impaired and will not receive or retain any property under the Plan on account of such Claims or Interests and, therefore, are not entitled to vote on the Plan and are deemed to reject the Plan. Under the Plan, Holders of Claims in Class 2 is Unimpaired and, therefore, not entitled to vote on the Plan and are deemed to accept the Plan.

ACCORDINGLY, A BALLOT FOR ACCEPTANCE OR REJECTION OF THE PLAN IS BEING PROVIDED ONLY TO HOLDERS OF CLAIMS IN CLASSES 1, 1A AND 3.

IF YOU ARE ENTITLED TO VOTE ON THE PLAN, YOU ARE URGED TO COMPLETE, DATE, SIGN, AND PROMPTLY MAIL THE BALLOT YOU RECEIVE. PLEASE BE SURE TO COMPLETE ALL BALLOT ITEMS PROPERLY AND LEGIBLY. YOU MAY ALSO SUBMIT A BALLOT THROUGH THE NOTICE, CLAIMS, AND SOLICITATION AGENT'S ONLINE ELECTRONIC BALLOT UPLOAD PORTAL LOCATED AT HTTPS://DM.EPIQ11.COM/CASE/SOB/INFO AND CLICKING ON THE "SUBMIT

3201701.6 118609-112672

ELECTRONIC BALLOT (eBALLOT)" SECTION OF THE WEBSITE. IF YOU ARE A HOLDER OF A CLAIM ENTITLED TO VOTE ON THE PLAN AND YOU DID NOT RECEIVE A BALLOT, YOU RECEIVED A DAMAGED BALLOT, OR YOU LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THE PLAN OR PROCEDURES FOR VOTING ON THE PLAN, PLEASE CONTACT THE NOTICE, CLAIMS, AND SOLICITATION AGENT AT:

Solar Biotech, Inc.
Ballot Processing Center
c/o Epiq Corporate Restructuring, LLC
P.O. Box 4421
Beaverton, OR 97076-4421

or

https://dm.epiq11.com/case/sob/info

THE NOTICE, CLAIMS, AND SOLICITATION AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE. IF YOU BELIEVE YOU REQUIRE LEGAL ADVICE, YOU SHOULD CONSULT WITH YOUR ATTORNEY.

## F.     Confirmation Pursuant to Section 1129(a)(10) and 1129(b) of the Bankruptcy Code

In the event that any impaired class of claims or interests does not accept a plan, a debtor nevertheless may move for confirmation of the plan. A plan may be confirmed, even if it is not accepted by all impaired classes, if the plan has been accepted by at least one impaired class of claims, determined without including any acceptance of the plan by any insider holding a claim in that class, and the plan meets the "cramdown" requirements set forth in section 1129(b) of the Bankruptcy Code. Section 1129(b) of the Bankruptcy Code requires that a court find that a plan (i)  "does not discriminate unfairly" and (ii) is "fair and equitable," with respect to each non-accepting impaired class of claims or interests. The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any Class of Claims or Interests that votes or is deemed to reject the Plan, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

The Debtors believe that the requirements of section 1129(b) of the Bankruptcy Code are satisfied. The Bankruptcy Code does not provide a standard for determining when "unfair discrimination" exists; courts typically examine the facts and circumstances of each particular case to determine whether unfair discrimination exists. At a minimum, however, the unfair discrimination standard prevents creditors and interest holders with similar legal rights from receiving materially different treatment under a proposed plan without sufficient justifications for doing so. The Debtors believe that, under the Plan, all Impaired Classes of Claims or Interests are treated in a manner that is consistent with the treatment of other Classes of Claims or Interests that are similarly situated, if any, except where there is sufficient justification for different treatment. Accordingly, the Debtors believe that the Plan does not discriminate unfairly as to any Impaired Class of Claims or Interests.

The Bankruptcy Code provides a nonexclusive definition of the phrase "fair and equitable." To determine whether a plan is "fair and equitable," the Bankruptcy Code establishes "cramdown" tests for secured creditors, unsecured creditors and equity holders, as follows:

Secured Creditors. Either (i) each impaired secured creditor retains its liens securing its secured claim and receives on account of its secured claim deferred Cash payments having a present value at least equal to the amount of its allowed secured claim as of the Effective Date, (i) each impaired secured creditor realizes the "indubitable equivalent" of its allowed secured claim, or (iii) the property securing the claim is sold free and clear of liens with such liens to attach to the proceeds of the sale and the treatment of such liens on proceeds to be as provided in clause (i) or (ii) above.

Unsecured Creditors. Either (i) each impaired unsecured creditor receives or retains under the plan property of a value as of the Effective Date equal to the amount of its allowed claim, or (ii) the holders of claims and interests that are junior to the claims of the dissenting class will not receive any property under the plan on account of such junior claim or interest.

Equity Interests. Either (i) each holder of an equity interest will receive or retain under the plan property of a value equal to the greater of the Allowed amount of any fixed liquidation preference to which such holder is entitled, the fixed redemption price to which such holder is entitled or the value of such interest, or (ii) the holder of any interest that is junior to such non-accepting class will not receive or retain any property under the plan on account of such junior interest.

The Debtors believe that the distributions provided under the Plan satisfy the absolute priority rule, where required.

## G.   Feasibility

Section 1129(a)(11) of the Bankruptcy Code requires that confirmation of a plan not be likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtors or any successor to the Debtors (unless such liquidation or reorganization is proposed in the Plan). For purposes of this test, the Debtors have analyzed the ability of the Debtors and the Liquidating Trustee to meet their obligations under the Plan. Based on the Debtors' analysis, the Debtors and the Liquidating Trustee will have sufficient assets to accomplish their tasks under the Plan. Therefore, the Debtors believe that the transactions to be effectuated pursuant to the Plan will meet the feasibility requirements of the Bankruptcy Code. *See* **Exhibit 1** attached hereto.

## H.   Best Interests Test and Liquidation Analysis

Even if a plan is accepted by the holders of each class of claims and interests, the Bankruptcy Code requires the Bankruptcy Court to determine that such plan is in the best interests of all holders of claims or interests that are impaired by that plan and that have not accepted the plan. The "best interests" test, as set forth in section 1129(a)(7) of the Bankruptcy Code, requires a court to find either that all members of an impaired class of claims or interests have accepted the plan or that the plan will provide a member who has not accepted the plan with a recovery of

property of a value, as of the effective date of the plan, that is not less than the amount that such holder would recover if the debtor were liquidated under chapter 7 of the Bankruptcy Code.

To calculate the probable distribution to holders of each impaired class of claims and interests if the debtor was liquidated under chapter 7, a court must first determine the aggregate dollar amount that would be generated from a debtor's assets if its chapter 11 case was converted to a case under chapter 7 of the Bankruptcy Code. To determine if a plan is in the best interests of each impaired class, the present value of the distributions from the proceeds of a liquidation of the debtor's unencumbered assets and properties, after subtracting the amounts attributable to the costs, expenses, and administrative claims associated with a chapter 7 liquidation, must be compared with the value offered to such impaired classes under the plan. If the hypothetical liquidation distribution to holders of claims or interests in any impaired class is greater than the distributions to be received by such parties under the plan, then such plan is not in the best interests of the holders of claims or interests in such impaired class.

Here, the Debtors believe, and a liquidation analysis will show that, the Combined Disclosure Statement and Plan satisfies the best interests test as the recoveries expected to be available to Holders of Allowed Claims under the Combined Disclosure Statement and Plan will be greater than the recoveries expected in a liquidation under chapter 7 of the Bankruptcy Code.  Annexed hereto as **Exhibit 2** is: (i) a distribution analysis consistent with this Plan; and (ii) a liquidation analysis, which does not incorporate the CIAP Settlement.

The Purchased Assets have already been sold to Pictor Biotech, Inc. under the Sale Order, and the Debtors have limited Assets remaining in their Estates. While a liquidation under chapter 7 of the Bankruptcy Code would have the same goal, the Debtors believe that the Combined Disclosure Statement and Plan provides the best source of recovery for several reasons. First, the Debtors believe that liquidation under chapter 7 of the Bankruptcy Code would not provide for a timely distribution. Second, the Debtors believe distributions would likely be smaller because a chapter 7 trustee and his/her Professionals would have to expend significant time and resources familiarizing themselves with the history of the Debtors, the Retained Causes of Action, and any other Cause of Action prior to pursuing any of such.

Under the Combined Disclosure Statement and Plan, the Wind Down Expenses, including the fees of the Liquidating Trustee and fees for the Liquidating Trustee's Professionals, will be paid out of the Sale Proceeds Trust Account prior to any Distribution being made to creditors.

At this time, there are no alternative plans available to the Debtors. The Closing of the Sale has already occurred, and the Debtors are no longer a going concern enterprise and have few Assets remaining, if any, to administer. Therefore, the Debtors believe that the Combined Disclosure Statement and Plan, including the CIAP Settlement, provides the greatest possible value to all stakeholders under the circumstances, and has the greatest chance to be confirmed and consummated.

## ARTICLE VII
## MEANS FOR IMPLEMENTATION OF THE PLAN

42

## A.       Restructuring Transactions

On the Effective Date, or as soon as reasonably practicable thereafter, the Liquidating Trustee shall enter into any transaction and shall take any actions as may be necessary or appropriate to effect the transactions described herein, including, as applicable, one or more intercompany mergers, consolidations, amalgamations, arrangements, continuances, restructurings, conversions, dispositions, dissolutions, transfers, liquidations, spinoffs, intercompany sales, purchases, or other corporate transactions (collectively, the "Restructuring Transactions"). The actions to implement the Restructuring Transactions may include: (i) the execution and delivery of appropriate agreements or other documents of merger, consolidation, amalgamation, arrangement, continuance, restructuring, conversion, disposition, dissolution, transfer, liquidation, spinoff, sale, or purchase containing terms that are consistent with the terms of the Plan and that satisfy the applicable requirements of applicable law and any other terms to which the applicable Entities may agree; (ii) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable Entities agree; (iii) the filing of appropriate certificates or articles of incorporation, reincorporation, formation, merger, consolidation, conversion, amalgamation, arrangement, continuance, or dissolution pursuant to applicable state or provincial law; and (iv) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law in connection with the Plan.

## B.       Sources of Consideration for Plan Distributions

Payments required to be made under the Plan shall be funded from (i) Cash held by the Debtors as of the Effective Date; (ii) the Sale Proceeds Trust Account; and (iii) net proceeds of Retained Causes of Action.

To the extent not paid in full in cash on the Effective Date, and as necessary, reserves for payment of claims not yet allowed and for Disputed Claims may be funded on the Effective Date.

## C.       The Liquidating Trust Agreement

On or prior to the Effective Date, the Debtors shall enter into the Liquidating Trust Agreement. As provided in the term sheet annexed hereto as **Exhibit 1**, on the Effective Date, all remaining property of the estates will be maintained as a single wind-down estate (the "Wind-Down Estate"). The Liquidating Trustee as identified by the Committee will administer the Wind-Down Estate and will consult with, but not be controlled by, an oversight board of three members (the "Oversight Board") with two members selected by the Committee and one selected by the Debtors.  The Liquidating Trust Agreement will be consistent with the term sheet, the Revised DS/Plan, and orders previously entered by the Court, including the Sale Order, and shall include a provision that any Oversight Board member will recuse themselves on any issue in which he/she holds a conflict of interest.   The Debtors will be filing certain Claim objections prior to Confirmation and any filed objections not resolved before the Effective Date will be transitioned to the Liquidating Trustee.  The Liquidating Trustee shall consult on certain matters with the Oversight Board, including the cost of administration, the filing of tax-related documents,

reconciliation of claims, and corporate dissolution matters, as set forth in the Liquidating Trust Agreement. Nothing in the Plan shall constitute a waiver of any privilege claims over any of the documents, including any privileged documents, that are produced to or received by the Liquidating Trustee.

