**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>SOLAR BIOTECH, INC., *et al.*,[1]<br><br>Debtors. | Case No. 24-11402 (LSS)<br><br>Chapter 11<br><br>(Jointly Administered)<br><br>**Hearing Date: To be determined if necessary**<br>**Obj. Deadline: August 1, 2025 at 4:00 p.m. (ET)** |

**JOINT MOTION OF THE DEBTORS AND OFFICIAL
COMMITTEE OF UNSECURED CREDITORS PURSUANT TO
BANKRUPTCY CODE SECTION 105 AND BANKRUPTCY RULE
9019 FOR ENTRY OF AN ORDER APPROVING THE CIAP SETTLEMENT
BY AND AMONG THE COMMITTEE, INGREDION AND THE DEBTORS**

The above-captioned debtors and debtors in possession (together, the "Debtors") and the Official Committee of Unsecured Creditors (the "Committee" and with the Debtors, the "Movants"), by and through their respective undersigned counsel, hereby submit this motion (the "Motion") in the above-captioned jointly administered chapter 11 cases (the "Chapter 11 Cases"), seeking entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), pursuant to sections 105 of title 11 of the United States Code, and Rule 9019 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"), (i) authorizing and approving the settlement of the Committee/Ingredion Adversary Proceeding ("CIAP Settlement") as set forth in the *Revised Plan of Liquidation – Term Sheet* (the "Term Sheet") attached to the Proposed Order as Exhibit 1 (the "Settlement Agreement"), entered into by and among the Debtors, Ingredion, Inc. ("Ingredion"), and the Committee, the terms of which are embodied in the *First Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Solar Biotech, Inc. and Its*

---

[1] The Debtors in these Chapter 11 Cases are Solar Biotech, Inc. and Noblegen, Inc. The location of Debtor's principal place of business is 5516 Industrial Park Rd, Norton, VA 24273, Attn: Alex Berlin.

*Debtor Affiliate* filed by the Debtors on July 2, 2025 [D.I. 480] (the "Amended DS/Plan");[2] (ii) authorizing the Debtors, Ingredion, and the Committee to take all actions as are reasonably necessary to effectuate the Settlement Agreement; and (iii) granting related relief. In support of this Motion, the Movants respectfully state as follows:

### JURISDICTION AND VENUE

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over these Chapter 11 Cases and the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference from the United States District Court for the District of Delaware dated as of February 29, 2012.

2. This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

3. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory basis for the relief requested herein are sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019.

### BACKGROUND

5. On June 23, 2024, each Debtor filed a Voluntary Petition for *Non-Individuals Filing for Bankruptcy* [D.I. 1] under Chapter 11 of the United States Bankruptcy Code. On June 26, 2024, the Court entered and *Order (I) Directing Joint Administration of Related Chapter 11 Cases and (II) Granting Related Relief* [D.I. 31].

6. On July 8, 2024, the Office of the United States Trustee appointed the Committee pursuant to section 1102 of the Bankruptcy Code [D.I. 76].

7. On October 21, 2024, the Debtors filed the *Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Solar Biotech, Inc. and its Debtor Affiliate* ("DS/Plan"). On

---

[2] All capitalized terms not otherwise defined herein are to be given the meanings ascribed to them in the Amended DS/Plan.

October 30, 2024, the Debtors moved for interim approval of the DS/Plan for solicitation purposes and sought entry of an order establishing related voting and confirmation procedures. [D.I. 262, 268].

8. On October 30, 2024, the Committee commenced Adversary Proceeding 24-50183 [D.I. 270] against Ingredion which was withdrawn following agreement between the Committee and Ingredion to extend the challenge deadline, pending settlement discussions.

