## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| SOLAR BIOTECH, INC., *et al.*,[1] | Case No. 24-11402 (LSS) (Jointly Administered) |
| Debtors. | |

## DEBTORS' MEMORANDUM OF LAW IN SUPPORT
## OF ENTRY OF AN ORDER CONFIRMING THE FIRST AMENDED COMBINED
## DISCLOSURE STATEMENT AND CHAPTER 11 PLAN OF LIQUIDATION OF
## SOLAR BIOTECH, INC. AND ITS DEBTOR AFFILIATE

Katharina Earle (No. 6348)
**GIBBONS P.C.**
300 Delaware Avenue, Suite 1015
Wilmington, Delaware 19801
Telephone: (302) 518-6300
Email:kearle@gibbons.com

-and-

John S. Mairo (admitted *pro hac vice*)
Kyle P. McEvilly (admitted *pro hac vice*)
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102
Telephone: (973) 596-4500
Email:jmairo@gibbonslaw.com
        kmcevilly@gibbonslaw.com

*Counsel for the Debtors and
Debtors in possession*

---

[1] The Debtors in these Chapter 11 Cases are Solar Biotech, Inc. and Noblegen Inc. The location of Debtors' principal place of business is 5516 Industrial Park Rd, Norton, VA 24273, Attn: Alex Berlin.

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..........................................................................................iii

I.      PRELIMINARY STATEMENT .................................................................... 1

II.     JURISDICTION AND VENUE .................................................................... 3

III.    BACKGROUND .......................................................................................... 3

        A.      The Debtors and their Business ....................................................... 3

        B.      The Chapter 11 Cases and the Sale Process..................................... 4

        C.      The CIAP Settlement ....................................................................... 6

        D.      The Combined Disclosure Statement and Plan................................ 8

        E.      Solicitation and Voting Results ....................................................... 9

        F.      Confirmation Objections.................................................................. 10

IV.     ARGUMENT................................................................................................ 10

        A.      The Plan Satisfies Each Requirement for Confirmation.................... 10

                1.      Section 1129(a)(1): The Plan Complies with the Applicable
                        Provisions of the Bankruptcy Code .....................................11

                        a.      The Plan Satisfies the Classification Requirements of
                                Section 1122 of the Bankruptcy Code ...........................11

                        b.      The Plan Satisfies the Mandatory Requirements of Section
                                1123(a) of the Bankruptcy Code....................................12

                        c.      The Plan Satisfies the Mandatory Requirements of Section
                                1123(b) of the Bankruptcy Code....................................15

                                (i)     The Plan Satisfies Section 1123(b)(1) ...............15

                                (ii)    The Plan Satisfies Section 1123(b)(2) ...............16

                                (iii)   The Plan Satisfies Section 1123(b)(3) ...............16

                                (iv)    The Debtors' Release Under the Plan Is Appropriate
                                        Under Section 1123(b)(3) and (6)......................16

                                (v)     The Exculpation Under the Plan is Appropriate
                                        Under Section 1123(b)(6) ..................................20

                                (vi)    The Injunction Under the Plan is Appropriate and
                                        Should be Approved ..........................................21

i

**Table of Contents (continued)**

Page

2.  Section 1129(a)(2): the Debtors have Complied with the Applicable Provisions of the Bankruptcy Code ........................................ 22

    a.  The Debtors Have Complied with Section 1125, and the Disclosure Statement Should be Approved on a Final Basis ........ 22

    b.  Solicitation Complies with Section 1126 ...................................... 24

    c.  The Plan Will Comply With Section 1127 ................................... 24

3.  Section 1129(a)(3): The Plan has Been Proposed in Good Faith and Not by Any Means Forbidden by Law ...................................... 24

4.  Section 1129(a)(4): The Plan Provides for Court Approval of Certain Administrative Payments .............................................. 25

5.  Section 1129(a)(5): The Plan Discloses Post-Effective Date Management ............................................................................... 26

6.  Section 1129(a)(6): The Plan Does Not Require Governmental Approval of Rate Changes .......................................................... 26

7.  Section 1129(a)(7): The Plan is in the Best Interests of Creditors ............ 27

8.  Section 1129(a)(8): Acceptance by Impaired Classes .............................. 28

9.  Section 1129(a)(9): The Plan Complies with Statutorily Mandated Treatment of Administrative Claims and Priority Tax Claims ................ 28

10.  Section 1129(a)(10): The Plan has been Accepted by At Least One Impaired Class of Claims ........................................................... 29

11.  Section 1129(a)(11): The Plan is Feasible ................................................ 29

12.  Section 1129(a)(12): The Plan Provides for Payment of All Fees Under 28 U.S.C. § 1930 ............................................................. 30

13.  Sections 1129(a)(13)-(16) Are Inapplicable .............................................. 31

14.  Section 1129(b): The Plan Satisfies the "Cramdown" Requirements ................................................................................. 31

15.  Section 1129(c): Only One Plan ............................................................... 32

16.  Section 1129(d): The Principal Purpose of the Plan Is Not Avoidance of Taxes or Section 5 of the Securities Act ............................ 32

V.  CONCLUSION .................................................................................................. 33

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Aleris International, Inc.*,
    Case No. 09-10478 (BLS) (Bankr. D. Del. May 13, 2010) ....................................................13

*In re Armstrong World Indus., Inc.*,
    348 B.R. 111 (D. Del. 2006)...............................................................................................10, 29

*Bank of Am. Nat'l Trust and Sav. Ass'n v. 203 N. LaSalle St. P'ship*,
    526 U.S. 434 (1999)...................................................................................................................27

*In re Chapel Gate Apartments, Ltd.*,
    64 B.R. 569 (Bankr. N.D. Tex. 1986)......................................................................................25

*In re Coram Healthcare Corp.*,
    315 B.R. 321 (Bankr. D. Del. 2004) ...................................................................................19, 20

*In re Exide Techs.*,
    303 B.R. 48 (Bankr. D. Del. 2003) ..........................................................................................18

*In re EYP Group Holdings, Inc.*,
    Case No. 22-10367 (MFW) (Bankr. D. Del. Nov. 1, 2022) ....................................................13

*In re Future Energy Corp.*,
    83 B.R. 470 (Bankr. S.D. Ohio 1988).......................................................................................25

*In re Genesis Health Ventures, Inc.*,
    266 B.R. 591 (Bankr. D. Del. 2001) .........................................................................................10

*In re Indianapolis Downs, LLC*,
    486 B.R. 286 (Bankr. D. Del. 2013) ...................................................................................18, 21

*Kane v. Johns-Manville Corp.*,
    843 F.2d 636 (2d Cir. 1988)......................................................................................................29

*In re Keystone Tube Co., LLC*,
    Case No. 17-11330 (LSS) (Bankr. D. Del. Aug. 2, 2017) .......................................................13

*Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*,
    337 F.3d 314 (3d Cir. 2003)......................................................................................................22

*In re Lason*,
    300 B.R. 227 (Bankr. D. Del. 2003) .........................................................................................27

*Momentum Mfg. Corp. v. Emp. Creditors Comm. (In re Momentum Mfg. Corp.)*,
    25 F.3d 1132 (2d Cir. 1994)......................................................................................................22

iii

## TABLE OF AUTHORITIES

*In re NII Holdings, Inc.*,
  288 B.R. 356 (Bankr. D. Del. 2002) ...................................................29

*In re Nutritional Sourcing Corp.*,
  398 B.R. 816 (Bankr. D. Del. 2008) ...................................................11

*In re Old Fenm, Inc.*,
  Case No. 13-12569 (KJC) (Bankr. D. Del. July 2, 2014) .......................13

*Pizza of Haw., Inc. v. Shakey's, Inc. (In re Pizza of Haw., Inc.)*,
  761 F.2d 1374 (9th Cir. 1985) ..........................................................30

*In re PWS Holding Corp.*,
  228 F.3d 224 (3d Cir. 2000)........................................................20, 21

*In re The Leslie Fay Cos.*,
  207 B.R. 764 (Bankr. S.D.N.Y. 1997)...............................................29

*U.S. Bank Nat'l Ass'n v. Wilmington Trust Co. (In re Spansion, Inc.)*,
  426 B.R. 114 (Bankr. D. Del. 2010) ...................................................17

*In re Valeritas Holdings, Inc.*,
  Case No. 20-10290 (LSS) (Bankr. D. Del. June 8, 2020)......................13

*In re Wash. Mut., Inc.*,
  442 B.R. 314 (Bankr. D. Del. 2011) ...................................................18

*In re Woodmere Investors Ltd. P'ship*,
  178 B.R. 346 (Bankr. S.D.N.Y. 1995)...............................................29

*In re Zenith Elecs. Corp.*,
  241 B.R. 92 (Bankr. D. Del. 1999) ...................................17, 18, 20, 31

