# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>SOLAR BIOTECH, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 24-11402 (LSS)<br>(Jointly Administered) |

### DECLARATION OF KEN YAGER IN SUPPORT OF THE APPROVAL AND CONFIRMATION OF THE FIRST AMENDED COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN OF LIQUIDATION OF SOLAR BIOTECH, INC. AND ITS DEBTOR AFFILIATE

I, Ken Yager, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I am the President of Newpoint Advisors Corporation ("Newpoint") which has an office at 750 Old Hickory Blvd., Building #2, Suite 150, Brentwood, TN 37027. Newpoint is a North American financial advisory firm dedicated to improving troubled and financially underperforming businesses with revenues between $5 and $50 million, and I have over 30 years of executive experience in the turnaround management field, having worked with similar sized companies to the Debtors in various fields in over 300 engagements. As the Chief Restructuring Officer of the Debtors ("CRO"), I am familiar with the Debtors' business and financial affairs, including the *First Amended Combined Disclosure Statement and Plan of Solar Biotech, Inc. and its Debtor Affiliate* [Docket No. 506] (as modified, amended, or supplemented from time to time, the "Combined Disclosure Statement and Plan") filed in the Debtors' chapter 11 cases (the "Chapter 11 Cases").

---

[1] The Debtors in these Chapter 11 Cases are Solar Biotech, Inc. and Noblegen Inc. The location of Debtors' principal place of business is 5516 Industrial Park Rd, Norton, VA 24273, Attn: Alex Berlin.

2. I submit this declaration (this "Declaration") in support of the *Debtors' Memorandum of Law in Support of Entry of an Order Confirming the First Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Solar Biotech, Inc. and its Debtor Affiliate* (the "Confirmation Brief"), filed contemporaneously herewith, and in support of approval and confirmation of the Combined Disclosure Statement and Plan.[2]

3. In my capacity as CRO, I have worked with the Debtors' advisors on a number of issues related to the Chapter 11 Cases, including strategic planning, the Debtors' sale process, the Debtors' operations in Chapter 11, and other matters related to the Chapter 11 Cases. As a result of my involvement and discussions with the Debtors' other officers, managers, employees, professionals and retained advisors, I am generally familiar with the Debtors' books and records, day-to-day operations, business, and financial condition.

4. Except as otherwise indicated herein, all statements set forth in this Declaration are based on my personal knowledge, my discussions with members of the Debtors' management team and the Debtors' advisors, my review of relevant documents and information concerning the Debtors' operations, financial affairs, and restructuring initiatives, or my opinions based upon my experience and knowledge. I am authorized to submit this Declaration on behalf of the Debtors and am over the age of 18. If called upon to testify, I would testify competently to the facts set forth herein.

## THE COMBINED DISCLOSURE STATEMENT AND PLAN

5. I have reviewed and am generally familiar with the terms and provisions of the Combined Disclosure Statement and Plan. Along with the Debtors' advisors, I was personally

---

[2] Capitalized terms not defined herein shall have the meanings provided to them in the Combined Disclosure Statement and Plan. As used herein, the term "Disclosure Statement" means the disclosure statement that is embodied in the Combined Disclosure Statement and Plan, and the term "Plan" means the plan of liquidation that is embodied in the Combined Disclosure Statement and Plan.

involved in the development, and discussions regarding the terms, of the Combined Disclosure Statement and Plan, among other things. The Combined Disclosure Statement and Plan is the result of arm's-length negotiations among the Debtors, the Committee and Ingredion.

6. Critically, the Combined Disclosure Statement and Plan embodies the CIAP Settlement, which was approved by the Court pursuant to the *Order Approving the CIAP Settlement, By and Among the Committee, Ingredion and the Debtors* [D.I. 524], and becomes effective upon entry of an order confirming the Plan. As set forth below in greater detail, the CIAP Settlement resolves the Committee/Ingredion adversary proceeding (the "CIAP") and provides for a recovery to Holders of General Unsecured Claims.

7. On July 26, 2024, the Court entered the Solicitation Procedures Order [D.I 503], thereby approving the Disclosure Statement on an interim basis for purposes of soliciting votes on the Plan. To the best of my knowledge, with the assistance of Epiq Corporate Restructuring, Inc., the Debtors' claims and noticing agent and voting agent, the Debtors complied with the solicitation and noticing procedures approved through the Solicitation Procedures Order, as well as the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, as evidenced by the certificate of service filed by the claims and noticing agent. *See* D.I. 520.