## D.     Corporate Action

Upon the Effective Date, all actions contemplated under the Plan, regardless of whether taken before, on, or after the Effective Date, shall be deemed authorized and approved in all respects, including: (i) implementation of the Restructuring Transactions; and (ii) all other actions contemplated under the Plan (whether to occur before, on, or after the Effective Date). All matters provided for in the Plan or deemed necessary or desirable by the Debtors before, on, or after the Effective Date involving the corporate structure of the Debtors, and any corporate action required by the Debtors or the Liquidating Trustee in connection with the Plan or corporate structure of the Debtors shall be deemed to have occurred and shall be in effect on the Effective Date, without any requirement of further action by the security holders, directors, managers, members, or officers of the Debtors or the Liquidating Trustee. Before, on, or after the Effective Date, the appropriate officers, security holders, directors, and managers of the Debtors or the Liquidating Trustee, as applicable, shall be authorized to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Debtors. The authorizations and approvals contemplated by this Article VII.E shall be effective notwithstanding any requirements under non-bankruptcy law.

## E.     Effectuating Documents; Further Transactions

On and after the Effective Date, the Liquidating Trustee is authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and the Restructuring Transactions in the name of and on behalf of the Debtors after the Effective Date, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

## F.     Section 1146 Exemption

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers of property under or in connection with the Plan or pursuant to: (i) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors or the Liquidating Trustee; (ii) the Restructuring Transactions; (iii) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (iv) the making, assignment, or recording of any lease or sublease; or (v) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, transfer tax, conveyance fee,

intangibles or similar tax, sales tax, use tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment.

## G.    Preservation of Retained Causes of Action

The Debtors reserve the Retained Causes of Action and the Liquidating Trustee's rights to commence, prosecute, or settle such Retained Causes of Action on behalf of and for the benefit of the Holders of Class 3 General Unsecured Claims shall be preserved notwithstanding the occurrence of the Effective Date. **No Person may rely on the absence of a specific reference in this Combined Disclosure Statement and Plan or the Plan Supplement to any Cause of Action against it as any indication that the Debtors or the Liquidating Trustee, as applicable, will not pursue any and all available Retained Causes of Action against it. The Debtors or the Liquidating Trustee, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Person, except as otherwise expressly provided in the Plan, including Article XIV of the Plan and/or the CIAP Settlement.** The Liquidating Trustee expressly reserves all Retained Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Retained Causes of Action as a consequence of the Confirmation or Consummation of the Plan.

The Liquidating Trustee reserves and shall retain such Retained Causes of Action notwithstanding the rejection or repudiation of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan.  The Liquidating Trustee shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.

## H.    Health and Benefit Plans of the Debtors and Post-Effective Date Debtors

Unless otherwise assumed by Pictor Biotech, Inc. pursuant to its asset purchase agreement, there are no health and/or benefit plans of the Debtors existing as of the Effective Date.

## I.    Closing the Chapter 11 Cases

After the Effective Date, the Liquidating Trustee will file a motion to close the Chapter 11 Cases in accordance with the Bankruptcy Code and Bankruptcy Rules.

45

**J.**    **U.S. Securities and Exchange Commission**

Notwithstanding any language to the contrary contained in this Combined Disclosure Statement and Plan and/or the Confirmation Order, no provision of the Plan or the Confirmation Order shall (i) preclude the SEC from enforcing its police or regulatory powers; or (ii) enjoin, limit, impair, or delay the SEC from commencing or continuing any claims, causes of action, proceedings or investigations against any non-Debtor Person in any forum.

## ARTICLE VIII
## SUBSTANTIVE CONSOLIDATION

Except as otherwise provided in the Plan, the Debtors shall continue to maintain their separate corporate existences after the Effective Date for all purposes, other than the treatment of Claims, Interests, and Distributions under the Plan. Except as expressly provided in the Plan (or as otherwise ordered by the Bankruptcy Court), on the Effective Date for purposes of voting to accept or reject the Plan and Distributions: (i) the Assets and liabilities of the Debtors shall be deemed merged or treated as though they were merged into and with the Assets and liabilities of Debtor Solar Biotech, Inc.; (ii) all guaranties of the Debtors of the obligations of any other Debtor shall be deemed eliminated and extinguished so that any Claim against any Debtor, and any guarantee thereof executed by any Debtor and any joint or several liability of any of the Debtors shall be deemed to be one obligation of Debtor Solar Biotech, Inc.; (iii) each and every Claim filed or to be filed in any of these Chapter 11 Cases shall be treated as filed against the consolidated Debtors and shall be treated as one Claim against and obligation of Solar Biotech, Inc.; and (iv) for purposes of determining the availability of the right of setoff under section 553 of the Bankruptcy Code, the Debtors shall be treated as one entity, Solar Biotech, Inc., so that, subject to the other provisions of section 553 of the Bankruptcy Code, debts due to any of the Debtors may be set off against the debts of any of the other Debtors. Such substantive consolidation shall not (other than for purposes relating to the Plan) affect the legal and corporate structures of the Post-Effective Date Debtors. Moreover, such substantive consolidation shall not affect any subordination provisions set forth in any agreement relating to any Claim or Interest or the ability of the Post-Effective Date Debtors to seek to have any Claim or Interest subordinated in accordance with any contractual rights or equitable principles. Notwithstanding anything in this section to the contrary, all U.S. Trustee Fees shall be calculated on a separate legal entity basis for each Debtor or Post-Effective Date Debtor, as applicable; provided, however, nothing in this Plan or Confirmation Order shall preclude the Liquidating Trustee from dismissing one case while keeping the other case open.

## ARTICLE IX
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**A.**    **Rejection of Executory Contracts and Unexpired Leases**

On the Effective Date, except as otherwise provided herein, each Executory Contract or Unexpired Lease not previously assumed, assumed and assigned, or rejected shall be deemed automatically rejected, pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease: (i) is the subject of a motion to assume such Executory Contracts or

Unexpired Leases that is pending on the Confirmation Date; (ii) is a contract, release, or other agreement or document entered into in connection with the Plan; or (iii) is an Insurance Policy.

Entry of the Confirmation Order by the Bankruptcy Court shall, subject to and upon the occurrence of the Effective Date, constitute a Final Order approving the rejection of the Executory Contracts and Unexpired Leases rejected pursuant to the Plan. Any motions to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by the Bankruptcy Court on or after the Effective Date by a Final Order.

## B.    <u>Insurance Policies</u>

Notwithstanding anything to the contrary in the Combined Disclosure Statement and Plan, the Plan Supplement, the Confirmation Order, any bar date notice or claim objection, any other document related to any of the foregoing or any other order of the Bankruptcy Court (including, without limitation, any other provision that purports to be preemptory or supervening, grants an injunction, discharge or release, confers Bankruptcy Court jurisdiction, or requires a party to opt out of or object to any releases):

a.    all Insurance Policies are treated as and deemed to be Executory Contracts under the Plan and, on the Effective Date, each of the Debtors or the Liquidating Trustee, as applicable, shall be deemed to have assumed all Insurance Policies;

b.    on and after the Effective Date, the Liquidating Trustee, on behalf of the Debtors, shall become and remain liable in full for all of their and the Debtors' obligations under the Insurance Policies regardless of whether such obligations arise before or after the Effective Date, and without the need or requirement for Insurers to file or serve any Proof of Claim, Cure Claim, or a request, application, claim, proof or motion for payment or allowance of any Administrative Claim;

c.    nothing alters, modifies, amends, impairs or otherwise affects the terms or conditions of any Insurance Policy or the rights and obligations thereunder; and

d.    the automatic stay of section 362(a) of the Bankruptcy Code and the injunctions set forth in Article XIV of the Plan, if and to the extent applicable, shall be deemed lifted without further order of this Bankruptcy Court, solely to permit: (i) claimants with valid workers' compensation claims or direct action claims against an Insurer under applicable non-bankruptcy law to proceed with their claims; (ii) the Insurers to administer, handle, defend, settle, and/or pay, in the ordinary course of business and without further order of the Bankruptcy Court, (A) workers' compensation claims, (B) claims where a claimant asserts a direct claim against any Insurer under applicable non-bankruptcy law, or an order has been entered by the Bankruptcy Court granting a claimant relief from the automatic stay or the injunctions set forth in Article XIV of the Plan to proceed with its claim, and (C) all costs in relation to each of the foregoing; and (iii) to the extent permissible under applicable non-bankruptcy law and in accordance with the terms of the Insurance Policies, the

Insurers to cancel any Insurance Policies, and take other actions relating to the Insurance Policies (including effectuating a setoff).

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Debtors', or the Liquidating Trustee's, as applicable, foregoing assumption of each of the Insurance Policies. In addition, on and after the Effective Date, the Liquidating Trustee shall not terminate or otherwise reduce, limit, or restrict the coverage under any of the D&O Liability Insurance Policies with respect to conduct occurring prior thereto, and all directors, managers, officers, members, and trustees of the Debtors who served in such capacity at any time prior to the Effective Date, subject to the terms and conditions of the D&O Liability Insurance Policies, shall be entitled to the full benefits of any such D&O Liability Insurance Policy for the full term of such policy regardless of whether such directors, managers, officers, members, or trustees remain in such positions after the Effective Date. This includes the existing D&O Liability Insurance Policies continuing its coverage for and payment of severance claims asserted by Noblegen terminated employees and the D&O Tail Policy. Notwithstanding anything to the contrary in Article XIV, all of the Debtors' current and former directors', managers', officers', members', and trustees' rights, if any, as beneficiaries of the D&O Liability Insurance Policies are preserved to the extent set forth herein.

## C.    Indemnification Obligations

Subject to the last sentence of this paragraph, any obligations of the Debtors pursuant to their organizational documents, including amendments, entered into any time prior to the Effective Date, to indemnify, reimburse, or limit the liability of any Person pursuant to the Debtors' organizational documents, policy of providing employee indemnification, applicable state law, or specific agreement in respect of any claims, demands, suits, causes of action, or proceedings against such Persons based upon any act or omission related to such Persons' service with, for, or on behalf of the Debtors prior to the Effective Date with respect to all present and future actions, suits, and proceedings relating to the Debtors shall survive Confirmation of the Plan and except as set forth herein, remain unaffected thereby, and shall not be discharged, irrespective of whether such defense, indemnification, reimbursement, or limitation of liability accrued or is owed in connection with an occurrence before or after the Petition Date; provided, however, that all monetary obligations under this provision shall be limited solely to available insurance coverage and neither the post-Effective Date Debtors, the Liquidating Trustee, nor any of the assets thereof shall be liable for any such obligations.

The Debtors' indemnification obligations shall not apply to or cover any Claims, suits, or actions against a Person that result in a Final Order determining that such Person is liable for fraud, willful misconduct, gross negligence, bad faith, self-dealing, or breach of the duty of loyalty.