9. After those settlement efforts failed, the Committee initiated a new Adversary Proceeding against Ingredion, Inc. on November 18, 2024 – Adversary Proceeding 24-50234 [D.I. 294] (the "CIAP") - challenging the validity and priority of Ingredion's asserted prepetition secured claims. In July 2023, less than one year before the Debtors' bankruptcy filing, Ingredion's $3,000,000 equity investment (as characterized by the Committee) under a Simple Agreement for Future Equity ("SAFE") was rolled into a $7,000,000 secured convertible promissory note, which included the extension of new secured financing by Ingredion to the Debtors.  It is the Committee's position that this transaction effectively converted a contingent interest into secured debt. The Committee contends that the transaction constituted an avoidable fraudulent transfer under federal, state, and Canadian law; a preferential transfer under 11 U.S.C. § 547; and grounds for recharacterization of the $3,000,00 SAFE investment as equity under 11 U.S.C. § 105, as well as both equitable and mandatory subordination of Ingredion's claim under 11 U.S.C. § 510.

10. Ingredion has disputed in several filings with this Court, and continues to dispute in all respects, the Committee's allegations, its characterizations of the SAFE as equity, and equity interest, or an investment, and the causes of action set forth in the CIAP.

11. While the Debtors were seeking approval of the DS/Plan, the CIAP remained pending, with significant factual and legal issues unresolved. Because the CIAP directly challenges

the validity, priority, and treatment of what the Debtors had identified as their largest secured claim, these unresolved issues rendered confirmation of the proposed DS/Plan premature and procedurally infeasible.

12. In light of these challenges, and to avoid further litigation risk and delay, the Debtors, the Committee, and Ingredion engaged in lengthy, arm's-length negotiations and ultimately reached a settlement and good-faith compromise of the CIAP, the terms of which are embodied in the Settlement Agreement and embodied in the Amended DS/Plan.

13. The following summarizes the pertinent terms of the CIAP Settlement:[3]

- CIAP Dismissal: The adversary proceeding will be dismissed with prejudice upon approval of the CIAP Settlement.

- Preservation of Prior Payments: Ingredion shall retain $6,874,284.07 in payments previously received during the Chapter 11 Cases.

- Compromised Ingredion Secured Claim: Ingredion's allowed secured claim shall be fixed at $7,595,613.87, composed of:

    i) $6,595,613.87 in principal on its pre-petition claim; and

    ii) $1,000,000.00 in interest and costs. This Compromised Ingredion Secured Claim shall be paid in full in cash on the Effective Date of the Amended DS/Plan from the estate's General Pool.

- Unsecured Claim Waiver: Ingredion agrees to waive collection of approximately $1,000,000.00 in additional claims for interest, fees, and expenses, which shall be allowed but will receive no distribution.

---

[3] The summary of the CIAP Settlement is for informational purposes only. In the event of any conflict, the terms of the Amended DS/Plan shall control.

- Claim Classification and Voting: The Ingredion secured claim will be classified in Class 1 (Impaired, entitled to vote), and its unsecured claim will be classified in Class 3 (Impaired, entitled to vote but not entitled to distribution).

- General Unsecured and Intercompany Claims: Allowed general unsecured claims will be classified in Class 3, impaired and entitled to pro rata distributions from the General Pool after payment of senior claims. Intercompany claims and interests will be classified in Class 3A, canceled without distribution or voting rights.

- General Pool and Waterfall: The General Pool will include all available estate cash and sale proceeds. Distributions will follow a defined waterfall: first, to administrative claims and the Ingredion secured claim; second, to priority claims; and third, to allowed Class 3 unsecured claims.

- Committee Support: The Committee agrees to support confirmation of the Amended DS/Plan and recommend that general unsecured creditors vote in favor.

- Releases: Ingredion shall receive comprehensive plan releases from the Debtors, the Committee, Committee members, and their successors under the plan. The Liquidating Trustee may name one or more directors and/or officers to pursue insurance-only recoveries, without affecting the releases or any assets transferred under the Sale Order.