**Statutes**

11 U.S.C. §§ 101-1532 ..........................................................................1

11 U.S.C. § 105.....................................................................................6

11 U.S.C. § 363.....................................................................................5

11 U.S.C. § 365................................................................................5, 16

11 U.S.C. § 503(b) ..............................................................................28

11 U.S.C. § 510.....................................................................................6

11 U.S.C. § 547.....................................................................................6

## TABLE OF AUTHORITIES

11 U.S.C. § 1107(a) .................................................................................................3

11 U.S.C. § 1108 ......................................................................................................3

11 U.S.C. § 1114 ....................................................................................................31

11 U.S.C. § 1122 ........................................................................................10, 11, 12

11 U.S.C. § 1122(a) ................................................................................................11

11 U.S.C. § 1123 ..............................................................................................10, 11

11 U.S.C. § 1123(a) ................................................................................................12

11 U.S.C. § 1123(a)(1) ...........................................................................................12

11 U.S.C. § 1123(a)(2) ...........................................................................................12

11 U.S.C. § 1123(a)(3) ...........................................................................................12

11 U.S.C. § 1123(a)(4) ...........................................................................................12

11 U.S.C. § 1123(a)(5) ......................................................................................12, 13

11 U.S.C. § 1123(a)(6) ...........................................................................................15

11 U.S.C. § 1123(a)(7) ...........................................................................................15

11 U.S.C. § 1123(b) ................................................................................................15

11 U.S.C. § 1123(b)(1) ...........................................................................................15

11 U.S.C. § 1123(b)(2) ...........................................................................................16

11 U.S.C. § 1123(b)(3) ......................................................................................16, 17

11 U.S.C. § 1125 ..............................................................................................passim

11 U.S.C. § 1125(a) ................................................................................................23

11 U.S.C. § 1125(b) ..........................................................................................22, 23

11 U.S.C. § 1125(c) ................................................................................................23

11 U.S.C. § 1126 ..........................................................................................1, 22, 24

11 U.S.C. § 1126(f) .................................................................................................24

11 U.S.C. § 1126(g) ................................................................................................24

# TABLE OF AUTHORITIES

11 U.S.C. § 1127...................................................................................................22, 24

11 U.S.C. § 1127(a)....................................................................................................24

11 U.S.C. § 1127(d)....................................................................................................24

11 U.S.C. § 1129...............................................................................................1, 3, 10

11 U.S.C. § 1129(a)....................................................................................................31

11 U.S.C. § 1129(a)(1)...............................................................................................11

11 U.S.C. § 1129(a)(2)...............................................................................................22

11 U.S.C. § 1129(a)(3)..........................................................................................24, 25

11 U.S.C. § 1129(a)(4)..........................................................................................25, 26

11 U.S.C. § 1129(a)(5)................................................................................................26

11 U.S.C. § 1129(a)(6)................................................................................................26

11 U.S.C. § 1129(a)(7)..........................................................................................27, 28

11 U.S.C. § 1129(a)(8)..........................................................................................28, 31

11 U.S.C. § 1129(a)(9)..........................................................................................28, 29

11 U.S.C. § 1129(a)(10)..............................................................................................29

11 U.S.C. § 1129(a)(11)........................................................................................29, 30

11 U.S.C. § 1129(a)(12)........................................................................................30, 31

11 U.S.C. § 1129(a)(13)..............................................................................................31

11 U.S.C. § 1129(a)(14)..............................................................................................31

11 U.S.C. § 1129(a)(15)..............................................................................................31

11 U.S.C. § 1129(a)(16)..............................................................................................31

11 U.S.C. § 1129(b)..........................................................................................28, 31, 32

11 U.S.C. § 1129(b)(1)................................................................................................31

11 U.S.C. § 1129(b)(2)(C)...........................................................................................32

11 U.S.C. § 1129(c)....................................................................................................32

## <u>TABLE OF AUTHORITIES</u>

11 U.S.C. § 1129(d) ..........................................................................................................32, 33

11 U.S.C. § 1141 ...................................................................................................................13

11 U.S.C. § 1145 .....................................................................................................................1

11 U.S.C. § 1146 .....................................................................................................................1

28 U.S.C. § 157 .......................................................................................................................3

28 U.S.C. § 1334 .....................................................................................................................3

28 U.S.C. § 1408 .....................................................................................................................3

28 U.S.C. § 1409 .....................................................................................................................3

28 U.S.C. § 1930 ...................................................................................................................30

Securities Act of 1933 § 5...................................................................................................32, 33

**Other Authorities**

Bankruptcy Rule 3020(b)(2) .................................................................................................25

Solar Biotech, Inc. and Noblegen Inc., as debtors and debtors in possession (collectively, the "Debtors"), submit this memorandum (the "Memorandum") in support of final approval of the Disclosure Statement (defined below) and confirmation of the Plan (defined below) that are embodied in the *First Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Solar Biotech, Inc. and Its Debtor Affiliate* [D.I. 480] (the "Combined Disclosure Statement and Plan"),[2] pursuant to sections 1125, 1126, 1129, 1145, and 1146 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code").  The facts and circumstances supporting final approval of the Disclosure Statement and confirmation of the Plan are set forth in, among other things, the *Declaration of Ken Yager in Support of the Approval and Confirmation of the First Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Solar Biotech, Inc. and Its Debtor Affiliate* (the "Yager Declaration") and the *Declaration of Emily Young, on Behalf of Epiq Corporate Restructuring, LLC, Regarding Solicitation and Tabulation of Ballots Cast on  First Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Solar Biotech, Inc. and Its Debtor Affiliate* (the "Voting Declaration"), which are being filed contemporaneously herewith.  In support of final approval of the Disclosure Statement and confirmation of the Plan, the Debtors respectfully represent as follows:

## I.    PRELIMINARY STATEMENT

1.    The Debtors in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), commenced the Chapter 11 Cases on June 23, 2024 (the "Petition Date") with the goals of

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Combined Disclosure Statement and Plan or, if not defined therein, the Solicitation Procedures Order (defined below).  As used herein, the term "Disclosure Statement" means the disclosure statement that is embodied in the Combined Disclosure Statement and Plan, and the term "Plan" means the plan of liquidation that is embodied in the Combined Disclosure Statement and Plan and as modified, amended, or supplemented from time to time.

preserving their assets and conducting a sale process or other value-maximizing transaction, all in an effort to achieve a result in the best interests of the Debtors' creditors and stakeholders.

2.      Following the Sale (defined below), the Debtors reached a settlement with the Committee and Ingredion (the "CIAP Settlement"), which is embodied in, the Combined Disclosure Statement and Plan.  Under the Plan, the Debtors' remaining assets will be transferred to a Liquidating Trust to be managed by a Liquidating Trustee and supervised by the Oversight Board (defined below), which is comprised of three members.  The Liquidating Trust will administer the Debtors' remaining assets for the benefit of Holders of Allowed General Unsecured Claims in Class 3.

3.      On July 26, 2025, the Court approved the Combined Disclosure Statement and Plan on an interim basis, as containing adequate information under Bankruptcy Code section 1125, and as set forth herein, the Debtors now seek final approval of the adequacy of the disclosures contained therein and confirmation of the Plan.

4.      On August 18, 2025, the Court approved the CIAP Settlement subject to the entry of an order confirming the Plan [D.I. 524].

5.      The Plan has received the support required for confirmation.  As set forth in the Voting Declaration, the three classes entitled to vote on the Plan – Classes 1, 1A, and 3 – have voted to accept the Plan. Further, all votes cast were in favor of the Plan and there were no votes to reject the Plan.

6.      The Yager Declaration, the Voting Declaration, and the Combined Disclosure Statement and Plan, detail the facts supporting confirmation of the Plan, including, among other things, (i) the Debtors' corporate structure, assets, and liabilities; (ii) the events leading to the Chapter 11 Cases; (iii) the actions taken during the Chapter 11 Cases, including the sale of

substantially all of the Debtors' assets; (iv) the classification of Claims and Interests (defined below), their treatment under the Plan, and the solicitation of votes and the results thereof; and (v) the proposed formation and operation of the Liquidating Trust.

7.       The Debtors submit this Memorandum, the Yager Declaration, and the Voting Declaration to establish that the Plan is in the best interests of the Debtors' estate and creditors, and meets the requirements for interim and final approval of the Disclosure Statement under section 1125 of the Bankruptcy Code and confirmation of the Plan under section 1129 of the Bankruptcy Code.  For the reasons detailed herein, the Debtors respectfully submit that the Court should approve the Disclosure Statement on a final basis and confirm the Plan.

## II.       JURISDICTION AND VENUE

8.       This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(L).  Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## III.       BACKGROUND

9.       On the Petition Date, the Debtors commenced the Chapter 11 Cases by filing voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.  The Debtors continue to operate and manage their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

10.      On July 8, 2024, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Committee").  [D.I. 76]. No trustee or examiner has been appointed in the Chapter 11 Cases.

### A.       The Debtors and their Business

11.      Prior to the Petition Date, the Debtors were a biotechnology company with nearly five (5) years of experience in scaling biotech designs and prototypes on a commercial scale. The

Debtors provided services to customers, in the form of various phases, which are as follows: (i) concept development; (ii) develop prototypes; (iii) optimize costs; (iv) use prototype samples for business development and sampling; and (v) commercialization agreements to help transfer developed technology into commercial products. By offering a wide range of services, the Debtors were able to successfully meet the varying needs of their customers across the biotech market.