## SATISFACTION OF PLAN CONFIRMATION REQUIREMENTS

8. I believe based on my review of the Combined Disclosure Statement and Plan, that the Combined Disclosure Statement and Plan satisfies all applicable provisions of the Bankruptcy Code and should be confirmed.

*Sections 1129(a)(1) and (2) and Sections 1122 and 1123*

9. I believe that the Debtors have complied with the applicable provisions of the Bankruptcy Code as required by sections 1129(a)(1) and 1129(a)(2) of the Bankruptcy Code, respectively.

10. ***Classes of Claims.*** The Debtors exercised their reasonable business judgment in creating the Plan's classification scheme. The classification under the Plan is based on the differing nature and priority of Claims against and Interests in the Debtors: Class 1 is comprised of the Compromised Ingredion Secured Claim, Class 1A is comprised of the Wise County Secured Claim, Class 2 is comprised of Other Priority Claims, Class 3 is comprised of General Unsecured Claims, Class 3A is comprised of Intercompany Claims, Class 4 is comprised of SAFE Note Claims, and Class 5 is comprised of Existing Equity Interests. Administrative Claims and Priority Tax Clams are not classified for purposes of voting or receiving distributions under the Plan, but are treated separately as unclassified claims. I believe that each Class under the Plan only contains Claims that are substantially similar to other Claims within the Class, that similar Claims have not been placed into separate Classes, and that the Classes under the Plan were not prepared for purposes of improperly affecting the votes on the Plan or for any other inappropriate purpose. Further, the Plan provides for the same treatment of each Class within a Class.

11. ***Means of Implementation.*** I believe that the Plan provides for adequate means for implementation of the Plan, by providing for the (i) dissolution and wind up of the Debtors' affairs; (ii) creation and governance of the Liquidating Trust and appointment of a Liquidating Trustee; (iii) transfer of the Debtors' remaining assets to the Liquidating Trust, including, without limitation, all Retained Causes of Action, in accordance with Bankruptcy Code section 1141 (except as specifically provided in the Plan or the Confirmation Order); (iv) making of

Distributions by the Liquidating Trust in accordance with the Plan and the Liquidating Trust Agreement; and (v) mechanics of distributions to holders of Allowed Claims.

12. ***Deemed Limited Substantive Consolidation.*** I believe that the deemed limited substantive consolidation provided by Article VII of the Plan is necessary and appropriate.

13. I believe that the deemed limited substantive consolidation for voting, confirmation, and Distribution purposes only will enable the Liquidating Trustee to administer the Plan more efficiently for the benefit of all parties in interest. It is my understanding that the Debtors seek deemed limited substantive consolidation to promote such administrative efficiency. Holders of Claims in Class 3 voted in favor of the Plan notwithstanding its deemed limited substantive consolidation provisions. In addition, I believe that creditors will not be prejudiced by the Plan's deemed limited substantive consolidation because the costs of reconciling and analyzing distributions by Debtors would exceed the benefits.

14. I believe that several factors make deemed limited substantive consolidation appropriate for efficient administration of the Chapter 11 Cases. These factors include:

   a. Efforts to deconsolidate the Debtors' respective assets and liabilities would be burdensome and divert professional resources that are more profitably directed elsewhere, all without meaningfully affecting the distributions received by any class;

   b. The cost of allocating the Debtors' assets and liabilities, including Intercompany Claims, would require a considerably lengthier process that would delay distributions and require the incurrence of a far greater expense, ultimately decreasing net distributions to creditors; and

    c. Substantive consolidation promotes administrative efficiency and provides a clear and meaningful benefit to creditors.

15. I believe the Debtors neither intend to effectuate true substantive consolidation nor do they seek to avoid payment of U.S. Trustee fees. Moreover, pursuant to the Plan, from and after the Effective Date, these two Debtors will have no material assets, as they will have been contributed to the Liquidating Trust.

16. For the foregoing reasons, I believe that the deemed limited substantive consolidation provided by the Plan is appropriate under the circumstances and should be approved.