**D.**     **Claims Based on Rejection of Executory Contracts or Unexpired Leases**

Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be Filed with the Bankruptcy Court by the later of (i) the date set forth in an order of the Bankruptcy Court (including the Confirmation Order) authorizing the Debtors to reject contracts or leases pursuant to section 365 of the Bankruptcy Code (unless the order authorizing such rejection provides otherwise), (ii) thirty (30) days after the claimant is served with notice of the applicable Court order, and (iii) the Effective Date. **Absent further order of the Bankruptcy Court, any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed with the Bankruptcy Court within such time may be forever barred, estopped, and enjoined from: (a) asserting such Claim against the Debtors, their estates, the Liquidating Trustee, or the property of any of the foregoing, or thereafter filing a Proof of Claim with respect thereto in the Chapter 11 Cases; (b) with respect to such Claim, being treated as a Creditor of the Debtors for the purposes of voting upon the Plan; and (c) receiving or being entitled to receive any payment or Distribution from the Debtors or the Liquidating Trustee, as applicable, with respect to such Claim, without further order of the Court.** All Allowed Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims.

**E.**     **Preexisting Obligations to the Debtors under Executory Contracts and Unexpired Leases**

Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors under such Executory Contracts or Unexpired Leases. In particular, notwithstanding any non-bankruptcy law to the contrary, the Liquidating Trustee expressly reserves and does not waive any right to receive, or any continuing obligation of a counterparty to provide warranties or continued obligations concerning goods or services previously purchased by the Debtors contracting from non-Debtor counterparties to rejected Executory Contracts or Unexpired Leases.

**F.**     **Modifications, Amendments, Supplements, Restatements, or Other Agreements**

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and Executory Contracts and Unexpired Leases related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

3201701.6 118609-112672

**G.**     **Reservation of Rights**

Nothing contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Liquidating Trustee has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Liquidating Trustee, as applicable, shall have 30 days following entry of a Final Order resolving such dispute to alter its treatment of such contract or lease under the Plan.

**H.**     **Nonoccurrence of Effective Date**

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

## ARTICLE X
## CERTAIN RISK FACTORS TO BE CONSIDERED PRIOR TO VOTING

THE PLAN AND ITS IMPLEMENTATION ARE SUBJECT TO CERTAIN RISKS, INCLUDING, BUT NOT LIMITED TO, THE RISK FACTORS SET FORTH BELOW. HOLDERS OF CLAIMS WHO ARE ENTITLED TO VOTE ON THE PLAN SHOULD READ AND CAREFULLY CONSIDER THE RISK FACTORS, AS WELL AS THE OTHER INFORMATION SET FORTH IN THE PLAN AND THE DOCUMENTS DELIVERED TOGETHER HEREWITH OR REFERRED TO OR INCORPORATED BY REFERENCE HEREIN, BEFORE DECIDING WHETHER TO VOTE TO ACCEPT OR REJECT THE PLAN. THESE FACTORS SHOULD NOT, HOWEVER, BE REGARDED AS CONSTITUTING THE ONLY RISKS INVOLVED IN CONNECTION WITH THE PLAN AND ITS IMPLEMENTATION.

**A.**     **The Plan May Not Be Accepted**

The Debtors can make no assurances that the requisite acceptances of the Plan will be received. In the event that the Plan is not accepted by Creditors, the Chapter 11 Cases may be converted to chapter 7 of the Bankruptcy Code.

**B.**     **The Plan May Not Be Confirmed**

Even if the Debtors receive the requisite acceptances, there is no assurance that the Bankruptcy Court, which may exercise substantial discretion as a court of equity, will confirm the Plan. Even if the Bankruptcy Court determines that the Combined Disclosure Statement and Plan and the balloting procedures and results were appropriate, the Bankruptcy Court could still decline to confirm the Plan if it finds that any of the statutory requirements for confirmation have not been met. Moreover, there can be no assurance that modifications to the Combined Disclosure Statement and Plan will not be required for Confirmation or that such modifications would not necessitate the re-solicitation of votes. If the Plan is not confirmed, the Plan will need to be revised and it is unclear whether a chapter 11 reorganization or liquidation of the Debtors' assets could be implemented and what distribution the Holders of Allowed Claims would receive. If an alternative cannot be agreed to, it is possible that the Debtors would have to liquidate their remaining assets in chapter 7, in which case it is likely that the Holders of Allowed Claims would receive less favorable treatment than they would receive under the Plan. There can be no assurance that the terms of any such alternative would be similar to or as favorable to the Debtors' creditors as those proposed in the Plan.

**C.**     **Distributions to Holders of Allowed Claims Under the Plan May Be Inconsistent with Projections**

Projected distributions are based upon good faith estimates of the total amount of Claims ultimately Allowed and the funds available for distribution. There can be no assurance that the estimated Claim amounts set forth in the Plan are correct. These estimated amounts are based on certain assumptions with respect to a variety of factors. Both the actual amount of Allowed Claims in a particular Class and the funds available for distribution to such Class may differ from the Debtors' estimates. If the total amount of Allowed Claims in a Class is higher than the Debtors' estimates, or the funds available for distribution to such Class are lower than the Debtors' estimates, the percentage recovery to Holders of Allowed Claims in such Class will be less than projected.

**D.**     **Objections to Classification of Claims**

Section 1122 of the Bankruptcy Code requires that the Plan classify Claims and Interests. The Bankruptcy Code also provides that the Plan may place a Claim or Interest in a particular Class only if such Claim or Interest is substantially similar to the other Claims or Interests of such Class. The Debtors believe that all Claims and Interests have been appropriately classified in the Plan. To the extent that the Bankruptcy Court finds that a different classification is required for the Plan to be confirmed, the Debtors would seek to (i) modify the Plan to provide for whatever classification might be required for Confirmation and (ii) use the acceptances received from any Holder of Claims pursuant to this solicitation for the purpose of obtaining the approval of the Class or Classes of which such Holder ultimately is deemed to be a member. Any such reclassification of Claims, although subject to the notice and hearing requirements of the Bankruptcy Code, could adversely affect the Class in which such Holder was initially a member, or any other Class under the Plan, by changing the composition of such Class and the vote required for approval of the Plan. There can be no assurance that the Bankruptcy Court, after finding that

3201701.6 118609-112672

a classification was inappropriate and requiring a reclassification, would approve the Plan based upon such reclassification. Except to the extent that modification of classification in the Plan requires re-solicitation, the Debtors will, in accordance with the Bankruptcy Code and the Bankruptcy Rules, seek a determination by the Bankruptcy Court that acceptance of the Plan by any Holder of Claims pursuant to this solicitation will constitute a consent to the Plan's treatment of such Holder, regardless of the Class as to which such Holder is ultimately deemed to be a member. The Debtors believe that under the Bankruptcy Rules, they would be required to re-solicit votes for or against the Plan only when a modification adversely affects the treatment of the Claim or Interest of any Holder.

The Bankruptcy Code also requires that the Plan provide the same treatment for each Claim or Interest of a particular Class unless the Holder of a particular Claim or Interest agrees to a less favorable treatment of its Claim or Interest. The Debtors believe that the Plan complies with the requirement of equal treatment. To the extent that the Bankruptcy Court finds that the Plan does not satisfy such requirement, the Bankruptcy Court could deny confirmation of the Plan. Issues or disputes relating to classification and/or treatment could result in a delay in the confirmation and consummation of the Plan and could increase the risk that the Plan will not be consummated.

## E.      Failure to Consummate the Plan

The Plan provides for certain conditions that must be satisfied (or waived) prior to the Effective Date. Accordingly, even if the Plan is confirmed by the Bankruptcy Court, there can be no assurance that the Plan will be consummated.

## F.      Debtor Release and/or Injunction Provisions May Not Be Approved

The Combined Disclosure Statement and Plan contains a Debtor release and certain exculpations and injunction language. Parties are urged to read these provisions carefully to understand how Confirmation and Consummation of the Plan will affect any Claim, interest, right, or action with regard to the Debtor and certain third parties.

THE COMBINED DISCLOSURE STATEMENT AND PLAN SHALL BIND ALL HOLDERS OF CLAIMS AGAINST THE DEBTORS TO THE FULLEST EXTENT AUTHORIZED OR PROVIDED UNDER THE APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE AND ALL OTHER APPLICABLE LAW.

There can be no assurance that the Debtor Release and injunction, as provided in Article XIV of the Plan, will be granted. If the Bankruptcy Court does not grant such relief, this may result in a plan of liquidation that differs from the Plan or the Plan not being confirmed.

3201701.6 118609-112672

## G.        Reductions to Estimated Creditor Recoveries

The Allowed amount of Claims in any Class could be greater than projected, which, in turn, could cause the amount of distributions to creditors in such Class to be reduced substantially. The Allowed amount of Administrative Claims or Priority Tax Claims could be greater than estimated which would cause a reduction in the amount to be distributed to General Unsecured Claims. The amount of cash realized from the liquidation of the Debtors' remaining assets could be less than anticipated, which could cause the amount of distributions to creditors to be reduced, provided, however, it is a condition to the effectiveness of the Plan that the Compromised Ingredion Secured Claim be paid in full, in cash on the Effective Date.

## H.        Certain Tax Considerations

### 1.        Certain U.S. Federal Income Tax Consequences

A summary description of certain U.S. federal income tax consequences of this Combined Disclosure Statement and Plan is provided below. The description of tax consequences below is for informational purposes only and, due to lack of definitive judicial or administrative authority or interpretation, substantial uncertainties exist with respect to various U.S. federal income tax consequences of this Combined Disclosure Statement and Plan as discussed herein. Only the potential material U.S. federal income tax consequences to the Debtors and to hypothetical Holders of Claims who are entitled to vote to accept or reject this Combined Disclosure Statement and Plan are described below. This summary is based on the Internal Revenue Code of 1986, as amended (the "Internal Revenue Code"), Treasury Regulations promulgated and proposed thereunder (the "Treasury Regulations"), judicial decisions, and published administrative rules and pronouncements of the IRS, all as in effect on the date hereof and all of which are subject to change or differing interpretations, possibly with retroactive effect. No opinion of counsel has been sought or obtained with respect to any tax consequences of this Combined Disclosure Statement and Plan, and no tax opinion is being given in this Combined Disclosure Statement and Plan. No rulings or determinations of the IRS or any other tax authorities have been obtained or sought with respect to any tax consequences of this Combined Disclosure Statement and Plan, and the discussion below is not binding upon the IRS or such other authorities. No representations are being made regarding the particular tax consequences of the confirmation and consummation of this Combined Disclosure Statement and Plan. No assurance can be given that the IRS would not assert, or that a court would not sustain, a different position from any discussed herein.

The discussion of the U.S. federal income tax consequences below is based on the Tax Code, Treasury Regulations promulgated and proposed thereunder, judicial decisions, and administrative rulings and pronouncements of the IRS and other applicable authorities, all as in effect on the date hereof. Legislative, judicial, or administrative changes or interpretations enacted or promulgated in the future could alter or modify the analyses and conclusions set forth below. It cannot be predicted at this time whether any tax legislation will be enacted or, if enacted, whether any tax law changes contained therein would affect the tax consequences to the Holders of Claims. Any such changes or interpretations may be retroactive and could significantly affect the U.S. federal income tax consequences discussed below.