- Plan Governance and Implementation: A Liquidating Trustee will be appointed in place of a Plan Administrator to oversee post-confirmation wind-down activities under a Liquidating Trust Agreement, with an Oversight Board comprised of two Committee appointees and one Debtor appointee. Approval of the settlement is a condition precent to confirmation of the Amended DS/Plan and will be incorporated into the confirmation order.

**RELIEF REQUESTED**

14. By this Motion, the Movants requests the entry of the Proposed Order, substantially in the form of the attached hereto as **Exhibit A**, (i) authorizing and approving the CIAP Settlement as set forth in the Settlement Agreement and which is incorporated in the Amended DS/Plan, and (ii) authorizing and directing the Committee, the Debtors and Ingredion to take all actions as are reasonably necessary to effectuate the CIAP Settlement.

## LEGAL BASIS

15. Section 105 of the Bankruptcy Code provides that the "[c]ourt may issue any order, process of judgment that is necessary or appropriate to carry out the provision of [the Bankruptcy Code]." 11 U.S.C. 016105(a). Additionally, Rule 9019 (a) of the Federal Rules of Bankruptcy Procedure provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Courts have recognized that parties other than the trustee may be authorized to prosecute and settle estate claims where there is a sufficient basis to do so and where the party's interests are aligned with maximizing value for the benefit of the estate. See *Wells Fargo Bank, N.A. v. Guy F. Atkinson Co. (In re Guy F. Atkinson Co.)*, 242 B.R. 497, 502 (B.A.P. 9th Cir. 1999). The Third Circuit has emphasized that, "[t]o minimize litigation and expedite the administration of a bankruptcy estate, [c]ompromises are favored in bankruptcy." *Myers v. Martin (In re Martin)*, 91 F.3D 389, 393 (3rd Cir. 1996) (citation omitted); *see also In re W. R. Grace & Co.*, 475 B.R. 34, 63 (D. Del. 2012).

16. "[T]he authority to approve a compromise settlement is within the sound discretion of the bankruptcy court." *In re Key3Media Grp., Inc.*, 336 B.R. 87, 92 (Bankr. D. Del. 2005). The Court must determine whether the settlement is "fair, reasonable, and in the best interest of the estate." *Id.* In considering the merits, a bankruptcy court is not required to resolve the underlying dispute on the merits. Instead, the court needs only "canvass the issues and see whether the

settlement falls below the lowest point in the range of reasonableness". *W. R. Grace & Co.*, 475 B.R. at 63.

17. The Third Circuit in *Martin* established four factors that courts should consider in determining whether a proposed settlement is fair and equitable. These factors are "(1) the probability of success in litigations; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *Martin*, 91 F.3d at 393. In applying these factors, a court should "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromised proposal." *Martin*, 91 F.3d at 393.

18. The first factor, the probability of success in litigation, favors approval of the CIAP Settlement. While the Committee asserted substantial and serious claims in the adversary proceeding against Ingredion – including allegations of fraudulent transfer, recharacterization, and equitable subordination – the likelihood of success in litigating these issues is uncertain with respect to both cost and outcome. Even if the Committee succeeded in part, the ultimate recovery might not have significantly altered the Plan distributions. This uncertainty weighs in favor a compromise under these circumstances. Accordingly, the first *Martin* factor favors approval of the CIAP Settlement set forth on the Amended DS/Plan.

19. The second factor, the difficulties associated with collection, favors approval of the CIAP Settlement. Even if the Committee were successful in reducing or subordinating Ingredion's secured claim, collection of any monetary judgment would likely be subject to further litigation, appeals, and delays. Moreover, the parties would be required to undertake substantial discovery and invest significant legal and expert resources to litigate complex factual and legal issues. Any

potential recovery would still be limited to the assets of the estate, a significant portion of which could be depleted by the costs of continued litigation.