**B.    The Chapter 11 Cases and the Sale Process**

12.    The Debtors commenced the Chapter 11 Cases in order to preserve the Debtors' assets and conduct a sale process or other transaction, all in an effort to maintain continuity of business operations and maximize value for the benefit of the Debtors' creditors and stakeholders.

13.    On June 24, 2024, the Debtors filed a *Motion For Sale of Property Free and Clear of Liens Debtors' Motion for (I) An Order (A) Approving Bid Procedures and Stalking Horse Protections for the Sale of Substantially All of the Debtors Assets (the "Bidding Procedures"); (B) Approving the Stalking Horse and Stalking Horse Purchase Agreement; (C) Approving Procedures for the Assumption and Assignment and Rejection of Designated Executory Contracts; (D) Scheduling the Auction and Sale Hearing ; (E) Approving Forms and Manner of Notice of Respective Dates, Times, and Places in Connection Therewith; and (F) Granting Related Relief; and (II) An Order Authorizing and Approving the Debtors Sale of Substantially All of the Debtors Assets and Entry Into A Purchase Agreement, (B) Authorizing the Sale of Substantially All of the Debtors Assets Free And Clear of All Encumbrances, (C) Approving the Assumption and Assignment of Designated Executory Contracts, and (D) Granting Related Relief* [D.I. 11].

14.    On July 1, 2024, following good faith, arm's length negotiations, the Debtors and Ingredion Incorporated ("Ingredion") as the Stalking Horse Bidder entered into an asset purchase agreement (the "Stalking Horse APA"), under which the Debtors agreed to sell substantially all of their assets to the Stalking Horse Bidder, free and clear of all liens, claims, and encumbrances,

4

except where the Debtors agreed to transfer, and the Stalking Horse Bidder expressly agreed to permit or assume, certain encumbrances and certain liabilities of the Debtors.

15.     On July 23, 2024, the Court entered an order [D.I. 123] (the "Bid Procedures Order") approving the Bidding Procedures for the Sale. The Debtors continued marketing the Debtors' assets on a post-petition basis in accordance with the Bid Procedures Order. On August 28, 2024, the Debtors filed a *Notice of Filing of Proposed Sale Order* [D.I. 171].

16.     The Debtors, together with Newpoint Advisors Corporation ("Newpoint"), continued postpetition marketing efforts in order to seek a competitive bidding process, including reaching out to over 3,000 companies in Newpoint's own and other's proprietary databases, and had direct correspondence with approximately seventy (70) potential buyers. Overall, Newpoint coordinated entry into non-disclosure agreements with ten (10) interested parties. As a result of those efforts, the Debtors received and designated two additional qualified competing written offers to the Stalking Horse APA. Ultimately, Pictor Biotech, Inc.'s ("Pictor") competing bid of $20 million (the "Pictor Bid") was deemed the successful bid. *See* D.I. 190.

17.     The Pictor Bid was for the purchase of substantially all of the Debtors' assets, including the specified assets excluded from the Stalking Horse APA. The Pictor Bid also included (i) the assumption and assignment of various executory contracts and unexpired leases of the Debtors, together with payment of appurtenant cure costs consistent with sections 363 and 365 of the Bankruptcy Code; (ii) the transfer of all Solar Biotech employees to Pictor; (iii) the assumption of all claims against any transferred employee; (iv) a requirement to purchase tail insurance coverage for the Debtors' directors and officers; and (v) assignment of all Avoidance Actions against vendors of the Debtors that continued to do business with Pictor.

18.     On September 16, 2024, the Court entered an order (the "Sale Order") approving the sale of substantially of the Debtors' assets to Pictor (the "Sale) [D.I. 221].

19.     On October 6, 2024, the Sale closed (the "Closing"). *See* D.I. 248. As a result of the Closing, the Debtors sold substantially all of their assets to Pictor, portions of the Sale proceeds were applied in full satisfaction of the DIP Obligations, and the net proceeds of the Sale were transferred to the Sale Proceeds Trust Account (as defined in the "Sale Order").

20.     The proceeds of the Sale plus the Debtors' cash on hand represent the majority of the Assets being used to fund, and make distributions to creditors pursuant to, the Plan.

21.     For additional information concerning the Sale, please refer to Sections E. 9 and 10 of the Combined Disclosure Statement and Plan.

### C.     The CIAP Settlement

22.     On November 18, 2024, the Committee commenced an adversary proceeding against Ingredion (the "CIAP") challenging the validity and priority of Ingredion's asserted prepetition secured claims. In July 2023, less than one year before the Debtors' bankruptcy filing, Ingredion's $3,000,000 equity investment (as characterized by the Committee) under a Simple Agreement for Future Equity ("SAFE") was rolled into a $7,000,000 secured convertible promissory note, which included the extension of new secured financing by Ingredion to the Debtors. It is the Committee's position that this transaction effectively converted a contingent interest into secured debt. The Committee contends that the transaction constituted an avoidable fraudulent transfer under federal, state, and Canadian law; a preferential transfer under 11 U.S.C. § 547; and grounds for recharacterization of the $3,000,00 SAFE investment as equity under 11 U.S.C. § 105, as well as both equitable and mandatory subordination of Ingredion's claim under 11 U.S.C. § 510.

23.     Ingredion has disputed in several filings with this Court, and continues to dispute in all respects, the Committee's allegations, its characterizations of the SAFE as equity, equity interest, or an investment, and the causes of action set forth in the CIAP.

24.     While the Debtors were seeking approval of the Combined Disclosure Statement and Plan, the CIAP remained pending, with significant factual and legal issues unresolved. Because the CIAP directly challenges the validity, priority, and treatment of what the Debtors had identified as their largest secured claim, these unresolved issues rendered confirmation of the proposed Combined Disclosure Statement and Plan premature and procedurally infeasible.

25.     In light of these challenges, and to avoid further litigation risk and delay, the Debtors, the Committee, and Ingredion engaged in lengthy, arm's-length negotiations and ultimately reached a settlement and good-faith compromise of the CIAP, the terms of which are set forth in the term sheet, which is attached to the Combined Disclosure Statement and Plan as Exhibit 1, and embodied in the Combined Disclosure Statement and Plan .

26.     The CIAP Settlement resolves the CIAP and provides, among other things, for a recovery to Holders of General Unsecured Claims.  As shown by the liquidation analysis in Exhibit 2 to the Combined Disclosure Statement and Plan, there would be no recovery for Holders of General Unsecured Claims absent the CIAP Settlement.

27.     On August 18, 2025, the Court entered the *Order Approving the CIAP Settlement By and Among the Committee, Ingredion and the Debtors* [D.I. 524], which becomes effective upon entry of an order confirming the Combined Disclosure Statement and Plan.

28.     For additional information concerning the CIAP Settlement and a detailed description of the terms thereunder, please refer to Section E. 12 of the Combined Disclosure Statement and Plan.

**D.      The Combined Disclosure Statement and Plan**

29.      On July 2, 2025, the Debtors filed the Combined Disclosure Statement and Plan. *See* [D.I. 480].

30.      On July 2, 2025, the Debtors filed the *Debtors' Motion for Entry of an Order (I) Approving the First Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation on an Interim Basis for Solicitation Purposes Only; (II) Establishing Solicitation and Tabulation Procedures; (III) Approving the Form of Ballot and Solicitation Materials; (IV) Establishing the Voting Record Date; (V) Fixing the Date, Time, and Place for the Combined Hearing and the Deadline for Filing Objections Related Thereto; and (VI) Granting Related Relief* [D.I. 481] (the "Solicitation Procedures Motion").

31.      On July 26, 2025, the Court entered an order [D.I. 503] (the "Solicitation Procedures Order") granting the Solicitation Procedures Motion.  The Solicitation Procedures Order approved the Disclosure Statement on an interim basis for solicitation purposes only and established Solicitation Procedures and Tabulation Procedures (each as defined in the Solicitation Procedures Order) for the solicitation of votes to accept or reject the Plan.

32.      Pursuant to the Solicitation Procedures Order, the Voting Record Date was July 24, 2025, the Solicitation Date was July 28, 2025, the Voting Deadline was August 25, 2025 at 4:00 p.m. (prevailing Eastern Time), and the Confirmation Objection Deadline was August 25, 2025 at 4:00 p.m. (prevailing Eastern Time).

33.      On July 28, 2025, the Debtors filed the solicitation version of the Combined Disclosure Statement and Plan.  *See* [D.I. 506].

34.      The Plan provides (a) full recoveries to Holders of Allowed Administrative Claims (including Professional Fee Claims) and Priority Tax Claims (which are not classified under the Plan), (b) partial recoveries to Ingredion (Class 1) and Wise County (Class 1A), (c) full recoveries

8

to Holders of Other Priority Claims (Class 2); and (d) meaningful recoveries to Holders of Allowed

General Unsecured Claims (Class 3).  Holders of Intercompany Claims (Class 3A), Holders of

SAFE Note Claims (Class 4), and Holders of Existing Equity (Class 5) are not receiving or

retaining any property under the Plan.