17. ***Exculpation, Release and Injunction Provisions***. Article XI of the Plan provides for (a) the Debtors' release of certain parties, including Ingredion, (b) releases to the Debtors and certain other parties in interest, and (c) exculpation and injunction provisions prohibiting parties from pursuing Claims and Causes of Action released under the Plan. I believe these provisions are proper because, among other things, they are the product of arm's-length negotiations, are supported by substantial consideration provided by the beneficiaries thereof, have been critical to obtaining the support of the various constituencies for the Plan, including the Committee and Ingredion, and, as part of the Plan, the Debtors have received overwhelming support from the creditors that voted for the Plan. In particular, I understand the Committee and Ingredion are supportive of the Plan, including the Releases embodied therein. I believe the Releases, exculpation, and injunction provisions of the Plan are fair and equitable, are given for valuable consideration, and are in the best interests of the Debtors and the Chapter 11 Cases.

18. <u>Debtor Release</u>. With respect to the Debtor Release, I believe that there is an "identity of interest" among the Debtors and each of the Released Parties, and that each of the Released Parties have played an instrumental role in facilitating the Debtors' sale of its assets and

6

subsequent wind-down. In particular, I understand that the Debtors have a duty to indemnify certain of the Released Parties pursuant to the Debtors' governance documents.

19.     Additionally, I believe that each of the Released Parties have made substantial contributions to the Debtors and their Estates. In particular, the directors and officers of the Debtors that are Released Parties have a unified interest in formulating and confirming the Plan, were actively involved in the Debtors' strategic process leading up to the filing of the Chapter 11 Cases, and continued to support and facilitate the Debtors' efforts during the Chapter 11 Cases. Furthermore, such release is being given in exchange for the directors' and officers' efforts in developing a value-maximizing strategy for the Debtors, to ensure the Debtors' smooth transition into chapter 11, including the continued operations of the Debtors leading up to the closing of the Sale in order to maximize value of the Debtors' assets for the benefit of its creditors, and providing continued and uninterrupted operations to successfully administer the Chapter 11 Cases and the Debtors' Estates throughout the pendency of the Chapter 11 Cases—all of which I believe helped to preserve and maximize the value of the Debtors' Estates.

20.     Moreover, I believe that the Debtor release is essential to the successful prosecution of the Plan and was negotiated as part of the CIAP Settlement, by and among the Debtors, Committee and Ingredion, which has been approved by the Court and becomes effective upon confirmation of the Plan. *See* D.I. 524. Prosecution of any claims or Causes of Action that may exist and that are being released under the Plan would be complex and time-consuming and could mire the Debtors and parties in interest in wholly speculative and potentially value-destructive litigation, rather than effectuating an efficient liquidation of the Debtor that will result in a meaningful recovery for the Debtors' creditors. Importantly, I believe the Debtor Release provides

finality and avoids significant delay, and therefore inures to the benefit of all the Debtors' stakeholders.

21.    Exculpation. Article XIV of the Plan contains certain exculpations of the Exculpated Parties (i.e., (a) the Debtors, (b) the directors, managers (pursuant to the Debtors' corporate organizational documents), and officers of the Debtors who served in such capacity between the Petition Date and the Effective Date, (c) the Professionals retained by the Debtors in the Chapter 11 Cases solely in their capacities as such, except for Ordinary Course Professionals, (d) the Committee, (e) the members of the Committee, and (f) the Professionals retained by the Committee, solely in their capacities as such). Each Exculpated Party receiving exculpation under the Plan is a fiduciary of the Debtors and/or their Estates, and I believe that the protection from liability that the exculpation provides to these parties is appropriate given their efforts in the Chapter 11 Cases and the Plan process and their fiduciary relationship with the Debtors and/or its Estates. I believe the exculpations contained in the Plan are fair, equitable, and reasonable.

22.    Injunctions. Article XIV of the Plan contains an injunction implementing the Plan's release and exculpation provisions, in part, by permanently enjoining all applicable entities from commencing or maintaining any action on account of or with respect to any such Claims or Interests released or exculpated pursuant to the Plan. Any such action would hinder the efforts of the Liquidating Trustee to effectively fulfill the responsibilities contemplated in the Plan and thereby would undermine efforts to maximize value for the Debtors' creditors. Accordingly, I believe the Injunctions are necessary to preserve and enforce the Releases and Exculpation in the Plan, and the Injunctions are narrowly tailored to achieve that purpose.