3201701.6 118609-112672

THIS DISCUSSION DOES NOT ADDRESS FOREIGN, STATE, OR LOCAL TAX CONSEQUENCES OF THIS COMBINED DISCLOSURE STATEMENT AND PLAN, NOR DOES IT PURPORT TO ADDRESS THE U.S. FEDERAL INCOME TAX CONSEQUENCES OF THIS COMBINED DISCLOSURE STATEMENT AND PLAN TO SPECIAL CLASSES OF TAXPAYERS (SUCH AS FOREIGN ENTITIES, NONRESIDENT ALIEN INDIVIDUALS, CERTAIN EXPATRIATES OR FORMER LONG-TERM RESIDENTS OF THE UNITED STATES, GOVERNMENTAL AUTHORITIES, OR AGENCIES, PASS-THROUGH ENTITIES SUCH AS PARTNERSHIPS AND HOLDERS THROUGH SUCH PASS-THROUGH ENTITIES, S CORPORATIONS, RETIREMENT PLANS, INDIVIDUAL OR TAX-DEFERRED ACCOUNTS, MUTUAL FUNDS, INSURANCE COMPANIES, BANKS, OR OTHER FINANCIAL INSTITUTIONS, SMALL BUSINESS INVESTMENT COMPANIES, REGULATED INVESTMENT COMPANIES, CERTAIN SECURITIES TRADERS, BROKER-DEALERS, REAL ESTATE INVESTMENT TRUSTS, AND TAX-EXEMPT ORGANIZATIONS). FURTHERMORE, ESTATE AND GIFT TAX ISSUES ARE NOT ADDRESSED HEREIN AND TAX CONSEQUENCES RELATING TO THE ALTERNATIVE MINIMUM TAX AND MEDICARE TAX ARE NOT DISCUSSED HEREIN.

(a)      *Consequences to the Debtors*

Under the Tax Code, a U.S. taxpayer generally must include in gross income the amount of any cancellation of indebtedness ("COD") income recognized during the taxable year. COD income generally equals the excess of the adjusted issue price of the indebtedness discharged over the sum of (i) the amount of cash, (ii) the issue price of any new debt, and (iii) the fair market value of any other property (including stock) transferred by the Debtors in satisfaction of such discharged indebtedness. COD income also includes any interest that has been previously accrued and deducted but remains unpaid at the time the indebtedness is discharged.

Section 108(a)(1)(A) of the Tax Code provides an exception to this rule, however, where a taxpayer is in bankruptcy and where the discharge is granted or is effected pursuant to an approved plan of reorganization by the Bankruptcy Court. In such a case, instead of recognizing income, the taxpayer is required, under section 108(b) of the Tax Code, to reduce certain of its tax attributes by the amount of COD income. The attributes of the taxpayer are to be reduced in the following order: current year Net Operating Losses ("NOLs") and NOL carryovers, general business and minimum tax credit carryforwards, capital loss carryforwards, the basis of the taxpayer's assets, and finally, foreign tax credit carryforwards. The reduction in the foregoing tax attributes generally occurs after the calculation of a debtor's tax for the year in which the debt is discharged. Section 108(b)(5) of the Tax Code permits a taxpayer to elect to first apply the reduction to the basis of the taxpayer's depreciable assets, with any remaining balance applied to the taxpayer's other tax attributes in the order stated above. In addition to the foregoing, section 108(e)(2) of the Tax Code provides a further exception to the realization of COD income upon the discharge of debt in that a taxpayer will not recognize COD income to the extent that the taxpayer's satisfaction of the debt would have given rise to a deduction for federal income tax purposes.

The Debtors may realize COD income as a result of this Combined Disclosure Statement and Plan. The ultimate amount of any COD income realized by the Debtors is uncertain because,

54

among other things, it will depend on the fair market value of all assets transferred to Holders of Claims issued on the Effective Date.

In general, if a debtor sells property to a third party it will recognize taxable income equal to the difference between the amount realized on the sale and its tax basis in such assets sold. In addition, if a debtor conveys appreciated (or depreciated) property (i.e., property having an adjusted tax basis less (or greater) than its fair market value) to a creditor in cancellation of debt, the debtor must recognize taxable gain or loss (which may be ordinary income or loss, capital gain or loss, or a combination of each) equal to the excess or shortfall, respectively, of such fair market value over the debtor's adjusted tax basis in such property.

(b)    *Consequences to Holders of Class 3 General Unsecured Claims*

Pursuant to this Combined Disclosure Statement and Plan, each Holder of a Class 3 Allowed General Unsecured Claim against the Debtors will receive in satisfaction of its Claim a *pro rata* share of the GUC Recovery. The U.S. federal income tax treatment to Holders of Allowed General Unsecured Claims may depend in part on the tax basis a Holder has in its Claim, and, in some circumstances, what gave rise to or the nature of the Holder's Claim.

A Creditor who receives Cash in satisfaction of its Claims may recognize ordinary income or loss to the extent that any portion of such consideration is characterized as accrued interest or original issue discount ("OIDD"). A Creditor who did not previously include in income accrued but unpaid interest attributable to its Claim, and who receives a distribution on account of its Claim pursuant to the Plan, will be treated as having received interest income to the extent that any consideration received is characterized for U.S. federal income tax purposes as interest, regardless of whether such Creditor realizes an overall gain or loss as a result of surrendering its Claim. A Creditor who previously included in its income accrued but unpaid interest attributable to its Claim should recognize an ordinary loss to the extent that such accrued but unpaid interest is not satisfied, regardless of whether such Creditor realizes an overall gain or loss as a result of the distribution it may receive under the Plan on account of its Claim. Pursuant to Article XIII.D of the Plan, distributions with respect to a Claim will be allocated first to the principal portion of such Claim (as determined for U.S. federal income tax purposes) and, thereafter, to the remaining portion of such Claim, if any. However, there is no assurance that such allocation would be respected by the IRS for U.S. federal income tax purposes.

Under the "market discount" provisions of the Internal Revenue Code, some or all of any gain realized by a Holder of a Claim who exchanges the Claim for an amount may be treated as ordinary income (instead of capital gain), to the extent of the amount of "market discount" on the debt instruments constituting the exchanged Claim. In general, a debt instrument is considered to have been acquired with "market discount" if it is acquired other than on original issue and if its Holder's adjusted tax basis in the debt instrument is less than (a) the sum of all remaining payments to be made on the debt instrument, excluding "qualified stated interest" or (b) in the case of a debt instrument issued with OID, its adjusted issue price, in each case, by at least a *de minimis* amount (equal to 0.25% of the sum of all remaining payments to be made on the debt instrument, excluding qualified stated interest, multiplied by the number of remaining whole years to maturity). Any gain recognized by a Holder on the taxable disposition of Allowed Claims

(determined as described above) that were acquired with market discount should be treated as ordinary income to the extent of the market discount that accrued thereon while the Allowed Claims were considered to be held by the Holder (unless the U.S. Holder elected to include market discount in income as it accrued).

Under the Plan, a portion of the payment received by Holders of Allowed Claims may be attributable to accrued interest or OID on such Claims. Such amount should be taxable to that Holder as interest income if such accrued interest or OID has not been previously included in the Holder's gross income for United States federal income tax purposes. Conversely, Holders of Claims may be able to recognize a deductible loss to the extent any accrued interest or OID on the Claims was previously included in the Holder's gross income but was not paid in full by the Debtors. If the payment does not fully satisfy all principal and interest or OID on Allowed Claims, the extent to which payment will be attributable to accrued interest or OID is unclear. Whether the applicable Holder of such Claims will recognize a loss or any other tax treatment will depend upon facts and circumstances that are specific to the nature of the Holder and its Claims. Creditors should consult their own tax advisors.

(c)    <em>Information Reporting and Withholding</em>

In connection with the Combined Disclosure Statement and Plan, the Debtors and the Liquidating Trustee will comply with all applicable withholding and information reporting requirements imposed by U.S. federal, state, local, and foreign taxing authorities, and all Distributions under the Plan will be subject to those withholding and information reporting requirements. Holders of Claims may be required to provide certain tax information as a condition to receiving Distributions pursuant to the Plan. In the case of any non-U.S. Holders, if applicable, the Liquidating Trustee may be required to withhold up to 30% of the income or proceeds allocable to such persons, depending on the circumstances (including whether the type of income is subject to a lower treaty rate or is otherwise excluded from withholding). As indicated above, the foregoing discussion of the U.S. federal income tax consequences of the Plan does not generally address the consequences to non-U.S. Holders. Accordingly, such Holders should consult their tax advisors with respect to the U.S. federal income tax consequences of the Plan.

In general, information reporting requirements may apply to Distributions pursuant to the Plan. Additionally, under the backup withholding rules, a Holder may be subject to backup withholding with respect to Distributions made pursuant to the Plan, unless a U.S. Holder provides the applicable withholding agent with a taxpayer identification number, certified under penalties of perjury, as well as certain other information, or otherwise establish an exemption from backup withholding. Backup withholding is not an additional tax. Any amounts withheld under the backup withholding rules will be allowed as a credit against a U.S. Holder's U.S. federal income tax liability, if any, and may entitle a U.S. Holder to a refund; *provided, that* the required information is timely furnished to the IRS.

In addition, from an information reporting perspective, Treasury Regulations generally require disclosure by a taxpayer on its U.S. federal income tax return of certain types of transactions in which the taxpayer participated, including, among other types of transactions, certain transactions that result in the taxpayer's claiming a loss in excess of specified thresholds. Holders of Claims

3201701.6 118609-112672

or Interests are urged to consult their tax advisors regarding these regulations and whether the transactions contemplated by the Plan would be subject to these regulations and require disclosure on the Holder's tax returns.

THE U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE COMBINED DISCLOSURE STATEMENT AND PLAN ARE COMPLEX. THE FOREGOING SUMMARY DOES NOT DISCUSS ALL ASPECTS OF U.S. FEDERAL INCOME TAXATION THAT MAY BE RELEVANT TO A PARTICULAR HOLDER OF A CLAIM OR INTEREST IN LIGHT OF SUCH HOLDER'S CIRCUMSTANCES. EACH HOLDER OF A CLAIM OR INTEREST IS URGED TO CONSULT WITH SUCH HOLDER'S TAX ADVISORS CONCERNING THE U.S. FEDERAL, STATE, LOCAL, FOREIGN, AND OTHER TAX CONSEQUENCES OF THE COMBINED DISCLOSURE STATEMENT AND PLAN.

## ARTICLE XI
## THE LIQUIDATING TRUSTEE

### A.        The Estate Assets

As detailed herein, the Estate Assets include: (a) Retained Causes of Action; (b) any other Claims and Causes of Action that are not Purchased Assets under the Sale Order; (c) the Sale Proceeds in the Sale Proceeds Trust Account; and (d) the proceeds of each of the foregoing.

### B.        Distribution of the Estate Assets

The Estate Assets, including any recovery from the prosecution of the Retained Causes of Action, if any, will be distributed in accordance with the Plan, the Confirmation Order, and the Bankruptcy Code.

### C.        Appointment of the Liquidating Trustee

The Liquidating Trustee shall be appointed by the Committee.  The identity of the Liquidating Trustee and members of the Oversight Board will be identified in the Plan Supplement.

### D.        Rights and Powers of the Debtors and the Liquidating Trustee

#### 1.        Powers of the Debtors and the Liquidating Trustee

All distributions under the Plan shall be made on the Effective Date by the Debtors or thereafter by the Liquidating Trustee or its designees;  provided, however, it is a condition to the effectiveness of the Plan that the Compromised Ingredion Secured Claim be paid in full, in cash on the Effective Date.  After the Effective Date, the Liquidating Trustee shall have the right to object to, allow, or otherwise resolve any Claim (other than the Ingredion Secured Claim).