20. The third factor, complexity of litigation and attendant expense, inconvenience, and delay, favors approval of the CIAP Settlement. The CIAP raised factually and legally complex issues involving the recharacterization of equity instruments, insider status, cross-border fraudulent transfer law (U.S. and Canadian), and DIP financing structures. Resolution would have required extensive discovery, expert testimony, and potential a multi-day trial, followed by likely appeals. These proceedings would have significantly delayed plan confirmation and distribution to creditors, while draining estates resources. The CIAP Settlement allows for maximization of the value of the estates and stakeholders by conserving their resources.

21. The fourth factor, paramount interest of the creditors, favors approval of the CIAP Settlement. The settlement eliminates the substantial litigation risk, cost, and delay associated with prosecuting the adversary proceeding against Ingredion, and it materially enhances the value available for distribution to general unsecured creditors. Specifically, the settlement reduces Ingredion's asserted secured claim, eliminates its recovery on account of its unsecured claim, and clears the path for a confirmable plan. Importantly, the settlement is also a condition precedent to the implementation of the Debtors' Amended DS/Plan. Without the settlement, the continued litigation would likely delay creditor recoveries, reduce the distributable estate through mounting administrative expenses, and jeopardize the Debtors' ability to efficiently conclude their Chapter 11 Cases. By contrast, the settlement provides certainty, finality, and a fair compromise that maximizes value for the creditors as a whole.

22. Thus, the proposed CIAP Settlement is the fair and adequate way to effectuate a resolution of the complex disputes between the Committee and Ingredion.

23. The proposed CIAP Settlement is the result of extensive, good-faith, arm's-length negotiations among the parties. After carefully evaluating the legal and factual issues presented, the Movants have determined that the settlement is fair, reasonable, and adequate, and that it serves the best interests of its creditors and the bankruptcy estate. The Movants further believe that the CIAP Settlement satisfies the *Martin* factors and therefore respectfully submits that is should be approved pursuant to bankruptcy Rule 9019.

## **NOTICE AND OPPORTUNITY FOR HEARING**

24. Notice of this Motion has been provided to:

- The Office of the United States Trustee;

- All creditors and other parties in interest entitled to receive notice under Rule 2002 of the Federal Rules of Bankruptcy Procedure; and

- Any other party entitled to notice under the terms of the proposed DS/Plan.

24. The Movants submit that this notice satisfies the requirements of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure.

## **CONCLUSION**

**WHEREFORE**, the Movants respectfully request that the Court enter an order substantially in the form attached hereto as **Exhibit A** and grant such other relief as it deems just and proper under the circumstances.

Date: July 3, 2025
    Wilmington, Delaware

| | |
|---|---|
| */s/ Katharina Earle* | */s/ Scott J. Leonhardt* |
| Katharina Earle (No. 6348) | Scott J. Leonhardt (DE 4995) |
| **GIBBONS P.C.** | **ESBROOK P.C.** |
| 300 Delaware Avenue, Suite 1015 | 1000 N. West Street, Suite 1200 |
| Wilmington, Delaware 19801 | Wilmington, Delaware 19801 |
| Telephone: (302) 518-6300 | Telephone: (302) 308-8174 |
| Email: kearle@gibbonslaw.com | Email: scott.leonhardt@esbrook.com |

| | |
|---|---|
| -and- | -and- |
| John S. Mairo (admitted *pro hac vice*)<br>Kyle P. McEvilly (admitted *pro hac vice*)<br>**GIBBONS P.C.**<br>One Gateway Center<br>Newark, New Jersey  07102<br>Telephone:  (973) 596-4500<br>Email:  jmairo@gibbonslaw.com<br>Email:  kmcevilly@gibbonslaw.com<br><br>*Counsel to the Debtors and Debtors in Possession* | Daren R. Brinkman<br>Jory Cook<br>**BRINKMAN LAW GROUP, PC**<br>4333 Park Terrace Drive, Suite 205<br>Westlake Village, CA 91361<br>Telephone: 818-597-2992<br>Email: db@brinkmanlaw.com<br>Email: jory@brinkmanlaw.com<br><br>*Counsel to the Official Committee of Unsecured Creditors* |