### E.    Solicitation and Voting Results

35.    On July 28, 2025, in accordance with the Solicitation Procedures Order, the Voting

Agent completed service of Confirmation Hearing Notice on all parties in interest, Solicitation

Packages on the Holders of Claims in the Voting Class, and Non-Voting Notice Packages on

Holders of Claims in the Non-Voting Classes as evidenced by the *Amended Certificate of Service

of Solicitation Documents.  See* [Docket No. 520].

36.    As described above, the Voting Deadline was August 25, 2025 at 4:00 p.m.

(prevailing Eastern Time).

37.    The voting results are compiled and reported in the Voting Declaration, which

attaches a report regarding the tabulation of Ballots received to accept or reject the Plan (the

"Voting Report"), and is incorporated herein by reference.  The voting results, as reflected in the

Voting Report, are as follows:

| TOTAL BALLOTS COUNTED | | | | | Class Voting Result |
| --- | --- | --- | --- | --- | --- |
| **VOTING CLASS** | **ACCEPT** | | **REJECT** | | |
| | **AMOUNT** | **NUMBER** | **AMOUNT** | **NUMBER** | |
| **Class 1** Compromised Ingredion Secured Claim | $7,595,613.87 100.00% | 1 100.00% | $0.00 0.00% | 0 0.00% | Accept |
| **Class 1A** Wise County Secured Claim | $7,256.84 100.00% | 1 100.00% | $0.00 0.00% | 0 0.00% | Accept |
| **Class 3** General Unsecured Claims | $1,793,935.00 100.00% | 9 100.00% | $0.00 0.00% | 0 0.00% | Accept |

38.     Classes 1, 1A, and 3 were the only Classes entitled to vote on the Plan.  As set forth above and in the Voting Report, Classes 1, 1A, and 3 voted to accept the Combined Disclosure Statement and Plan – notably, in the Voting Classes, there were no votes to reject the Plan.

**F.     Confirmation Objections.**

39.     The deadline to file objections to final approval of the Disclosure Statement and/or confirmation of the Plan (*i.e.*, the Confirmation Objection Deadline) was August 25, 2025 at 4:00 p.m. (prevailing Eastern Time).  No objections were filed by the Confirmation Objection Deadline or thereafter.

## IV.     ARGUMENT

**A.     The Plan Satisfies Each Requirement for Confirmation**

40.     To confirm the Plan, the Court must find that the Debtors have satisfied the applicable provisions of section 1129 of the Bankruptcy Code by a preponderance of the evidence.  *See In re Armstrong World Indus., Inc.*, 348 B.R. 111, 120 (D. Del. 2006); *In re Genesis Health Ventures, Inc.*, 266 B.R. 591, 616 n.23 (Bankr. D. Del. 2001).  The Plan satisfies the Bankruptcy Code requirements for confirmation, particularly those found in each of sections 1122, 1123, and 1129 of the Bankruptcy Code.  Therefore, the Court should confirm the Plan.

41.     Through the record in the Chapter 11 Cases, including the Yager Declaration and the Voting Declaration, testimonial evidence that may be adduced at or before the Confirmation Hearing (if necessary), and arguments of counsel at the Confirmation Hearing (if necessary),  the Debtors will have demonstrated, by a preponderance of the evidence, that all applicable subsections of section 1129 of the Bankruptcy Code have been satisfied with respect to the Plan.

1.    **Section 1129(a)(1): The Plan Complies with the Applicable Provisions of the Bankruptcy Code**

42.    Section 1129(a)(1) of the Bankruptcy Code requires that a plan comply with the applicable provisions of the Bankruptcy Code.  A principal objective of section 1129(a)(1) is to ensure compliance with the Bankruptcy Code's requirements regarding classification of claims and interests and the contents of a plan, as set forth in sections 1122 and 1123 of the Bankruptcy Code.  *See In re Nutritional Sourcing Corp.*, 398 B.R. 816, 824 (Bankr. D. Del. 2008) (suggesting that Congress intended that the phrase "applicable provisions of this title" requires that a "plan comply with the applicable provisions of Chapter 11, such as Section 1122 and 1123 . . . .") (citations omitted).  As explained below, the Plan complies with sections 1122 and 1123 in all respects.

a.    *The Plan Satisfies the Classification Requirements of Section 1122 of the Bankruptcy Code*

43.    Pursuant to section 1122(a), claims or interests classified together must be substantially similar to each other.  The Plan complies with section 1122(a), as each Class contains substantially similar Claims.

44.    The Debtors exercised their reasonable business judgment in creating the classification scheme contained in the Plan.  The classification under the Plan is based on the differing nature and priority of Claims against and Interests in the Debtors: Class 1 is comprised of the Compromised Ingredion Secured Claim, Class 1A is comprised of the Wise County Secured Claim, Class 2 is comprised of Other Priority Claims, Class 3 is comprised of General Unsecured Claims, Class 3A is comprised of Intercompany Claims, Class 4 is comprised of the SAFE Note Claims, and Class 5 is comprised of Existing Equity. Administrative Claims, Professional Fee Claims, and Priority Tax Claims are not classified for purposes of voting or receiving distributions

11

under the Plan, but are treated separately as Unclassified Claims. Accordingly, the Plan satisfies section 1122 of the Bankruptcy Code.

> b.   *The Plan Satisfies the Mandatory Requirements of Section 1123(a) of the Bankruptcy Code*

45.   Section 1123(a) sets forth seven mandatory requirements that a chapter 11 plan must satisfy. The Plan satisfies each of these requirements.

46.   **Section 1123(a)(1)-(4).** Article V of the Plan satisfies subsections 1123(a)(1)-(4) of the Bankruptcy Code. Those subsections require the Plan to designate classes of claims other than certain priority claims, specify the treatment of those claims, and provide the same treatment for each holder in a class, respectively. The Plan here satisfies each requirement.

47.   The Plan designates five (5) different classes of Claims and Interests, complying with section 1123(a)(1). Article V of the Plan specifies that Class 2 is unimpaired under the Plan, thereby satisfying section 1123(a)(2) of the Bankruptcy Code. Article V of the Plan also specifies that Classes 1, 1A, 3, 3A , 4, and 5 are impaired under the Plan and specifies the treatment of Claims or Interests in those Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code. The Plan provides for the same treatment for each Claim or Interest in each respective Class unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

48.   **Section 1123(a)(5).** Section 1123(a)(5) of the Bankruptcy Code requires that the Plan provide "adequate means for the plan's implementation."

49.   Here, Articles VII, VIII and X of the Plan and the various related documents and agreements set forth therein, including the Plan Supplement, provide adequate means for the Plan's implementation, thus satisfying section 1123(a)(5) of the Bankruptcy Code. This includes, but is not limited to: (i) the deemed substantive consolidation of the Debtors' respective estates for

12

voting, confirmation, and Distribution purposes only; (ii) the eventual dissolution of the Debtors; (iii) the creation and governance of the Liquidation Trust and appointment of a Liquidating Trustee; (iv) the transfer to the Liquidating Trust of the Liquidating Trust Assets, including, without limitation, all Retained Causes of Action, in accordance with section 1141 of the Bankruptcy Code (except as specifically provided in the Plan, the Confirmation Order or other Final Order); (v) the making of Distributions by the Liquidating Trust in accordance with the Plan and the Liquidating Trust Agreement; and (vi) mechanics of distributions to holders of Allowed Claims.

50.    **Section 1123(a)(5)(c).** Section 1123(a)(5)(c) of the Bankruptcy Code authorizes a bankruptcy court to confirm a chapter 11 plan containing provisions which substantively consolidate the estates of two or more debtors.  Section VIII of the Plan provides for "deemed" limited substantive consolidation of the Estates solely for voting, confirmation, and Distribution purposes.  As discussed below and in the Yager Declaration, deemed substantive consolidation is a common feature of chapter 11 plans where it promotes administrative efficiency, is done on a consensual basis and does not prejudice creditors, as is the case here.

51.    Courts in this District have allowed deemed substantive consolidation for plan purposes to promote administrative efficiency.  *See, e.g.*, *In re EYP Group Holdings, Inc.*, Case No. 22-10367 (MFW) (Bankr. D. Del. Nov. 1, 2022) [D.I. 568]; *In re Valeritas Holdings, Inc.*, Case No. 20-10290 (LSS) (Bankr. D. Del. June 8, 2020) [D.I. 410]; *In re Keystone Tube Co., LLC*, Case No. 17-11330 (LSS) (Bankr. D. Del. Aug. 2, 2017) [D.I. 244]; *In re Old Fenm, Inc.*, Case No. 13-12569 (KJC) (Bankr. D. Del. July 2, 2014) [D.I. 949]; *In re Aleris International, Inc.*, Case No. 09-10478 (BLS) (Bankr. D. Del. May 13, 2010) [D.I. 2087].