*Section 1129(a)(3)*

23. The Plan has been proposed by the Debtors in good faith, with the legitimate and honest purpose of liquidating the Debtors' Estates in an orderly fashion and maximizing the value of the Debtors and the recoveries of all creditors under the circumstances of the Chapter 11 Cases. The Plan is the product of arm's-length negotiations among parties-in-interest, and is fully supported by the Committee and Ingredion.

24. The Debtors filed the Combined Disclosure Statement and Plan with good intentions and with the expectation that the Plan will allow for expeditious liquidation and distribution of the remaining Assets to the Debtors' creditors in accordance with the order of priority set forth in the Bankruptcy Code. Further, I believe the Plan maximizes the value of the Estates for their creditors. Prior to and throughout the Plan process, the Debtors, the Committee and Ingredion continued to negotiate in good faith to achieve a consensual plan of liquidation that would maximize recoveries for all creditors.

*Section 1129(a)(4)*

25. Any payments made or to be made for services or for costs and expenses incurred in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, have been approved by, or are subject to approval of this Court as reasonable. I also believe that all of the payments to be made under the Plan are reasonable and appropriate in the Chapter 11 Cases, and I believe that the payment for the costs and expenses of the Liquidating Trust set forth in the Plan and the Liquidating Trust Agreement will fairly compensate parties for providing services necessary to the effectuation and implementation of the Plan and the wind-down of the Debtors' Estates.

*Section 1129(a)(5)*

26. ***Appointment of Liquidating Trustee.*** The Debtors have disclosed in the Liquidating Trust Agreement (which was filed with the Plan Supplement) that Arian Eghbali is proposed to serve as Liquidating Trustee after the Effective Date and will oversee the wind down of the Debtors' Estates. Arian Eghbali was selected by the Committee in a manner consistent with the interests of the creditors and with public policy. The Liquidating Trustee's compensation, including fees and expenses of the Liquidating Trust, will be paid as set forth in the Plan and Liquidating Trust Agreement.

*Section 1129(a)(6)*

27. The Debtors' business does not involve the establishment of rates subject to approval of any governmental regulatory commission, and, as a result, the Combined Disclosure Statement and Plan does not propose the change of any such rates, and I am advised that section 1129(a)(6) is inapplicable.

*Section 1129(a)(7)*

28. I believe the Plan satisfies the "best interests test" of section 1129(a)(7) of the Bankruptcy Code. As set forth in Artcile VI of the Combined Plan and Disclosure Statement, the Debtors believe that in a chapter 7 liquidation there would be additional costs and expenses that the Estates would incur as a result of, *inter alia*, the appointment of a new party to serve as chapter 7 trustee and the likely retention of new professionals, all of whom would need to expend time and incur expense getting up to speed regarding the Estates and the Claims to be adjudicated. Such amounts would likely exceed the amount of expenses that would be incurred in implementing the Plan and winding up the affairs of the Debtors.

29. Most importantly, the Plan embodies the CIAP Settlement, which resolves the CIAP and allows for funds to be available for Holders of General Unsecured Claims. As shown by the Liquidation Analysis in <u>Exhibit 2</u> to the Combined Disclosure Statement and Plan, there would be no recovery for Holders of General Unsecured Claims absent the CIAP Settlement. As noted above, the CIAP Settlement has been approved by the Court and becomes effective upon confirmation of the Plan. *See* D.I. 524.

30. In addition, substantially all of the Debtors' assets, other than potential causes of action, already had been liquidated pursuant to the Sale, and the Plan follows Bankruptcy Code priorities that would apply in a chapter 7 liquidation. The only material differences between the outcome under the Plan and a chapter 7 liquidation would be the added expense of a chapter 7 trustee and potentially new professionals, which would materially reduce value available for distribution.

31. Based on the foregoing, I believe that the Plan satisfies the "best interests test" because no creditor or equity holder will receive or retain property on account of its Claim or Interest under the Plan that is less than what such party would receive in a chapter 7 liquidation.