The Debtors and the Liquidating Trustee, as applicable, shall not be required to give any bond or surety or other security for the performance of their respective duties unless otherwise ordered by the Bankruptcy Court. Additionally, in the event that the Bankruptcy Court requires the Debtors or the Liquidating Trustee, as applicable, to post a bond or surety, all costs and expenses of

3201701.6 118609-112672

procuring any such bond or surety shall be paid for with Cash from the Sale Proceeds Trust Account.

## 2. Expenses Incurred On or After the Effective Date

Except as otherwise ordered by the Bankruptcy Court, the fees and expenses incurred by the Liquidating Trustee on or after the Effective Date (including taxes) and any reasonable compensation and expense reimbursement Claims (including attorney fees and expenses) made by the Liquidating Trustee shall be paid in Cash from the Sale Proceeds Trust Account without any further notice to or action, order, or approval of the Bankruptcy Court.

## E. Distribution and Withholding

Notwithstanding anything in the Plan to the contrary, the Liquidating Trustee will make, or cause to be made, all Distributions under the Plan other than those distributions made by the Debtors on the Effective Date (including the Compromised Ingredion Secured Claim which shall be paid by the Debtors in full, in cash on the Effective Date).

The Liquidating Trustee may withhold from amounts distributable to any Person any and all amounts, determined in the Liquidating Trustee's sole discretion, required to be withheld by the Plan, or applicable law, regulation, rule, ruling, directive, or other governmental requirement.

## F. Insurance

The Liquidating Trustee may maintain customary insurance coverage for the protection of the Liquidating Trustee and Professionals retained by the Liquidating Trustee on and after the Effective Date. The cost of such insurance shall be deemed a trust administrative expense.

## G. Other Rights and Remedies

In addition to the Liquidating Trustee's rights and duties with respect to the Liquidating Trustee Agreement, on and after the Effective Date, the Liquidating Trustee will be authorized to implement the Plan and any applicable orders of the Bankruptcy Court.

On the Effective Date, the Liquidating Trustee shall: (i) take possession of all books, records, and files of the Debtors and their Estates, in all forms including electronic and hard copy, other than the Debtors' Professionals' work product and other documents; and (ii) provide for the retention and storage of such books, records, and files until such time as the Liquidating Trustee determines that retention of same is no longer necessary or required. Any and all rights to conduct investigations with respect to Causes of Action or claims not released by the Debtors and to assert such Causes of Action shall vest with the Liquidating Trustee and shall continue until dissolution of the Debtors and the Liquidating Trustee shall be deemed a successor in interest to the Debtors will all requisite standing and authority to pursue such rights, including the Causes of Action, as if neither the Confirmation Date nor the Effective Date had occurred. The filing of the final monthly report (for the month in which the Effective Date occurs) and all subsequent quarterly reports shall be the responsibility of the Liquidating Trustee.

3201701.6 118609-112672

**H.**     **Priority Claims Reserve**

On the Effective Date, the Liquidating Trustee shall establish the Priority Claims Reserve by depositing Cash from the Estate Assets in the amount of all anticipated Allowed Priority Tax Claims and Allowed Other Priority Claims. The Priority Claims Reserve shall be used to pay Allowed Priority Tax Claims and Allowed Other Priority Claims. If all or any portion of a Priority Tax Claim or Other Priority Claim shall become a Disallowed Claim, or is reclassified as a General Unsecured Claim, then the amount on deposit in the Priority Claims Reserve attributable to such surplus or such Disallowed Claim or reclassified Claim, including the interest that has accrued on said amount while on deposit in the Priority Claims Reserve, shall remain in the Priority Claims Reserve to the extent that the Liquidating Trustee determines necessary to ensure that the Cash remaining in the Priority Claims Reserve is sufficient to ensure that Allowed Priority Tax Claims and Allowed Other Priority Claims will be paid in accordance with the Plan.

**I.**     **Disputed Claims Reserve**

The Liquidating Trustee may maintain, in accordance with the Liquidating Trustee's powers and responsibilities under the Plan and the Liquidating Trust Agreement, a Disputed Claims Reserve. The Liquidating Trustee may, in its reasonable discretion, distribute such amounts (net of any expenses, including any taxes relating thereto), as provided herein and in the Liquidating Trust Agreement, as Disputed Claims are resolved pursuant to Article XIII hereof, and such amounts may be distributed on account of such Disputed Claims as if such Disputed Claims were Allowed Claims as of the Effective Date.

The Liquidating Trustee will pay taxes on the taxable net income or gain allocable to Holders of Disputed Claims on behalf of such Holders. In the event, and to the extent, any Cash retained on account of Disputed Claims in the Disputed Claims Reserve is insufficient to pay the portion of any such taxes attributable to the taxable income arising from the assets allocable to, or retained on account of, Disputed Claims, such taxes shall be (i) reimbursed from any subsequent Cash amounts retained on account of Disputed Claims, or (ii) to the extent such Disputed Claims have subsequently been resolved, deducted from any amounts distributable by the Liquidating Trustee as a result of the resolutions of such Disputed Claims.

**J.**     **Tax Identification Numbers**

The Liquidating Trustee may require any recipient of a Distribution to furnish to the Liquidating Trustee its Employer or Taxpayer Identification Number as assigned by the IRS or certify to the Liquidating Trustee's satisfaction that distributions to the recipient of a Distribution are exempt from backup withholding. The Liquidating Trustee may condition any distribution to any recipient of a Distribution upon receipt of such identification number.  If after reasonable inquiry, any recipient of a Distribution fails to provide such identification number to the Liquidation Trustee, the Liquidation Trustee shall deem such recipient's Claim as Disallowed and no distribution shall be made on account of such recipient's Claim.

3201701.6 118609-112672

### K.    **Wind Down**

In addition to the Liquidating Trustee's rights and duties with respect to the Liquidating Trust Agreement, on and after the Effective Date, the Liquidating Trustee will be authorized to implement the Plan and any applicable orders of the Bankruptcy Court. The Liquidating Trustee shall retain the power and authority to take any action necessary to wind down and dissolve the Debtors' Estates or take any other action of the Debtors required or permitted under the Bankruptcy Code.  To ensure that the Debtors are dissolved properly, the Liquidating Trustee upon taking control after the Effective Date will escrow $20,000.00, which funds will not be used for anything other than dissolving the corporate entities.

As soon as practicable after the Effective Date, the Liquidating Trustee shall: (i) cause the Debtors to comply with, and abide by, the terms of the Pictor Biotech APA; (ii) complete and file all final or otherwise required federal, state, and local tax returns for the Debtors, and pursuant to section 505(b) of the Bankruptcy Code, may request an expedited determination of any unpaid tax liability of each Debtor or its Estate for any tax incurred during the administration of such Debtor's Chapter 11 Case, as determined under applicable tax laws; and (iii) take such other actions as it may be necessary or desirable to carry out the purposes of the Plan. From and after the Effective Date, the Debtors (i) for all purposes shall be deemed to have withdrawn their business operations from any state in which they were previously conducting, or are registered or licensed to conduct, their business operations, and (ii) shall not be liable in any manner to any taxing authority for franchise, business, license, or similar taxes accruing on or after the Effective Date. In addition, the Debtors shall be deemed to have cancelled all Interests pursuant to this Plan. For the avoidance of doubt, the dissolution of the Debtors shall not have any effect, in any manner, on the Retained Causes of Action that the Liquidating Trustee may assert in accordance with the Plan and the Liquidating Trust Agreement.

### L.    **Termination of the Liquidating Trust Agreement**

Notwithstanding any provision of the Plan to the contrary, the Liquidating Trust Agreement shall be dissolved upon the earlier of the distribution of all Estate Assets under the Plan or the fifth anniversary of the Effective Date unless the Bankruptcy Court, upon a motion filed within six months of the fifth anniversary of the Effective Date or the end of any extension period approved by the Bankruptcy Court, determines that a fixed period extension is necessary to facilitate or complete the recovery and liquidation of the Estate Assets; *provided, however*, that adequate funding exists for such extension period as determined by the Bankruptcy Court; *provided, further*, that each request for an extension shall be approved by the Bankruptcy Court within six months prior to the conclusion of the extended term.

The duties, responsibilities, and powers of the Liquidating Trustee will terminate in accordance with the terms of the Liquidating Trust Agreement.

3201701.6 118609-112672

**ARTICLE XII**
**PROVISIONS GOVERNING DISTRIBUTIONS**

**A.**     **Timing and Calculation of Amounts to Be Distributed**

Each Holder of an Allowed Claim against the Debtors shall receive the full amount of the Distributions that the Plan provides for Allowed Claims in the applicable Class from the Debtors, or the Liquidating Trustee, on behalf of the Debtors or the Liquidating Trustee, as applicable. For the avoidance of doubt, the Compromised Ingredion Secured Claim shall be paid by the Debtors in full, in cash on the Effective Date. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, in which case such payment shall be deemed to have occurred when due. If and to the extent that there are Disputed Claims or Disputed Interests, distributions on account of any such Disputed Claims or Disputed Interests shall be made pursuant to the provisions set forth in Article XIII. Notwithstanding anything to the contrary in the Plan, no Holder of an Allowed Claim shall, on account of such Allowed Claim, receive a distribution in excess of the Allowed amount of such Claim plus any interest accruing on such Claim that is actually payable in accordance with the Plan.

**B.**     **Delivery of Distributions and Undeliverable, Unclaimed, of Forfeited Distributions**

    **1.**     **Record Date for Distribution**

On the Distribution Record Date, the Claims Register shall be closed and any party responsible for making distributions shall instead be authorized and entitled to recognize only those record Holders listed on the Claims Register as of the close of business on the Distribution Record Date.

    **2.**     **Delivery of Distributions**

Except as otherwise provided herein, the Debtors or the Liquidating Trustee, as applicable, shall make distributions to Holders of Allowed Claims and Allowed Interests on or after the Effective Date at the address for each such Holder as indicated on the Debtors' records as of the date of any such distribution; *provided, that* the manner of such distributions shall be determined at the discretion of the Debtors or the Liquidating Trustee, as applicable; *provided, further,* that the address for each Holder of an Allowed Claim shall be deemed to be the address set forth in any Proof of Claim Filed by that Holder. Notwithstanding anything to the contrary, the Compromised Ingredion Secured Claim shall be paid by the Debtors in full, in cash on the Effective Date.

61

### 3. Payments and Distributions on Disputed Claims

Distributions made after the Effective Date to Holders of Disputed Claims that are not Allowed Claims as of the Effective Date, but which later become Allowed Claims shall, in the Debtors' or Liquidating Trustee's reasonable discretion, be deemed to have been made by the Debtors or the Liquidating Trustee on the Effective Date, unless the Debtors or Liquidating Trustee and the applicable Holder of such Claim agree otherwise.

### 4. Special Rules for Distributions to Holders of Disputed Claims and Interests

Notwithstanding any provision otherwise in the Plan and except as may be agreed to by the Debtors or the Liquidating Trustee, as applicable, on the one hand, and the Holder of a Disputed Claim or Interest, on the other hand, no partial payments and no partial distributions shall be made with respect to any Disputed Claim or Interests, other than with respect to Professional Fee Claims, until all Disputed Claims or Interests held by the Holder of such Disputed Claim have become Allowed Claims or have otherwise been resolved by settlement or Final Order.