52.     Here, as in the cases cited above, the Debtors seek deemed limited substantive consolidation to promote administrative efficiency for the benefit of all parties in interest. Holders of Claims in Classes 1, 1A, and 3 have voted to approve the Plan notwithstanding its deemed limited substantive consolidation provisions. In addition, the Debtors believe creditors will not be prejudiced by the Plan's deemed limited substantive consolidation because the costs of reconciling and analyzing Distributions by debtor would exceed the benefits.

53.     Several factors present here make deemed limited substantive consolidation appropriate for administrative efficiency: (i) efforts to deconsolidate the Debtors' respective assets and liabilities would be burdensome and divert professional resources that are more profitably directed elsewhere, all without meaningfully affecting the distributions received by any Class; (ii) the cost of allocating the Debtors' assets and liabilities, including Intercompany Claims, would require a considerably lengthier process that would delay distributions and require the incurrence of a far greater expense, ultimately decreasing net distributions to creditors; and (iii) substantive consolidation promotes administrative efficiency and provides a clear and meaningful benefit to creditors.

54.     The Debtors neither intend to effectuate true substantive consolidation nor do they seek to avoid payment of U.S. trustee fees.

55.     Furthermore, pursuant to the Plan, from and after the Effective Date, the Debtors will have no assets, as they will have been contributed to the Liquidating Trust.

56.     For these reasons, the Debtors submit that the deemed limited substantive consolidation proposed under the Plan is appropriate under the circumstances and should be approved.

57.     **Section 1123(a)(6).**  Section 1123(a)(6) does not apply to the Plan because the Debtors are not issuing any equity securities under the Plan.

58.     **Section 1123(a)(7).**  Section 1123(a)(7) of the Bankruptcy Code requires that the Plan "contain only provisions that are consistent with the interests of creditors and equity security holders and with public policy with respect to the manner of selection of any officer, director, or trustee under the plan and any successor to such officer, director, or trustee."  11 U.S.C. § 1123(a)(7).  The Debtors have disclosed in the Liquidating Trust Agreement that Arian Eghbali is proposed to serve as the Liquidating Trustee after the Effective Date and will oversee the wind down of the Debtors' estates.  Mr. Eghbali was selected by the Committee in a manner consistent with the interests of creditors and with public policy.  Accordingly, the Plan satisfies section 1123(a)(7) of the Bankruptcy Code.

            c.      *The Plan Satisfies the Mandatory Requirements of Section 1123(b)*
                    *of the Bankruptcy Code*

59.     Section 1123(b) of the Bankruptcy Code sets forth certain provisions that may be incorporated into a Chapter 11 plan, although they are not required.  *See* 11 U.S.C. § 1123(b).  Each provision of the Plan is consistent with section 1123(b) of the Bankruptcy Code.

                    **(i)      The Plan Satisfies Section 1123(b)(1)**

60.     Section 1123(b)(1) of the Bankruptcy Code provides that a plan may "impair or leave unimpaired any class of claims, secured or unsecured, or of interests."  11 U.S.C. § 1123(b)(1).  Claims and Interests in Classes 1, 1A, 3, 3A, 4, and 5 are impaired under the Plan.  Claims in Class 2 are not impaired by the Plan.  *See* Plan, Art. V.  Accordingly, the Plan is consistent with section 1123(b)(l) of the Bankruptcy Code.

### (ii)    The Plan Satisfies Section 1123(b)(2)

61.    Section 1123(b)(2) of the Bankruptcy Code allows a plan to provide for the assumption and assignment, or rejection of executory contracts and unexpired leases pursuant to section 365 of the Bankruptcy Code.  Article IX of the Plan provides that all Executory Contracts and Unexpired Leases of the Debtors  not previously assumed, assumed and assigned, or rejected shall be deemed automatically rejected as of the Effective Date, except to the extent: (a) such Executory Contract or Unexpired Lease is subject of a motion to assume that is pending on the Confirmation Date, (b) is a contract, release, or other agreement or document entered into in connection with the Plan, or (c) is an Insurance Policy.  Accordingly, the Plan is consistent with section 1123(b)(2) of the Bankruptcy Code.

### (iii)    The Plan Satisfies Section 1123(b)(3)

62.    Section 1123(b)(3)(B) of the Bankruptcy Code provides that a plan may "provide for the retention and enforcement by the debtor" of claims or interests belonging to the Debtors. 11 U.S.C. § 1123(b)(3)(B).  Article VII of the Plan preserves for the Liquidating Trust the right and authority to prosecute, compromise, settle, and/or otherwise deal with the Retained Causes of Action, which are described in the Plan Supplement.  *See* [D.I. 527-2].  Accordingly, the Plan is consistent with section 1123(b)(3) of the Bankruptcy Code.

### (iv)    The Debtors' Release Under the Plan Is Appropriate Under Section 1123(b)(3) and (6)

63.    Article XIV of the Plan provides for (a) the Debtors' release (the "<u>Debtors' Releases</u>") of certain parties, including Ingredion (the "<u>Released Parties</u>"),[3] and (b) the release of the Debtors by certain parties in interest.

---

[3] "Released Party" means collectively, and in each case in its capacity as such: (a) the Debtors; (b) the Prepetition Secured Parties; (c) the DIP Lender; (d) the Committee and its Professionals; (e) the Committee members, in their individual capacities as Committee members; and (f) as to the foregoing (a) through (c) each such Person's Related

64.     Each of the Released Parties were and/or are stakeholders or critical participants in the Sale and Plan processes.  The Debtors' Releases represent a valid settlement pursuant to section 1123(b)(3)(A) of whatever claims the Debtors may have against the Released Parties.  *See* 11 U.S.C. § 1123(b)(3)(A) (a plan may provide for "the settlement or adjustment of any claim or interest belonging to the debtor or to the estate").  The Debtors have proposed the Debtors' Releases based on their sound business judgment.  The Debtors' Releases were negotiated at arm's length, are wholly consensual, are a necessary and integral component of the Debtors' formulation and implementation of the Plan, and comply with the Bankruptcy Code.

65.     The Debtors' Releases satisfy the applicable standard in this circuit and are consistent with similar releases approved by this Court.  "Courts in this district have held that a plan may provide for releases by a debtor or non-debtor third parties after considering the specific facts and equities of each case."  *U.S. Bank Nat'l Ass'n v. Wilmington Trust Co. (In re Spansion, Inc.)*, 426 B.R. 114, 142 (Bankr. D. Del. 2010).  In this jurisdiction, courts typically assess the propriety of a "debtor release" in light of five "*Zenith* factors" in the context of a Chapter 11 plan:

1)    an identity of interest between the debtor and the third party, such that a suit against the non-debtor is, in essence, a suit against the debtor or will deplete assets of the estate;

2)    substantial contribution by the non-debtor of assets to the reorganization;

3)    the essential nature of the injunction to the reorganization to the extent that, without the injunction, there is little likelihood of success;

---

Parties. Nothing in the foregoing or the Plan or Confirmation Order, shall preclude the Liquidating Trustee from naming an officer or director for the purpose of seeking to recover against available Insurance Policies, however, recovery is limited to available Insurance Policies. Nothing in the foregoing is intended to modify any releases or purchased assets in the Sale Order and Sale documents, including the APA. The Debtors' directors and officers agree to reasonably cooperate with the Liquidating Trustee.

4)    an agreement by a substantial majority of creditors to support the injunction, specifically if the impacted class or classes 'overwhelmingly' votes to accept the plan;

5)    provision in the plan for payment of all or substantially all of the claims of the class or classes affected by the injunction.

*In re Zenith Elecs. Corp.*, 241 B.R. 92, 110 (Bankr. D. Del. 1999); *see also In re Indianapolis Downs, LLC,* 486 B.R. 286, 303 (Bankr. D. Del. 2013).  No factor is dispositive, nor is a proponent required to establish each factor for the release to be approved; rather, the factors are intended to provide guidance to the court in determining the fairness of the releases.  *See In re Wash. Mut., Inc.,* 442 B.R. 314, 346 (Bankr. D. Del. 2011); *see also In re Exide Techs.,* 303 B.R. 48, 72 (Bankr. D. Del. 2003) (finding that factors are not exclusive or conjunctive requirements, but instead are helpful in weighing the equities of the particular case after a fact-specific review); *Indianapolis Downs*, 486 B.R. at 304 (approving the debtors' releases despite not meeting the third and fifth *Zenith* factors).

66.    The Plan Proponents submit that each *Zenith* factor supports approval of the Debtor Releases.

67.    <u>First</u>, there is identity of interest between the Released Parties and the Debtors.  The Debtors have a duty to indemnify certain of the Released Parties, such as pursuant to the Debtors' governance documents, or could otherwise be required to bear the cost of any litigation against the Released Parties related to the Chapter 11 Cases.  *See also Indianapolis Downs*, 486 B.R. at 303 ("An identity of interest exists when, among other things, the debtor has a duty to indemnify the nondebtor receiving the release.").