*<u>Sections 1129(a)(8) and 1129(b)</u>*

32. Class 1, Class 1A and Class 3 are impaired and each of those classes have voted to accept the Plan. Class 2 is deemed to have accepted the Plan. Holders of Intercompany Claims in Class 3A, Holders of SAFE Note Claims in Class 4, and Holders of Interests in Class 5 are deemed to reject the Plan; however, I understand that the Plan may still be confirmed over the deemed dissent of Class 3A, Class 4 and Class 5 because the Plan can still be confirmed if the Plan satisfies the "cramdown" provisions of section 1129(b) of the Bankruptcy Code.

33. The Plan does not discriminate unfairly with respect to Class 3A, Class 4 and Class 5. The Plan's treatment of Class 3A, Class 4 and Class 5 is proper because all similarly-situated Holders of such Claims and Interests will receive the same treatment and the Plan's classification scheme rests on a legally acceptable rationale.

34. The Plan is also "fair and equitable" with respect to Class 3A, Class 4 and Class 5 because the Plan complies with the "absolute priority" rule. I understand that the absolute priority rule requires that any class junior to the impaired class not receive any distribution under a plan on account of its junior interest. Likewise, the Plan satisfies the rule for Class 5 (Existing Equity Interests), because no Class junior to Class 5 will receive or retain property under the Plan on account of such junior interest; indeed, there is no Class junior to Class 5 under the Plan. Moreover, Holders of Claims in Class 3 will not be paid more than 100% of their Allowed Claims.

*Section 1129(a)(9)*

35. I believe that the Plan's treatment of Administrative Claims, Professional Fee Claims, and Priority Tax Claims satisfies section 1129(a)(9) of the Bankruptcy Code.

*Section 1129(a)(10)*

36. Class 1, Class 1A and Class 3, which are impaired, voted to accept the Plan, regardless of the votes of any insider(s).

*Section 1129(a)(11)*

37. The Plan provides for the completion of the Debtors' liquidation and the distribution of its remaining property in accordance with the priority scheme set forth in the Bankruptcy Code and the Plan.

38. I believe that the Liquidating Trust, which will be administered by the Liquidating Trustee, will have sufficient assets to accomplish its tasks under the Plan. Moreover, the Debtors

have already taken significant steps to wind down in an orderly fashion during the Chapter 11 Cases, including, without limitation, selling substantially all of the Debtors' assets through the Court-approved Sale. Therefore, I believe that confirmation of the Plan is not likely to be followed by the need for further financial reorganization of the Debtors, and the Plan provides for adequate means for its implementation.

*Section 1129(a)(12)*

39. The Plan provides that all fees payable on or before the Effective Date, pursuant to 28 U.S.C. § 1930, will be paid on the Effective Date. I believe the Debtors have adequate means to make such payments. All fees payable after the Effective Date shall be paid in full in cash by the Liquidating Trust until the Chapter 11 Cases are converted, dismissed, or closed, whichever comes first.

*Section 1129(a)(13)*

40. The Debtors do not have any retiree benefit programs within the meaning of section 1114 of the Bankruptcy Code. Therefore, I am advised that section 1129(a)(13) is inapplicable.

*Section 1129(a)(14)*

41. The Debtors are not required to pay any domestic support obligation. Therefore, I am advised that section 1129(a)(14) is inapplicable.

*Section 1129(a)(15)*

42. The Debtors are not individuals. Therefore, I am advised that section 1129(a)(15) is inapplicable.

*Section 1129(a)(16)*

43. The Debtors are a moneyed, business, or commercial corporation. Therefore, I a am advised that section 1129(a)(16) is inapplicable.

*Section 1129(c)*

44. The Plan is the only chapter 11 plan that has been proposed in the Chapter 11 Cases.

*Section 1129(d)*

45. The Plan does not have as one of its principal purposes the avoidance of taxes or avoidance of the requirements of section 5 of the Securities Act of 1933. The Debtors commenced the Chapter 11 Cases with a *bona fide* business need, and business objective, to maximize the value of their assets – which they have accomplished – and not to avoid taxes or the application of section 5 of the Securities Act.

## **CONCLUSION**

46. I believe that the Plan will enable the Holders of Allowed Claims to realize the highest possible recoveries under the circumstances of the Chapter 11 Cases. I therefore conclude that the Plan is in the best interests of all creditors.

I certify under penalty of perjury that the foregoing is true and correct.

Dated: September 4, 2024                                                    */s/ Ken Yager*
                                                                            Ken Yager
                                                                            Chief Restructuring Officer