### 5. Fractional Cents

Notwithstanding anything in the Plan to the contrary, no payment of fractional cents shall be made pursuant to the Plan. Whenever any payment of a fraction of a cent under the Plan would otherwise be required, the actual distribution made shall reflect a rounding of such fraction to the nearest whole penny (up or down), with half cents or more being rounded up and fractions less than half of a cent being rounded down.

### 6. Minimum Distributions

Notwithstanding anything to the contrary contained in the Plan, the Debtors and the Liquidating Trustee shall not be required to distribute, and shall not distribute, Cash or other property to the Holder of any Allowed Claim if the amount of Cash or other property to be distributed on account of such Claim is less than $100. Any Holder of an Allowed Claim on account of which the amount of Cash or other property to be distributed is less than $100 shall be forever barred from asserting such Claim against the Debtors or Liquidating Trustee.

### 7. Undeliverable Distributions and Unclaimed Property

All distributions to Holders of Allowed Claims not made by wire transfer shall be made at the address of such Holder as set forth in the Claims Register maintained in the Chapter 11 Cases (subject to any transfer effectuated pursuant to Bankruptcy Rule 3001(e) or, after the Effective Date, a change of address notification provided by a Holder in a manner reasonably acceptable to the Debtors or Liquidating Trustee) or, in the absence of a Filed Proof of Claim, the Schedules and Statements, on the Effective Date. The responsibility to provide the Debtors or the Liquidating Trustee a current address of a Holder of Claims shall always be the responsibility of such Holder and at no time shall the Debtors or the Liquidating Trustee have any obligation to determine a Holder's current address. Nothing contained in the Plan shall require the Debtors or the Liquidating Trustee to attempt to locate any Holder of an Allowed Claim. Amounts in respect of undeliverable distributions made by the Debtors or the Liquidating Trustee shall be held in trust

3201701.6 118609-112672

on behalf of the Holder of the Claim to which they are payable by the Debtors or the Liquidating Trustee until the earlier of the date that such undeliverable distributions are claimed by such Holder and the date 90 days after the date the undeliverable distributions were made. Following the expiration of 90 days after the date the undeliverable distributions were made, the amounts in respect of undeliverable distributions shall revert (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary) to the Debtors or the Liquidating Trustee, as applicable, automatically and without need for a further order by the Bankruptcy Court for distribution in accordance with the Plan. Such Holder shall be deemed to have forfeited its right to any reserved and future distributions from the Debtors or the Liquidating Trustee, and the Claims of such Holder shall be forever barred.

### 8.        Forfeiture of Distribution

If the Holder of a Claim fails to cash a check payable to it within the time period set forth in this Article XII.B hereof, fails to claim an undeliverable Distribution within 90 days after issuance thereof, or fails to complete and return to the Debtors or the Liquidating Trustee the appropriate Form W-8 or Form W-9 within 120 days of the request by the Debtors or the Liquidating Trustee for the completion and return to it of the appropriate form, then such Holder shall be deemed to have forfeited its right to any reserved and future distributions from the Debtors or the Liquidating Trustee, and the Claims of such Holder shall be forever barred. The forfeited distributions shall revert (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary) to the Debtors or the Liquidating Trustee automatically and without need for a further order by the Bankruptcy Court for distribution in accordance with the Plan.

### 9.        Further Distributions Not Feasible

Notwithstanding anything to the contrary in the Plan, if the Debtors or the Liquidating Trustee determines that any Person entitled to a Distribution of the Estate Assets no longer exist or cannot otherwise be reasonably ascertained, or the Debtors or the Liquidating Trustee determines that the Estate Assets are insufficient to make any further distribution economically justifiable, the Debtors or the Liquidating Trustee shall distribute the Estate Assets that constitute Cash in accordance with the Liquidating Trust Agreement.

### 10.        Manner of Payment Pursuant to the Plan

Any payment in Cash to be made pursuant to the Plan shall be made at the election of the Debtors or the Liquidating Trustee, as applicable, by check, wire transfer or such other method as the Debtors or the Liquidating Trustee, as applicable, deem appropriate under the circumstances. Cash payments to foreign creditors may be made, at the option, and in the sole discretion, of the Debtors or the Liquidating Trustee, in such funds and by such means as are necessary or customary in a particular foreign jurisdiction. For purposes of effectuating distributions under the Plan, any Claim denominated in foreign currency shall be converted to U.S. dollars pursuant to the applicable published exchange rate in effect on the Effective Date. Cash payments in the form of checks issued by the Debtors or the Liquidating Trustee shall be null and void if not cashed within 90 days of the date of the issuance thereof and shall be deemed undeliverable distributions.

3201701.6 118609-112672

**C.**     **Compliance with Tax Requirements**

In connection with the Plan, to the extent applicable, the Debtors or the Liquidating Trustee, as applicable, shall comply with all tax withholding and reporting requirements imposed on it by any Governmental Unit, and all distributions pursuant hereto shall be subject to such withholding and reporting requirements. The Debtors or the Liquidating Trustee shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding, payment, and reporting requirements. The Debtors or the Liquidating Trustee may require, in the their sole and absolute discretion and as a condition to the receipt of any distribution, that the Holder of an Allowed Claim complete and return to the Debtors or the Liquidating Trustee the appropriate Form W-8 or Form W-9, as applicable to each Holder. Notwithstanding any other provision of the Plan, (i) each Holder of an Allowed Claim that is to receive a distribution pursuant to the Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income, withholding, and other tax obligations, on account of such distribution, and including, in the case of any Holder of a Disputed Claim that has become an Allowed Claim, any tax obligation that would be imposed upon the Debtors or the Liquidating Trustee in connection with such distribution, and (ii) no distribution shall be made to or on behalf of such Holder pursuant to the Plan unless and until such Holder has made arrangements reasonably satisfactory to the Debtors or the Liquidating Trustee for the payment and satisfaction of such withholding tax obligations or such tax obligation that would be imposed upon the Debtors or the Liquidating Trustee in connection with such distribution.

**D.**     **Allocations**

To the extent that any Allowed Claim entitled to a distribution from Estate Assets consists of indebtedness and accrued but unpaid interest thereon, such distributions shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest; provided, however, that Ingredion has the right to allocate its distribution of cash received from payment on its Compromised Ingredion Secured Claim in whatever manner it determines in its sole and absolute discretion.

**E.**     **No Postpetition Interest on Claims**

Unless otherwise specifically provided for in section 506(b) of the Bankruptcy Code, a Final Order, the Plan, or the Confirmation Order, or required by applicable law, postpetition interest shall not accrue or be paid on any prepetition Claims against the Debtors, and no Holder of a prepetition Claim against the Debtors shall be entitled to interest accruing on or after the Petition Date on any such prepetition Claim.

**F.**     **Foreign Currency Exchange Rate**

Except as otherwise provided in a Bankruptcy Court order, as of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in *The Wall Street Journal*, National Edition, on the Effective Date.

3201701.6 118609-112672

### G.    Setoffs and Recoupment

The Debtors or the Liquidating Trustee may, but shall not be required to, set off against any Claim or any Allowed Claim (other than the Ingredion Secured Claim), and the payments or other distributions to be made pursuant to the Plan in respect of such Claim (other than the Ingredion Secured Claim), claims of any nature whatsoever that the Debtors or the Liquidating Trustee may have against the Holder of such Claim; *provided, that* neither the failure to do so nor the allowance of any Claim hereunder (other than the Ingredion Secured Claim) shall constitute a waiver or release by the Debtors or Liquidating Trustee (other than those released under this Plan or the CIAP Settlement) of any such claim that it may have against such Holder (other than Ingredion).

### H.    Claims Paid or Payable by Third Parties

#### 1.    Claims Paid or Payable by Third Parties

The Debtors or the Liquidating Trustee, as applicable, shall be authorized to reduce in full a Claim (other than the Ingredion Secured Claim), and such Claim shall be Disallowed without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or, as applicable, the Liquidating Trustee, including on account of recourse to collateral held by third parties that secure such Claim. No distributions under the Plan shall be made on account of a Claim that is payable pursuant to one of the Debtors' Insurance Policies, other non-Debtor payment agreements, or collateral held by a third party, until the Holder of such Claim has exhausted all remedies with respect to such Insurance Policy, other non-Debtor payment agreement, or collateral, as applicable. To the extent a Holder of a Claim receives a distribution on account of a Claim and receives payment from a party that is not a Debtor on account of such Claim, such Holder shall, within 14 days of receipt thereof, repay or return the distribution to the applicable Debtor, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan. The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the applicable Debtor annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the 14-day grace period specified above until the amount is repaid. To the extent that one or more of the Debtors' Insurers or non-Debtor payors pays or satisfies in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction or otherwise settled), or collateral or proceeds from such collateral are used to satisfy such Claim, then immediately upon such payment, the applicable portion of such Claim shall be expunged without a Claim objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

#### 2.    Applicability of Insurance Policies

Except as otherwise provided in the Plan, payments to Holders of Claims shall be in accordance with the provisions of any applicable Insurance Policy. Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Person may hold against any other Person, including Insurers under any Insurance Policies, nor shall anything

65

contained herein constitute or be deemed a waiver by any Insurers of any rights or defenses, including coverage defenses, held by such Insurers.

## ARTICLE XIII
## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND DISPUTED CLAIMS AND INTERESTS

### A.    Allowance of Claims and Interests

Prior to the Effective Date, the Debtors, and on and after the Effective Date, the Liquidating Trustee, shall have and shall retain any and all rights and defenses that the Debtors had with respect to any Claim or Interest, except with respect to any Claim or Interest deemed Allowed as of the Effective Date. Except as expressly provided in the Plan or in any Final Order entered in the Chapter 11 Cases prior to the Effective Date (including the Confirmation Order), no Claim or Interest shall become an Allowed Claim or Interest unless and until such Claim or Interest is deemed Allowed under the Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including the Confirmation Order, in the Chapter 11 Cases allowing such Claim. Notwithstanding anything to the contrary herein, if a timely objection to a Proof of Claim has not been Filed or the Schedules and Statements have not been amended with respect to a Claim that was scheduled by the Debtors but was not set forth in the Schedules and Statements by the Debtors as contingent, unliquidated, and/or disputed, then the Claim to which the Proof of Claim or the Claim set forth in the Schedules and Statements relates will be treated as an Allowed Claim.

### B.    Prosecution of Objections to Claims and Interests

Other than with respect to Professional Fee Claims and the Ingredion Secured Claim, prior to the Effective Date, the Debtors, and on or after the Effective Date the Liquidating Trustee, or their designees, as applicable, shall have the authority to File objections to Claims or Interests, and the exclusive authority to settle, compromise, withdraw, or litigate to judgment objections on behalf of the Debtors' Estates to any and all Claims or Interests, regardless of whether such Claims or Interests are in a Class or otherwise.

Subject to the foregoing sentence, from and after the Effective Date, the Liquidating Trustee (i) may settle or compromise any Disputed Claim in accordance with the Liquidating Trust Agreement and Article XIII hereof and (ii) shall succeed to the Debtors' rights with respect to any objections Filed by the Debtors that remain pending as of the Effective Date. From and after the Effective Date, the Liquidating Trustee shall have the sole authority to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval of the Bankruptcy Court.