68.    The Released Parties also have an identity of interest insofar as the Released Parties' cooperation and support was necessary throughout the Chapter 11 Cases (*i.e.,* the Debtors, the Committee, and Ingredion) to permit the Debtors to sell substantially all of their assets and

make distributions through the Plan.  *See In re Coram Healthcare Corp.,* 315 B.R. 321, 335 (Bankr. D. Del. 2004) (approving releases where released parties and debtors shared "common goal of achieving a reorganization of the Debtors").  Each of the Released Parties, as stakeholders and critical participants in the Sale and the Plan processes, sought to ensure the success of the Chapter 11 Cases, the Plan, and the maximization of distributions to creditors in an expeditious manner.

69.    <u>Second</u>, the Debtor Releases are predicated on substantial contributions by each of the Released Parties.  The Released Parties made significant contributions to the Chapter 11 Cases by, as applicable, through their services to the Debtors and support of the Sale and Plan processes. The cooperation and support of the Released Parties enabled the Debtors to obtain approval of the Sale, among other things.  In particular, the directors and officers of the Debtors that are Released Parties have a unified interest in formulating and confirming the Plan, were actively involved in the Debtors' strategic process leading up to the filing of the Chapter 11 Cases, and continued to support and facilitated the Debtors' efforts during the Chapter 11 Cases.  They further participated in efforts in developing a value-maximizing strategy for the Debtors, to ensure the Debtors' smooth transition into chapter 11, including the continued operations of the Debtors leading up to the closing of the Sale in order to maximize value of the Debtors' assets for the benefit of their creditors, and providing continued and uninterrupted operations to successfully administer the Chapter 11 Cases and the Debtors' estates throughout the pendency of the Chapter 11 Cases. The proceeds of the Sale that were paid by the Purchaser will fund the Plan and provide either payment in full or, in the case of Holders of General Unsecured Claims, meaningful distributions, to creditors.  All of the Released Parties have been involved with negotiations and compromises or

have otherwise helped position the Debtors to maximize the value of the Debtors' assets, which would not have been possible in a chapter 7 liquidation.

70.     <u>Third</u>, the Debtor Releases are essential to the Plan as they were negotiated as part of the CIAP Settlement, by and among the Debtors, the Committee and Ingredion, which has been approved by the Court and becomes effective upon confirmation of the Plan. *See* D.I. 524.  *See Coram Healthcare Corp.,* 315 B.R. at 335 ("The releases given to the Noteholders are an essential part of the Plan, since they would not provide the funding without the releases.").

71.     <u>Fourth</u>, as evidenced by the Voting Report, Holders of Claims in Classes 1, 1A and 3 voted overwhelmingly to accept the Plan.  Significantly, no creditor or party-in-interest has objected to the Debtor Releases.

72.     <u>Fifth</u>, as described in the Plan, Holders of Claims will receive either a high recovery or, with respect to Class 3, a meaningful recovery, on account of such claims.  Consequently, the fifth *Zenith* factor weighs in favor of the Debtor Releases.

For all of the foregoing reasons, the Debtor Releases are an integral component of the Plan, complies with the Bankruptcy Code, is in the best interests of the Debtors' creditors, and should be approved.

### (v)     The Exculpation Under the Plan is Appropriate Under Section 1123(b)(6)

73.     The exculpation provisions in Article XIV. E. of the Plan (the "<u>Exculpation</u>") should also be approved under the standards established by the Third Circuit.  Courts evaluate the appropriateness of exculpation provisions based on a number of factors, including whether the plan was proposed in good faith, whether liability is limited, and whether the exculpation provision was necessary for plan negotiations.  *See, e.g.*, *In re PWS Holding Corp.,* 228 F.3d 224, 246-47 (3d Cir. 2000) (observing that the debtors and certain other parties, such as the unsecured creditors'

committee members and the professionals retained by such committee, who provided services to assist in the reorganization, are entitled to a "limited grant of immunity . . . for actions within the scope of their duties").

74.     Here, the Exculpation is appropriate under applicable law because it is part of a Plan proposed in good faith, is appropriately limited in scope, and is being granted only to the Exculpated Parties.[4] Each Exculpated Party receiving exculpation under the Plan is a fiduciary of the Debtors and/or their estates.  The protection from liability that the Exculpation provides to these parties is appropriate given their efforts in the Chapter 11 Cases and the Plan process and their fiduciary relationship with the Debtors and/or their estate.

75.     Exculpation provisions similar to that proposed in the Plan are appropriate where, as here, such provisions do not extend to gross negligence or willful misconduct and where the Exculpated Parties have acted in good faith in negotiating and implementing the Plan.  *See PWS Holding,* 228 F.3d at 246-47 (approving plan exculpation provision with willful misconduct and gross negligence exceptions); *Indianapolis Downs,* 486 B.R. at 306 (same).

76.     Significantly, the Plan has received overwhelming support from creditors, and no party-in-interest has filed an objection to the Plan on account of the Exculpation.  Accordingly, the Exculpation provides reasonable and appropriate protections and should be approved.

### (vi)    The Injunction Under the Plan is Appropriate and Should be Approved

77.     The injunction provisions set forth in Article XIV. F. of the Plan (the "Injunctions") merely implement the Plan's release and exculpation provisions, in part, by permanently enjoining

---

[4] "Exculpated Party" means collectively, and in each case in its capacity as such, (a) the Debtors, (b) the directors, managers (pursuant to the Debtors' corporate organizational documents), and officers of the Debtors who served in such capacity between the Petition Date and the Effective Date, (c) the Professionals retained by the Debtors in the Chapter 11 Cases solely in their capacities as such, except for Ordinary Course Professionals, (d) the Committee, (e) the members of the Committee, and (f) the Professionals retained by the Committee, solely in their capacities as such.

all applicable entities from commencing or maintaining any action on account of or with respect to any such Claims or Interests discharged, released, exculpated, or settled under the Plan. The Injunctions are thus key provisions of the Plan because they enforce the release and exculpation provisions that are essential to the Plan. In addition, no party has objected to the Injunctions. As such, the Court should approve the Injunctions.

### 2. Section 1129(a)(2): the Debtors have Complied with the Applicable Provisions of the Bankruptcy Code

78. The Debtors have satisfied section 1129(a)(2) of the Bankruptcy Code, which requires that the proponent of a plan comply with the applicable provisions of the Bankruptcy Code – here, sections 1125, 1126, and 1127.

### a. The Debtors Have Complied with Section 1125, and the Disclosure Statement Should be Approved on a Final Basis

79. The cases and legislative history discussing section 1129(a)(2) of the Bankruptcy Code indicate that this section principally embodies the disclosure and solicitation requirements of section 1125 of the Bankruptcy Code. Section 1125 prohibits the solicitation of acceptances or rejections of a plan "unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information." 11 U.S.C. § 1125(b). Section 1125 thus ensures that parties in interest are fully informed regarding the debtor's condition so that they may make an informed decision whether to approve or reject the plan. *See Momentum Mfg. Corp. v. Emp. Creditors Comm. (In re Momentum Mfg. Corp.),* 25 F.3d 1132, 1136 (2d Cir. 1994); *see also Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.,* 337 F.3d 314, 321 (3d Cir. 2003).

80. On July 2, 2025, the Debtors filed the Solicitation Procedures Motion, which described in detail the legal and factual bases supporting a finding that the Disclosure Statement

contains "adequate information" as defined in section 1125(a)(1) of the Bankruptcy Code. *See* Solicitation Procedures Motion, ¶¶ 26-37. The Debtors hereby incorporate the arguments contained in the Solicitation Procedures Motion by reference as if fully set forth herein.

81.     On July 26, 2025, the Court approved the Disclosure Statement on an interim basis for solicitation purposes in accordance with section 1125(a)(1) of the Bankruptcy Code. *See* [Docket No. 503]. The Debtors received no objections to final approval of the Disclosure Statement.

82.     The Court also approved the contents of the Solicitation Packages provided to Holders of Claims entitled to vote on the Plan, the non-voting materials provided to creditors and equity holders not entitled to vote on the Plan, and the relevant dates for voting and objecting to the Plan. *See* [Dkt. No. 503]. The Debtors, through the Voting Agent, complied with the content and delivery requirements of the Solicitation Procedures Order, thereby satisfying sections 1125(a) and (b) of the Bankruptcy Code. *See Amended Certificate of Service of Solicitation Documents* was filed on August 14, 2025 [Docket No. 520].

83.     The Debtors have also satisfied section 1125(c) of the Bankruptcy Code, which provides that the same disclosure statement must be transmitted to each holder of a claim or interest in a particular Class. The Debtors transmitted the Disclosure Statement to all parties entitled to vote on the Plan. *See id.*

84.     For the reasons set forth herein and in the Solicitation Procedures Motion, the Debtors believe the Disclosure Statement contains adequate information within the meaning of section 1125 of the Bankruptcy Code. Accordingly, the Debtors submit that they have complied with section 1125 and the Court should approve the Disclosure Statement on a final basis.