### C.    Estimation of Claims

On and after the Effective Date, the Liquidating Trustee, may, at any time, request that the Bankruptcy Court estimate (i) any Disputed Claim pursuant to applicable law and (ii) any contingent or unliquidated Claim pursuant to applicable law, including section 502(c) of the Bankruptcy Code, regardless of whether the Debtors or the Liquidating Trustee have previously

66

objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334 to the maximum extent permitted by law as determined by the Bankruptcy Court to estimate any Disputed Claim, contingent Claim, or unliquidated Claim, including during the litigation concerning any objection to any Claim or during the pendency of any appeal relating to any such objection. Notwithstanding any provision otherwise in the Plan to the contrary, a Claim that has been expunged from the Claims Register but that is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any Disputed Claim, contingent Claim, or unliquidated Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim for all purposes under the Plan, including for purposes of distributions, and the Debtors or the Liquidating Trustee, as applicable, may elect to pursue additional objections to the ultimate distribution on such Claim. If the estimated amount constitutes a maximum limitation on such Claim, the Debtors or the Liquidating Trustee, as applicable, may elect to pursue any supplemental proceedings to object to any ultimate distribution on account of such Claim. Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has Filed a motion requesting the right to seek such reconsideration on or before 21 days after the date on which such Claim is estimated. All of the aforementioned Claims and objection, estimation, and resolution procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

## D.    Expungement or Adjustment to Claims Without Objections

Any Claim or Interest that has been paid or satisfied, or any Claim or Interest that has been amended or superseded, cancelled, or otherwise expunged (including pursuant to the Plan), may be adjusted or expunged (including on the Claims Register, to the extent applicable) by the Debtors or the Liquidating Trustee (or the Notice, Claims, and Solicitation Agent at, as applicable, the Debtors' or the Liquidating Trustee direction), without an objection to such Claim or Interest having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

## E.    Time to File Objections to Claims

Any objections to Claims (other than the Ingredion Secured Claim) shall be Filed on or before the later of (i) 120 days after the Effective Date and (ii) such other period of limitation as may be specifically fixed by the Debtors or the Liquidating Trustee, as applicable, or by a Final Order of the Bankruptcy Court for objecting to such claims.

## F.    Disallowance of Claims

Any Claims or Interests held by Entities from which property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code, or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be

3201701.6 118609-112672

deemed Disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims or Interests may not receive any distributions on account of such Claims until such time as such Causes of Action against that Person have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Debtors by that Person have been turned over or paid to the Debtors or the Liquidating Trustee. All Claims Filed on account of an indemnification obligation to a director, manager, officer, or employee shall be deemed satisfied and expunged from the Claims Register as of the Effective Date to the extent such indemnification obligation is assumed (or honored or reaffirmed, as the case may be) pursuant to the Plan, without any further notice to or action, order, or approval of the Bankruptcy Court.

Except as provided herein or otherwise agreed, any and all Proofs of Claim Filed after the applicable Bar Date shall be deemed Disallowed and expunged as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court, and Holders of such Claims may not receive any distributions on account of such Claims, unless on or before the Confirmation Hearing such late Claim has been deemed timely Filed by a Final Order.

## G.    Amendments to Claims

On or after the applicable Bar Date, a Claim may not be Filed or amended without the prior authorization of the Bankruptcy Court or the Debtors or the Liquidating Trustee, as applicable. Absent such authorization, any new or amended Claim Filed shall be deemed Disallowed in full and expunged without any further action.

## H.    No Distributions Pending Allowance

If an objection to a Claim or portion thereof is Filed as set forth herein, no payment or distribution provided under the Plan shall be made on account of such Claim or portion thereof unless and until such Disputed Claim becomes an Allowed Claim.

## I.    Distributions After Allowance

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan. As soon as reasonably practicable after the date that the order or judgment of a court of competent jurisdiction allowing any Disputed Claim becomes a Final Order, the Debtors or the Liquidating Trustee shall provide to the Holder of such Claim the distribution (if any) to which such Holder is entitled under the Plan as of the Effective Date, less any previous distribution (if any) that was made on account of the undisputed portion of such Claim, without any interest, dividends, or accruals to be paid on account of such Claim unless required under applicable bankruptcy law or as otherwise provided herein.

## ARTICLE XIV
## SETTLEMENT, RELEASE, INJUNCTION AND RELATED PROVISIONS

## A.    Termination of Claims and Interests

68

To the maximum extent provided by section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction and release, effective as of the Effective Date, of Claims, Interests, and causes of action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and causes of action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by current or former employees of the Debtors prior to the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (i) a Proof of Claim or Proof of Interest based upon such debt, right, or Interest is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (ii) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (iii) the Holder of such a Claim or Interest has accepted the Plan. Any default by the Debtors or their Affiliates with respect to any Claim or Interest that existed immediately prior to or on account of the filing of the Chapter 11 Cases shall be deemed cured on the Effective Date. The Confirmation Order shall be a judicial determination of the termination of all Claims and Interests subject to the occurrence of the Effective Date.

## B.  Release of Liens

Except as otherwise provided in the Plan, the Plan Supplement, or any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, and in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, and required to be satisfied pursuant to the Plan, all mortgages, deeds of trust, liens, pledges, or other security interests against any property of the Estates shall be fully released, settled, and compromised, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, liens, pledges, or other security interests shall revert automatically to the applicable Debtor and its successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or Filing being required to be made by the Debtors. Any Holder of such Secured Claim (and the applicable agents for such Holder) shall be authorized and directed to release any collateral or other property of any Debtor (including any cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder), and to take such actions as may be reasonably requested by the Debtors or the Liquidating Trustee to evidence the release of such lien, including the execution, delivery, and filing or recording of such releases, and shall authorize the Debtors and the Liquidating Trustee to file UCC-3 termination statements (to the extent applicable) with respect thereto (provided draft UCC-3 termination statements, and a reasonable period to review and comment, shall be provided to the applicable Holder of such Secured Claim (or the applicable agents for such Holder) prior to filing). The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local

agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such liens.

## C.    **Releases**

(a)    As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is irrevocably released by each and all of the Debtors and their Estates (collectively, the "Releasing Parties"), in each case on behalf of themselves and their respective successors, assigns, representatives, other Related Parties, and any and all other Persons who may purport to assert any cause of action by, through, for, or because of the foregoing Persons, from any and all Claims, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of any of the Releasing Parties whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that any of the Releasing Parties had, has or would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors or their Estates, the business operations of the Debtors, actions taken by the Board of Directors or the officers of the Debtors, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- or out-of-court sale and restructuring efforts, the Prepetition Secured Convertible Promissory Note Documents, the Prepetition Secured Convertible Promissory Note Obligations, the Prepetition Collateral, the Bridge Loan and all documentation related thereto, the Sale, the Chapter 11 Cases, the Liquidating Trust Agreement, the formulation, preparation, dissemination, negotiation, filing, or consummation of the Combined Disclosure Statement and Plan, the Plan Supplement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Combined Disclosure Statement and Plan, the Plan Supplement, or the Liquidating Trust Agreement, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; *provided that* any right to enforce the Plan, the CIAP Settlement, the Confirmation Order and/or the Liquidating Trust Agreement is not so released; provided, further, that nothing herein shall release any Person from their obligations under the Pictor Biotech APA or associated documents.

(b)    As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, Ingredion and its Related Parties are hereby irrevocably released by the (i) Releasing Parties, (ii) the Committee, and (iii) the Committee members, in their individual capacities as Committee members, and their respective successors (including the Liquidating Trustee) in each case on behalf of themselves and their respective successors, assigns, representatives, other Related Parties, and any and all other Persons who may purport to assert any cause of action by, through, for, or because of the foregoing Persons (collectively, the "Ingredion Releasing Parties"), from any and all Claims, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of any Ingredion Releasing Party, whether known or unknown, foreseen

70

or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that any of the Ingredion Releasing Parties had, has or would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the subject matter of, or the transactions or events giving rise to, the Ingredion Secured Claim, the Ingredion Allowed Unsecured Claim, the business, financing, or contractual arrangements between any Debtor and Ingredion and/or its Related Parties, the Debtors' in- or out-of-court sale and restructuring efforts, the Prepetition Secured Convertible Promissory Note Documents, the Prepetition Secured Convertible Promissory Note Obligations, the Prepetition Collateral, the Bridge Loan and all documentation related thereto, the Sale, the CIAP, the Plan, or concerning any other act or omission, transaction, agreement, or event related to any of the foregoing from the beginning of time through the Effective Date; *provided that* any right to enforce the Plan, the CIAP Settlement, the Confirmation Order and/or the Liquidating Trust Agreement is not so released.

(c)     Nothing in the foregoing releases, the Plan or Confirmation Order, shall preclude the Liquidating Trustee from naming an officer or director for the purpose of seeking to recover against available Insurance Policies, however, recovery is limited to available Insurance Policies. Nothing in the foregoing releases, the Plan or Confirmation Order modifies or shall be deemed to modify any releases or purchased assets in the Sale Order and Sale documents, including the APA.

## E.    Exculpation

Notwithstanding anything herein to the contrary, the Exculpated Parties shall neither have nor incur, and each Exculpated Party is exculpated from, any liability to any Holder of a cause of action, Claim, or Interest for any act or omission taking place between the Petition Date and the Effective Date of the Plan in connection with, relating to, or arising out of, the Chapter 11 Cases, consummation of the Sale, the formulation, preparation, dissemination, negotiation, filing, or consummation of the Combined Disclosure Statement and Plan, the Plan Supplement, the Liquidating Trust Agreement, or any Restructuring Transaction, contract, instrument, release or other agreement or document created or entered into in connection with the Combined Disclosure Statement and Plan or the Plan Supplement, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the distribution of property under the Plan or any other related agreement, negotiations regarding or concerning any of the foregoing, or the administration of the Plan or property to be distributed hereunder, except for actions determined by Final Order to have constituted bad faith, breach of fiduciary duty, willful misconduct, actual fraud or gross negligence, but in all respects such Entities shall be entitled to assert appropriate affirmative defenses, including reliance upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.

## F.    Injunction

Except as otherwise expressly provided in the Combined Disclosure Statement and Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims or Interests that have been released through the Debtor Release or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Exculpated

3201701.6 118609-112672

Parties and the Released Parties, or the successors and assigns of each of the foregoing and any of their assets and properties: (i) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (ii) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (iii) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the estates of such Entities on account of, in connection with or with respect to any such Claims or Interests; and (iv) asserting any right of setoff (except to the extent exercised prepetition), subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such Holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff or recoupment pursuant to applicable law or otherwise, provided that, this provision does not enjoin setoff or recoupment related to any Claims or Interests arising after the Effective Date.

## G.    Protections Against Discriminatory Treatment

To the maximum extent provided by section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Debtors or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Debtors, or another Person with whom the Debtors have been associated, solely because each Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the Debtors are granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

## H.    Document Retention

On and after the Effective Date, the Liquidating Trustee may maintain documents in accordance with its standard document retention policy, as may be altered, amended, modified, or supplemented by the Liquidating Trustee.

## I.    Reimbursement or Contribution

If the Bankruptcy Court Disallows a Claim for reimbursement or contribution of a Person pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever Disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Confirmation Date: (i) such Claim has been adjudicated as non-contingent or (ii) the relevant Holder of a Claim has Filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered prior to the Confirmation Date determining such Claim as no longer contingent.