*b.*        Solicitation Complies with Section 1126

85.        Section 1126 of the Bankruptcy Code specifies the requirements for acceptance of a plan.  11 U.S.C. § 1126.  Specifically, only holders of allowed claims and allowed interests in impaired classes of claims or interests that will receive or retain property under a plan on account of such claims or interests may vote to accept or reject such plan.  Classes that are unimpaired under the Plan are conclusively deemed to accept.  *See* 11 U.S.C. § 1126(f).  Conversely, classes that are entitled to nothing under the Plan are conclusively deemed to reject.  *See* 11 U.S.C. § 1126(g).

86.        In accordance with section 1126 of the Bankruptcy Code, the Debtors solicited acceptances or rejections of the Plan from the Holders of Claims in Classes 1, 1A, and 3, which were the only Classes entitled to vote on the Plan.  As provided in the Voting Report, Classes 1, 1A, and 3 voted to accept the Plan.

*c.*        *The Plan Will Comply With Section 1127*

87.        Section 1127(a) of the Bankruptcy Code provides a plan proponent with the right to modify the plan "at any time" before confirmation, and section 1127(d) of the Bankruptcy Code provides that all stakeholders that previously have accepted a plan also should be deemed to have accepted the modified plan.  *See* 11 U.S.C. § 1127.  The Debtors reserve their rights, under section 1127 of the Bankruptcy Code, to modify the Plan further prior to the entry of the Confirmation Order.

**3.        Section 1129(a)(3): The Plan has Been Proposed in Good Faith and Not by Any Means Forbidden by Law**

88.        Section 1129(a)(3) of the Bankruptcy Code requires that a chapter 11 plan be "proposed in good faith and not by any means forbidden by law."  The Debtors negotiated, developed, and proposed the Plan in good faith and no party asserts otherwise.  The Plan is the

product of arm's-length negotiations among the Debtors and parties-in-interest.  The Debtors proposed the Plan with the legitimate and good faith purpose of liquidating and maximizing the value of the Debtors' remaining assets and making distributions in a manner that is (a) timely, orderly, and efficient, (b) in the best interests of the Debtors' Estates and Holders of Allowed Claims, and (c) in accordance with the Bankruptcy Code.

89.     Based on the foregoing, the facts and record of the Chapter 11 Cases, the Disclosure Statement, and the record to be made at the Confirmation Hearing, the Plan and related documents have been proposed in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code.  No party has asserted otherwise.[5]

### 4.    Section 1129(a)(4): The Plan Provides for Court Approval of Certain Administrative Payments

90.     Section 1129(a)(4) of the Bankruptcy Code requires that certain professional fees and expenses paid by the plan proponent, by the debtor, or by a person issuing securities or acquiring property under the plan, be subject to approval of the Court as reasonable.  *See In re Future Energy Corp.,* 83 B.R. 470, 488 (Bankr. S.D. Ohio 1988); *In re Chapel Gate Apartments, Ltd.*, 64 B.R. 569, 573 (Bankr. N.D. Tex. 1986) (noting that before a plan may be confirmed, "there must be a provision for review by the Court of any professional compensation").

91.     Here, all payments made or to be made by the Debtors for services or for costs or expenses in connection with the Chapter 11 Cases prior to the Effective Date, including all Professional Fee Claims, have been approved by, or are subject to approval of, the Court.  Article IV.B.1 of the Plan provides that all final requests for payment of Professional Fee Claims for

---

[5] *See* Bankruptcy Rule 3020(b)(2) ("The court shall rule on confirmation of the plan after notice and hearing as provided in Rule 2002.  If no objection is timely filed, the court may determine that the plan has been proposed in good faith and not by any means forbidden by law without receiving evidence on such issues.")

services rendered through the Effective Date shall be filed and served no later than 30 days after the Effective Date for determination by the Court, after notice and a hearing, in accordance with the procedures established by the Bankruptcy Code and prior Court orders.  Accordingly, the Plan fully complies with the requirements of section 1129(a)(4) of the Bankruptcy Code.

     **5.**     <u>**Section 1129(a)(5): The Plan Discloses Post-Effective Date Management**</u>

92.     Section 1129(a)(5) of the Bankruptcy Code requires: (i) that the proponent of a plan disclose the identity of any individual proposed to serve after confirmation as a director, officer, or voting trustee of the debtor; (ii) that the appointment of such individuals be consistent with the interests of creditors and shareholders and with public policy; and (iii) that the proponent disclose the identity of any insider that will be employed by the reorganized debtor and the nature of the compensation to be provided to such insider.  11 U.S.C. § 1129(a)(5).

93.     The Debtors have satisfied the foregoing requirements.  The Debtors have disclosed in the Liquidating Trust Agreement (which was filed with the Plan Supplement) that Mr. Eghbali is proposed to serve as the Liquidating Trustee after the Effective Date.  The appointment of Mr. Eghbali to the role of the Liquidating Trustee is consistent with the interests of creditors.  The Liquidating Trustee's compensation, including fees and expenses of the Liquidating Trust, will be paid as set forth in the Plan and the Liquidating Trust Agreement.

     **6.**     <u>**Section 1129(a)(6): The Plan Does Not Require Governmental Approval of Rate Changes**</u>

94.     Section 1129(a)(6) of the Bankruptcy Code permits confirmation only if any regulatory commission that will have jurisdiction over the debtor after confirmation has approved any rate change provided for in the plan.  As the Plan does not provide for any rate changes, section 1129(a)(6) is inapplicable here.

7.      **Section 1129(a)(7): The Plan is in the Best Interests of Creditors**

95.      Section 1129(a)(7) – the "best interests of creditors" test – requires that, with respect to each impaired class of claims or interests, either: (a) each holder of a claim or interest of such class has accepted the plan; or (b) will receive or retain under the plan property of a value, as of the effective date of the plan, that is not less than the amount that such holder would receive or retain if the debtor liquidated under chapter 7.  *See Bank of Am. Nat'l Trust and Sav. Ass'n v. 203 N. LaSalle St. P'ship,* 526 U.S. 434, 441 n.13 (1999) ("The 'best interests' test applies to individual creditors holding impaired claims, even if the class as a whole votes to accept the plan.").  The best interests test is generally satisfied by a liquidation analysis demonstrating that an impaired class will receive no less under the plan than under a chapter 7 liquidation.  *See In re Lason*, 300 B.R. 227, 232 (Bankr. D. Del. 2003) ("Section 1129(a)(7)(A) requires a determination whether a prompt chapter 7 liquidation would provide a better return to particular creditors or interest holders than a chapter 11 reorganization") (citations omitted).

96.      The Plan satisfies section 1129(a)(7).  As set forth in Article VI.H. of the Combined Disclosure Statement and Plan, the Debtors believe that in a chapter 7 liquidation there would be additional costs and expenses that the Estate would incur as a result of, *inter alia,* the appointment of a new party to serve as chapter 7 trustee and the likely retention of new professionals, all of whom would need to expend time and incur expense getting up to speed regarding the Estates and the Claims to be adjudicated.  Such amounts would likely exceed the amount of expenses that would be incurred in implementing the Plan and winding up the affairs of the Debtor.

97.      Most importantly, the Plan embodies the CIAP Settlement, which resolves the CIAP and allows for funds to be available for Holders of General Unsecured Claims. As shown by the Liquidation Analysis in Exhibit 2 to the Plan, there would be no recovery for Holders of

General Unsecured Claims absent the CIAP Settlement.  As noted earlier, the CIAP Settlement has been approved subject to the Plan being confirmed.  *See* D.I. 524.

98.    Substantially all of the Debtors' assets already have been liquidated pursuant to the Sale, and the Plan follows Bankruptcy Code priorities that would apply in a chapter 7 liquidation. The only material differences between the outcome under the Plan and a chapter 7 liquidation would be the added expense of a chapter 7 trustee and potentially new professionals, which would materially reduce value available for distribution.

99.    Accordingly, because the recoveries provided under the Plan would exceed the recoveries that would be available in a chapter 7 liquidation, the Plan satisfies section 1129(a)(7) of the Bankruptcy Code.

### 8.    Section 1129(a)(8): Acceptance by Impaired Classes

100.    Section 1129(a)(8) of the Bankruptcy Code requires that each class of claims or interests must either vote to accept a plan or be unimpaired under that plan.  11 U.S.C. § 1129(a)(8). As evidenced by the Voting Report, Classes 1, 1A, and 3 voted to accept the Plan.

101.    As discussed above, Class 2 is deemed to have accepted the Plan. Classes 3A, 4, and 5 are deemed to reject the Plan; however, the Plan may still be confirmed over the dissent of Classes 3A, 4, and 5 because, as set forth below, the Debtors have satisfied the requirements for cramdown under section 1129(b) of the Bankruptcy Code.

### 9.    Section 1129(a)(9): The Plan Complies with Statutorily Mandated Treatment of Administrative Claims and Priority Tax Claims

102.    Section 1129(a)(9) of the Bankruptcy Code requires that holders of claims for administrative expenses allowed under section 503(b) of the Bankruptcy Code must receive on the effective date cash equal to the allowed amount of such claims.  The treatment of Administrative Claims and Priority Tax Claims, as set forth in Article IV of the Plan, is in accordance with the

requirements of section 1129(a)(9) of the Bankruptcy Code.  Accordingly, the Plan complies with section 1129(a)(9) of the Bankruptcy Code.