## J.    Term of Injunctions or Stays

3201701.6 118609-112672

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

## ARTICLE XV
## CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN

### A.    Conditions Precedent to the Effective Date

It shall be a condition to the Effective Date of the Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Article XV.B hereof:

**1.**    The Bankruptcy Court shall have entered the Confirmation Order (and such order shall be a Final Order) confirming the Plan, each of which shall be in form and substance acceptable to the Debtors, the Committee, and Ingredion and shall:

(a)    authorize the Debtors to take all actions necessary to enter into, implement, and consummate the contracts, instruments, releases, leases, indentures, and other agreements or documents created in connection with the Plan;

(b)    decree that the provisions of the Confirmation Order and the Plan are nonseverable and mutually dependent;

(c)    approve the CIAP Settlement in form and substance acceptable to Ingredion;

(d)    authorize the Debtors, as applicable or necessary, to: (i) make all distributions and issuances as required under the Plan; and (ii) enter into any agreements, transactions, and sales of property as set forth in the Plan Supplement; and

(e)    authorize the implementation of the Plan in accordance with its terms.

**2.**    the Debtors shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan;

**3.**    the Liquidating Trustee shall have been appointed and the Liquidating Trustee Agreement shall have been executed and become effective;

**4.**    the final version of the Plan Supplement and all of the schedules, documents, and exhibits contained therein shall have been Filed in a manner consistent in all material respects with the Plan and shall be in form and substance acceptable to the Debtors, and, to the extent the Plan

73

Supplement relates in any material way to the Compromised Ingredion Secured Claim or the CIAP Settlement, shall be in form and substance reasonably satisfactory to Ingredion; and

**5.** the Debtors shall have implemented all transactions contemplated herein in a manner consistent in all respects with the Plan (including the payment in full, in cash of the Compromised Ingredion Secured Claim), pursuant to documentation acceptable to the Debtors in their discretion.

## B.    <u>Waiver of Conditions</u>

Other than any conditions relating to or in connection with the CIAP Settlement or the allowance or payment of Ingredion Secured Claim, the conditions to Consummation set forth in this Article XV may be waived by the Debtors without further notice, leave, or order of the Bankruptcy Court or any formal action other than proceeding to confirm or consummate the Plan.

## C.    <u>Effect of Failure of Conditions</u>

If the Consummation of the Plan does not occur, the Plan shall be null and void in all respects and nothing contained in the Combined Disclosure Statement and Plan shall: (i) constitute a waiver or release of any Claims by the Debtors, any Holders of Claims or Interests, or any other Person; (ii) prejudice in any manner the rights of the Debtors, any Holders of Claims or Interests, or any other Person; or (iii) constitute an admission, acknowledgment, offer or undertaking by the Debtors, any Holders of Claims or Interests, or any other Person in any respect.

## <u>ARTICLE XVI</u>
## <u>MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN</u>

## A.    <u>Modification and Amendments</u>

Except as otherwise specifically provided in the Plan (including with respect to the CIAP Settlement and Ingredion Secured Claim), the Debtors reserve the right to modify the Plan, whether such modification is material or immaterial, and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not re-solicit votes on such modified Combined Disclosure Statement and Plan. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 (as well as those restrictions on modifications set forth in the Plan), the Debtors expressly reserve their respective rights to revoke or withdraw, to alter, amend, or modify the Combined Disclosure Statement and Plan, one or more times, before or after Confirmation, with the consent of the Committee, such consent not to be unreasonably withheld, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Combined Disclosure Statement and Plan, or remedy any defect or omission or reconcile any inconsistencies in the Combined Disclosure Statement and Plan or the Confirmation Order in such matters as may be necessary to carry out the purposes and intent of the Plan.

**B.** **Effect of Confirmation on Modifications**

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

**C.** **Revocation or Withdrawal of Plan**

The Debtors reserve the right to revoke or withdraw the Plan before the Confirmation Date and to file subsequent chapter 11 plans. If the Debtors revoke or withdraw the Plan, or if Confirmation or Consummation does not occur, then: (i) the Plan shall be null and void in all respects; (ii) any settlement or compromise (including the CIAP Settlement) embodied in the Plan (including the fixing or limiting to an amount certain of the Claims or Interests or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (iii) nothing contained in the Plan once withdrawn or revoked shall (a) constitute a waiver or release of any Claims, Interests, or Causes of Action; (b) prejudice in any manner the rights of such Debtor, any Holder, or any other Person; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by such Debtor, any Holder of a Claim or Interest, or any other Person.

# ARTICLE XVII
# RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1. allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2. decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals (including Professional Fee Claims) authorized pursuant to the Bankruptcy Code or the Plan;

3. resolve any matters related to: (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Cure Claims pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed (or assumed and assigned); (c) the Liquidating Trustee amending, modifying, or supplementing, after the Effective Date, pursuant to Article IX, the Executory Contracts and Unexpired Leases to

3201701.6 118609-112672

be assumed or rejected or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory, expired, or terminated;

4.      ensure that distributions to Holders of Allowed Claims and Interests are accomplished pursuant to the provisions of the Plan;

5.      adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving the Debtors that may be pending on the Effective Date;

6.      adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

7.      enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Combined Disclosure Statement and Plan or the Plan Supplement;

8.      enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code, including but not limited to the Sale Order;

9.      resolve any cases, controversies, suits, disputes, or causes of action that may arise in connection with Consummation, including interpretation or enforcement of the Plan or any Person's obligations incurred in connection with the Plan;

10.     issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person with Consummation or enforcement of the Plan;

11.     resolve any cases, controversies, suits, disputes or causes of action with respect to the releases, injunctions, and other provisions contained in Article XIV, and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

12.     resolve any cases, controversies, suits, disputes or causes of action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim for amounts not timely repaid pursuant to Article XII.H.1;

13.     enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

14.     determine any other matters that may arise in connection with or that relate to the Combined Plan, and Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Combined Disclosure Statement and Plan;

15.     enter an order or Final Decree concluding or closing any of the Chapter 11 Cases;

3201701.6 118609-112672

16.      adjudicate any and all disputes arising from or relating to distributions under the Plan;

17.      consider any modifications of the Plan, to cure any defect or omission or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

18.      determine requests for the payment of Claims entitled to priority pursuant to section 507 of the Bankruptcy Code;

19.      hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

20.      hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Restructuring Transactions, whether they occur before, on, or after the Effective Date;

21.      hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

22.      hear and determine all disputes involving the existence, nature, scope, or enforcement of any exculpations, injunctions, and releases granted in connection with and under the Plan, including under Article XIV;

23.      hear and determine all Causes of Action;

24.      enforce all orders previously entered by the Bankruptcy Court; and

25.      hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE XVIII
## MISCELLANEOUS PROVISIONS

### A.      Immediate Binding Effect

Subject to the terms hereof and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan, the Plan Supplement, and the Confirmation Order shall be immediately effective and enforceable and deemed binding upon the Debtors, the Debtors' Estates, the Liquidating Trustee, and any and all Holders of Claims or Interests (regardless of whether such Claims or Interests are deemed to have accepted or rejected the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, each Entity acquiring property under the Plan or the Confirmation Order, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors. All Claims and debts shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim, Interest, or debt has voted on the Plan.

77

## B.    Additional Documents

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtors or the Liquidating Trustee, as applicable, and all Holders receiving distributions pursuant to the Plan and all other parties in interest may, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

## C.    Reservation of Rights

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court enters the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur. None of the Filing of the Combined Disclosure Statement and Plan, any statement or provision contained in the Combined Disclosure Statement and Plan, or the taking of any action by any Debtor with respect to the Combined Disclosure Statement and Plan or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders unless and until the Effective Date has occurred.

## D.    Successors and Assigns

The rights, benefits, and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Person.

## E.    Dissolution of the Committee

The Committee shall dissolve on the Effective Date and the members of such Committee shall be released and discharged from all further rights and duties arising from or related to the Chapter 11 Cases, except with respect to, and to the extent of any applications for Professional Fee Claims or expense reimbursements for members of such Committee. The Committee and its retained Professionals may also participate in any appeal pending as of the Effective Date or filed thereafter, the outcome of which could affect the treatment of prepetition creditors, including, but not limited to, any cases, controversies, suits, or disputes arising in connection with the Consummation, interpretation, implementation or enforcement of the Plan or the Confirmation Order. The Professionals retained by the Committee shall not be entitled to assert any Administrative Claims nor shall they have an Allowed Administrative Claims for any services rendered or expenses incurred after the Effective Date, except in respect of the preparation and prosecution of or any objection to any Filed fee application and participation in any appeals.

## F.    Notices

To be effective, all notices, requests and demands to or upon the Debtors shall be in writing (which may be by email), and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by email, when received and telephonically confirmed, addressed to the following:

| Debtors | Counsel to the Debtors |
|---|---|
| Alex Berlin<br>Solar Biotech, Inc. & Noblegen Inc.<br>5516 Industrial Park Rd<br>Norton, VA 24273 | Katharina Earle<br>Gibbons P.C.<br>300 Delaware Avenue, Suite 1015<br>Wilmington, Delaware 19801<br>Telephone: (302) 518-6300<br>Email: kearle@gibbonslaw.com<br><br>-and-<br><br>John S. Mairo<br>Gibbons P.C.<br>One Gateway Center<br>Newark, New Jersey 07102-5310<br>Telephone: (973) 596-4500<br>Email: jmairo@gibbonslaw.com |
| **U.S. Trustee** | **Counsel to the Committee** |
| Rosa Sierra-Fox<br>UNITED STATES DEPARTMENT OF JUSTICE<br>Office of the United States Trustee<br>District of Delaware<br>844 King Street, Suite 2207<br>Wilmington, Delaware 19801<br>Email: Rosa.SierraFox@usdoj.gov | Daren Brinkman<br>Brinkman Law Group<br>543 Country Club Drive, Suite B<br>Wood Ranch, CA 93065<br>Email: dbrinkman@brinkmanlaw.com<br><br>-and-<br><br>Scott Leonhardt<br>Esbrook P.C.<br>1000 N. West St., Suite 1200<br>Wilmington, DE 19801<br>Email: scott.leonhardt@esbrook.com |

3201701.6 118609-112672

## G.    Entire Agreement

Except as otherwise indicated, the Combined Disclosure Statement and Plan and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

## H.    Exhibits

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan. After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the website of the Notice, Claims, and Solicitation Agent at https://dm.epiq11.com/case/solarbiotech/info or the Bankruptcy Court's website at http://www.deb.uscourts.gov. To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

## I.    Non-Severability of Plan Provisions

The provisions of the Plan, including its release, injunction, exculpation, and compromise provisions, are mutually dependent and non-severable. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (i) valid and enforceable pursuant to its terms; (ii) integral to the Plan and may not be deleted or modified without the consent of the Debtors consistent with the terms set forth herein; and (iii) non-severable and mutually dependent.

## J.    Votes Solicited in Good Faith

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and, therefore, no such parties will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan.

## K.    Closing of Chapter 11 Cases

The Liquidating Trustee shall, promptly after the full administration of the Chapter 11 Cases, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order necessary to close the Chapter 11 Cases.


Dated: July 2, 2025                         */s/ Alex Berlin*
Wilmington, Delaware                    Alex Berlin

3201701.6 118609-112672