### 10.    Section 1129(a)(10): The Plan has been Accepted by At Least One Impaired Class of Claims

103.    Section 1129(a)(10) provides that if a class of claims is impaired under a plan, at least one impaired class of claims must accept the plan, excluding acceptance by any insider. Classes 1, 1A, and 3, the only impaired voting Classes, have accepted the Plan regardless of the votes of any insider(s).  *See* Voting Report.  Accordingly, the Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code.

### 11.    Section 1129(a)(11): The Plan is Feasible

104.    Section 1129(a)(11) of the Bankruptcy Code requires that, as a condition to confirmation, the Bankruptcy Court determine that a plan is feasible.  Specifically, the Bankruptcy Court must determine that "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan."  11 U.S.C. § 1129(a)(11).  As described below, the Plan is feasible within the meaning of this provision.

105.    The feasibility test set forth in section 1129(a)(11) of the Bankruptcy Code requires the Court to determine whether a plan is workable and has a reasonable likelihood of success.  *See Armstrong World Indus.*, 348 B.R. at 167; *In re NII Holdings, Inc.*, 288 B.R. 356, 364 (Bankr. D. Del. 2002); *In re The Leslie Fay Cos.*, 207 B.R. 764, 788-89 (Bankr. S.D.N.Y. 1997); *In re Woodmere Investors Ltd. P'ship*, 178 B.R. 346, 361 (Bankr. S.D.N.Y. 1995).

106.    Moreover, "the feasibility standard is whether the plan offers a reasonable assurance of success.  Success need not be guaranteed." *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 649 (2d Cir. 1988).  The key element of feasibility is whether there exists a reasonable

probability that the provisions of the plan can be performed, so as to protect against a visionary or speculative plan. *See Pizza of Haw., Inc. v. Shakey's, Inc. (In re Pizza of Haw., Inc.)*, 761 F.2d 1374, 1382 (9th Cir. 1985) (quoting 5 Collier on Bankruptcy ¶ 1129.02[11], at 1129-34 (15th ed. 1984)).

107.    Applying the foregoing legal standards, the Plan satisfies the feasibility requirement of section 1129(a)(11) of the Bankruptcy Code.  The Plan provides for the completion of the Debtors' liquidation and the distribution of their remaining property in accordance with the priority scheme set forth in the Bankruptcy Code and the terms of the Plan.  Therefore, confirmation of the Plan will not be followed by the need for further financial reorganization of the Debtors, thereby satisfying (or eliminating the need to consider) section 1129(a)(11) of the Bankruptcy Code.

108.    In any event, the Plan is feasible.  The Liquidating Trust, which will be administered by the Liquidating Trustee, will have sufficient assets to accomplish its task under the Plan.  Moreover, the Debtors have already taken significant steps to wind down in an orderly fashion during the Chapter 11 Cases, including, without limitation, selling substantially all of the Debtor's assets through the Court-approved Sale.

109.    Based upon the foregoing, the Plan has more than a reasonable likelihood of success and satisfies the feasibility standard of section 1129(a)(11) of the Bankruptcy Code.

12.    **Section 1129(a)(12): The Plan Provides for Payment of All Fees Under 28 U.S.C. § 1930**

110.    Section 1129(a)(12) of the Bankruptcy Code requires the payment of all fees payable under 28 U.S.C. § 1930.  The Plan provides that all fees payable on or before the Effective Date, pursuant to 28 U.S.C. § 1930, will be paid on the Effective Date.  In accordance with these provisions, the Plan provides that the Liquidating Trust shall be obligated to pay all such fees until

the earliest of the Chapter 11 Cases being closed, dismissed, or converted to a case under Chapter 7 of the Bankruptcy Code.  The Liquidation Trust will have adequate means to make such payments.  Accordingly, the Plan complies with section 1129(a)(12).

### 13.    Sections 1129(a)(13)-(16) Are Inapplicable

111.    The Debtors do not have any retiree benefit programs within the meaning of section 1114 of the Bankruptcy Code and, as such, section 1129(a)(13) does not apply to the Plan.

112.    The Debtors are not required to pay any domestic support obligations. Accordingly, section 1129(a)(14) of the Bankruptcy Code does not apply.

113.    The Debtors are not individuals.  Thus, section 1129(a)(15) of the Bankruptcy Code does not apply.

114.    The Debtors are moneyed, business, or commercial corporation.  Therefore, section 1129(a)(15) of the Bankruptcy Code, which applies only to debtors that are nonprofit entities or trusts, does not apply.

### 14.    Section 1129(b): The Plan Satisfies the "Cramdown" Requirements

115.    Section 1129(b)(1) of the Bankruptcy Code provides that if all applicable requirements of section 1129(a) of the Bankruptcy Code are met other than section 1129(a)(8), a plan may be confirmed so long as the requirements set forth by section 1129(b) of the Bankruptcy Code are satisfied.  *See* 11 U.S.C. § 1129(b).  To confirm a plan that has not been accepted by all impaired classes (thereby failing to satisfy section 1129(a)(8) of the Bankruptcy Code), the plan proponent must show that the plan does not "discriminate unfairly" and is "fair and equitable" with respect to the non-accepting impaired classes.  *See* 11 U.S.C. § 1129(b)(1); *Zenith Elecs.*, 241 B.R. at 105.

116.    Because Classes 3A, 4, and 5 are deemed to have rejected the Plan, the requirements of section 1129(a)(8) of the Bankruptcy Code are not satisfied.  The Debtors therefore request

31

confirmation of the Plan under section 1129(b) of the Bankruptcy Code, the "cramdown" provision, with respect to Classes 3A, 4, and 5.

117.    The Plan does not discriminate unfairly with respect to Classes 3A, 4, and 5.  Here, the Plan's treatment of Classes 3A, 4, and 5 is proper because all similarly-situated Holders of Claims and Interests in Classes 3A, 4, and 5, respectively, will receive the same treatment and the Plan's classification scheme rests on a legally acceptable and otherwise appropriate rationale. Accordingly, the Plan does not discriminate unfairly with respect to impaired Interests and satisfies the requirements of section 1129(b).

118.    The Plan is also "fair and equitable" with respect to Classes 3A, 4 and 5 because the Plan complies with the "absolute priority" rule.  Section 1129(b)(2)(C) of the Bankruptcy Code provides, among other things, that a plan is fair and equitable with respect to a class of interests if the holder of any interest that is junior to the interests of such class will not receive or retain under the plan on account of such junior interest any property.  The Plan satisfies section 1129(b)(2)(C) of the Bankruptcy Code for to Classes 3A, 4 and 5, because no Class junior to Class 3A will receive or retain property under the Plan on account of such junior interest. *See* Plan, Art. V.  Moreover, Holders of Claims in Class 3 will not be paid more than 100% of their Allowed Claims.  Therefore, the Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code.

### 15.    Section 1129(c): Only One Plan

119.    Only one Plan is before the Court.  Therefore, section 1129(c) of the Bankruptcy Code is satisfied or otherwise inapplicable.

### 16.    Section 1129(d): The Principal Purpose of the Plan Is Not Avoidance of Taxes or Section 5 of the Securities Act

120.    Section 1129(d) of the Bankruptcy Code provides that "the court may not confirm a plan if the principal purpose of the plan is the avoidance of taxes or the avoidance of the

application of section 5 of the Securities Act of 1933." 11 U.S.C. § 1129(d).  As evidenced in the

Yager Declaration, the Debtors commenced the Chapter 11 Cases with a *bona fide* business need,

and business objective, to maximize the value of their assets – which they have accomplished –

and not to avoid taxes or the application of section 5 of the Securities Act.  Moreover, no

governmental unit or any other party has requested that the Court decline to confirm the Plan on

such grounds.  Accordingly, the Plan satisfies the requirements of section 1129(d) of the

Bankruptcy Code.

## V.    CONCLUSION

For all of the reasons set forth herein, the Debtors respectfully request that the Court

approve the Disclosure Statement on a final basis and confirm the Plan as fully satisfying all of

the applicable requirements of the Bankruptcy Code by entering the Confirmation Order, and

granting such other and further relief as may be appropriate under the circumstances.

Dated: September 4, 2025
Wilmington, Delaware

*/s/ Katharina Earle*
Katharina Earle (No. 6348)
**GIBBONS P.C.**
300 Delaware Avenue, Suite 1015
Wilmington, Delaware 19801
Telephone: (302) 518-6300
Email: kearle@gibbonslaw.com

-and-

John S. Mairo (admitted *pro hac vice*)
Kyle P. McEvilly (admitted *pro hac vice*)
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102
Telephone: (973) 596-4500
Email:  jmairo@gibbonslaw.com
            kmcevilly@gibbsonlaw.com

*Counsel to the Debtors and Debtors in Possession*

33